THURBON & McHANEY, LP
ROBERT E. THURBON, SBN 133617
ERIN E. MACKEY, SBN 210081
2356 Gold Meadow Way, Suite 160
Gold River, CA 95670
Telephone: (916) 636-1840
Facsimile: (916) 638-7530

ATTORNEYS FOR PLAINTIFF
Interstate Construction, Inc.

FILED
NOV - 1 2004
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

INTERSTATE CONSTRUCTION, INC., a California Corporation,

Plaintiff,

v.

THE UNITED STATES,

Defendant.
______________________________/

Case No. 04 - 1618C

## COMPLAINT

1. Plaintiff INTERSTATE CONSTRUCTION, INC. ("INTERSTATE") is a corporation, formed and organized and operating under the laws of the State of California and maintaining its principal place of business in Rancho Cordova, State of California. Plaintiff is a contractor that has, in the past, entered into and successfully completed contracts with the United States.

2. Defendant is the National Aeronautic and Space Administration, which was a party to the Contract at issue.

## JURISDICTION

3. This Court has jurisdiction of this action under 28 USC §1491 and 41 USC §601 et seq. (The Contracts Disputes Act of 1978).

## NATURE OF THE CASE

4. On or about February 8, 1999 INTERSTATE and NASA entered into contract number NAS2-99039 (VDG) under which INTERSTATE was to perform a work of

improvement identified as Process Cooling System, Building N258 at NASA-Ames Research Center, Moffett Field, California.

5. Pursuant to the Changes Clause of the Contract, if any change "causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contract Officer shall make an equitable adjustment and modify the contract in writing."

6. On or about March 12, 1999 Interstate entered into a subcontract agreement with Siemens under which Siemens agreed to furnish all labor, supervision, materials, tools, equipment and supplies necessary to perform and to perform all work set forth in section 2 of the prime contract for the construction of Process Cooling System, Building N258 between Interstate and NASA. Attached hereto as Exhibit A is a true and correct copy of the subcontract agreement.

7. The contract between Interstate and Siemens was for the amount of $351,725.00.

8. Pursuant to Change Order Number One, Siemens was to perform additional work control testing for the amount of $11,340.00. Attached hereto as Exhibit B is a true and correct copy of the Change Order Number One.

9. In addition, to work required by change order number one, NASA required Siemens, as a sub-contractor to Interstate, to perform additional monitoring of the system installed by Siemens above and beyond what was required by the contract, which resulted in extra costs for labor as well as for parts for the system by Siemens in the approximate amount of $167,646.00.

10. NASA maintained a direct and independent relationship with Siemens and ordered work directly from Siemens which was outside the scope of Interstate's contract with Siemens and without Interstate's knowledge or participation.

11. During the performance of the contract NASA demanded that extra work be performed by Interstate and Siemens in that NASA required Siemens to have an additional employee on duty 24 hrs a day to perform extra testing and system monitoring. All of this work was extra and not called for by the contract or the plans and specifications and therefore

constituted a change to the contract. Thereafter, Interstate and Siemens proceeded with the modifications specified by NASA and at the specific insistence and request of NASA, Interstate and Siemens incurred additional costs for the extra work that was performed. The actual and necessary cost to Interstate for Siemens performing this extra work was approximately $178,986.00.1

12. Siemens requested payment from INTERSTATE for performance of the extra work and INTERSTATE in turn requested payment from NASA.

13. Interstate made requests for and NASA failed to make an equitable adjustment tot he contract for the work ordered by NASA as required by the Changes Clause of the Contract.

14. In or around June or July of 2000 Interstate Construction, Inc., on behalf of Siemens Building Technologies, Inc., submitted a claim to NASA in the amount of $167,646.00 for extra work and delay damages suffered by Siemens in their performance of the above-referenced project. Attached hereto as Exhibit C is a true and correct copy of the submitted claim for extra work and delay damages.

15. On or about October 3, 2000 NASA denied the claim. Attached hereto as Exhibit D is a true and correct copy of the denial of the claim.

16. Subsequent to the denial of the claims, Siemens brought an action against Interstate Construction, Inc. in Federal Court under the Miller Act.

17. Siemens did not have a direct contractual relationship with NASA and therefore lacked privity to bring a direct action against NASA.

18. INTERSTATE was unable to bring NASA in as a party to the previous litigation as the District Court lacked jurisdiction.

19. Judgment was entered against Interstate by the United States District Court for the Northern District of California in the amount of $168,744.50. The judgment consisted of both delay and extra work damages claimed by Siemens for work they performed on the project. The jury found that NASA was the cause of the extra work damages in the amount of $119,487.84 and NASA and Interstate were jointly at fault for the delay damages in the amount of $9,989.76. The amount of the total judgment included prejudgment interest and statutory costs. Attached

hereto as Exhibit E is a true and correct copy of the Amended Judgment entered against INTERSTATE by the United States District Court.

20. As a result of the judgment, INTERSTATE became liable for, and paid to Siemens, the amount of the judgment based upon NASA's failure to make an equitable adjustment to the Contract for the extra work performed by Siemens and ordered by NASA. Attached hereto as Exhibit F is a true and correct copy of the Satisfaction of Judgment.

21. The contract between INTERSTATE and Siemens did not contain a provision exculpating INTERSTATE from liability for delays or other damages caused by NASA.

22. On or about March 19, 2002, Interstate Construction, Inc., through their attorneys, submitted a request for contracting officer's decision to Vivienne Gallo at NASA for indemnification for the amount of extra work and delay damages that Interstate was required to pay to Siemens under the contract plus costs and attorneys fees incurred by Interstate in defending the action in the amount of $56,000.00. Attached hereto as Exhibit G is a true and correct copy of the request for contracting officer's decision.

23. On May 28, 2002, this office received notification from Vivienne Gallo of NASA that a contracting officer's decision would not be made until August 30, 2002.

24. This action was originally filed on August 9, 2002. The United States filed a Motion to Dismiss based on the theory that the contracting officer was denied its ability to make a final decision on the claim prior to the expiration of the 60 day period. This Court granted a stay of 30 days and required NASA to issue a contracting officer's decision by January 16, 2003 and required INTERSTATE to file a first amended complaint appending the contracting officer's decision by January 29, 2003.

25. The Contracting Officer's Final Decision dated January 14, 2003 was received by INTERSTATE and INTERSTATE's counsel on January 16, 2003. The contracting officer denied INTERSTATE's claim in its entirety. Attached hereto as Exhibit H is a copy of the contracting officer's decision.

26. The Contracting Officer's decision stated in part, "Even though you did not specifically raise the issues in your March 19, 2002 claim letters, it may be that the intent of your

claims is that they are essentially a "pass-through" of the claims brought about by Siemens' [word deleted] against Interstate. Even if this is your intent, these claims are denied for the reasons specified in Enclosure (1). Therefore, the Contracting Officer's decision dated January 14, 2003 operated as an effective denial of any claims for breach of contract by NASA for failure to make any equitable adjustments to the contract price for the changes that NASA specifically ordered to the contract and this claim is ripe for hearing by this Court.

27. On February 10, 2003, a First Amended Complaint was filed in this action based on the Contracting Officer's decision dated January 14, 2003.

28. On February 24, 2003 the United States filed a Motion to Dismiss. The Motion to Dismiss was granted with leave to file a second amended complaint no later than April 30, 2003.

29. On May 2, 2003 a second amended complaint was filed with leave of the Judge stating a cause of action for a pass-through claim under the *Severin* doctrine.

30. On or about December 2, 2003 the United States filed another Motion to Dismiss.

31. On or about December 3, 2003 INTERSTATE filed a Motion for Summary Judgment.

32. On or about February 24, 2004 this Court granted the Motion to Dismiss without prejudice and order that INTERSTATE submit its certified pass-through claim to the contracting officer for a decision, after which plaintiff could file its complaint in this Court, such complaint to be assigned to the same judge.

33. On or about March 24, 2004 INTERSTATE filed a Request for Contracting Officer's Decision with NASA. Attached hereto as Exhibit I is a true and correct copy.

34. In or around May, 2004 counsel for INTERSTATE contacted counsel for NASA regarding the Request for Contracting Officer's Decision by telephone, and to discuss the possibility of settlement. At that time counsel for NASA expressed that no Request for Contracting Officer's Decision had been received by NASA. A copy of the claim was immediately faxed to counsel for NASA on May 13, 2004 at counsel's request.

35. On June 11, 2004 an amended Request for Contracting Officer's Decision was submitted to NASA by overnight delivery. Attached hereto as Exhibit J is a true and correct

copy.

36. On July 14, 2004 counsel for INTERSTATE received a letter from counsel for NASA stating that NASA had previously paid INTERSTATE'S claims number 4 and PC-16 in the forms of Contract Modification numbers 6 and 7. No documentary evidence of this was attached. NASA's counsel strongly suggested that a revised claim be submitted to NASA taking out these two claims. Attached hereto as Exhibit K is a true and correct copy.

37. On August 4, 2004 counsel for INTERSTATE responded to NASA's letter stating that no revised claim would be submitted as it had already been more than four months since INTERSTATE had originally submitted its Request for Contracting Officer's Decision. Attached hereto as Exhibit L is a true and correct copy.

38. On September 2, 2004 NASA faxed its Final Decision of the Contracting Officer. The Contracting Officer's Decision essentially mirrored its denial of Siemens claims in October 2000, save for its denial of claim numbers 4 and PC-16 and the denial of the claim for attorneys fees. NASA did no additional investigation or consideration of the claims, but rather regurgitated their original denial. Attached hereto as Exhibit M is a true and correct copy.

39. This Court has jurisdiction to decide the appeal of the Contracting Officer's Final Decision dated August 31, 2004.

**COUNT I**

40. Plaintiff realleges and incorporates by reference as though fully set forth herein Paragraphs 1-39, inclusive, of this Complaint.

41. On or about February 8, 1999 INTERSTATE and NASA entered into contract number NAS2-99039 (VDG) under which INTERSTATE was to perform a work of improvement identified as Process Cooling System, Building N258 at NASA-Ames Research Center, Moffett Field, California.

42. Pursuant to the Changes Clause of the Contract, if any change "causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contract Officer shall make an equitable adjustment and modify the contract in writing."

43. On or about March 12, 1999 Interstate entered into a subcontract agreement with Siemens under which Siemens agreed to furnish all labor, supervision, materials, tools, equipment and supplies necessary to perform and to perform all work set forth in section 2 of the prime contract for the construction of Process Cooling System, Building N258 between Interstate and NASA.

44. The contract between Interstate and Siemens was for the amount of $351,725.00.

45. Pursuant to Change Order Number One, Siemens was to perform additional work control testing for the amount of $11,340.00.

46. In addition, to work required by change order number one, NASA required Siemens as a sub-contractor to Interstate to perform additional monitoring of the system installed by Siemens above and beyond what was required by the contract, which resulted in extra costs for labor as well as for parts for the system by Siemens in the approximate amount of $167,646.00.

47. NASA maintained a direct and independent relationship with Siemens and ordered work directly from Siemens which was outside the scope of Interstate's contract with Siemens and without Interstate's knowledge or participation.

48. During the performance of the contract NASA demanded that extra work be performed by INTERSTATE through its sub-contractor SIEMENS.

49. The first claim for extra work/delay damages is described as follows: SIEMENS was notified that on January 29, 2000 at 8:00 a.m. the piping work would be complete and the new system would go online with the new software. On January 29, 2000 Siemens was present to implement and to exercise equipment. Interstate completed their portion of the work on January 29, 2000 at 6:30 a.m. and notified Siemens personnel to proceed with initial startup of systems. From January 29, 2000 until February 1, 2000 at 11:40 a.m. Siemens was unable to fully test the approved validated chiller software program due to mechanical deficiencies and secondary chilled water loop flow problems. Some of the deficiencies encountered by Siemens were: (1) Siemens was unable to run Chillers, pumps and cooling tower fans in automatic mode because software sequences would turn the chiller off due to no heat load within the ubilding; (2)

On Sunday January 30, 200 at 8:00 p.m. pneumatic mixing valve #MOV401 was identified nonfunctional due to excessive condensation within the pilot positioner, which had to be replaced by others; (3) On Sunday January 30, 2000 at 11:00 p.m. it was determined through field investigations that there was no water flow at the secondary high temp loop due to the NASA lock-out service tag on an unidentified two-way valve, which was opened by NASA personnel on Monday January 31, 200 at around 8:00 a.m.; (4) On Monday January 31, 2000 at 3:00 a..m JCI temporarily installed two hose bibs to secondary high temp loop to facilitate some water flow. On Tuesday February 1, 2000 at 11:30 a.m. the system was checked out and the indications were that the system was operational. At that time Cray computer personnel initiated startup procedures. Siemens chiller sequence was back to normal automatic operations and at 11:40 a.m. the Cray computer personnel confirmed that their system was up and running. Damages were calculated as follows: (1) 16 regular hours and three time-and-a-half overtime hours for the project engineer; (2) 16 regular hours and three time-and-a-half overtime hours for the DQMS engineer; (3) six regular hours for the senior system engineer; (4) six regular hours for the system specialist; (5) eight regular hours for one service specialist; (6) four regular hours for one service specialist; (7) four regular hours and six time-and-a-half overtime hours for one system specialist; (8) eight regular hours for a support engineer for a total of 68 regular hours at $96.00/hour and 12 time-and-a-half over time hours at $144.00/hour for a total of $8,256.00 plus a 10% overhead at $825.60 at a 10% profit at $908.16 for a total sum of $9,989.76.

50. The second claim for extra work/delay damages was for a 24 hour watch that was required by NASA. On February 3, 2000 Bill Eismann of NASA sent an email to A.C. Mosher of NASA and forwarded to others on the Project including Interstate and Siemens, concerning around the clock attendants on the Project. The email, in part, stated that Mr. Eismann spoke with Glenn Leggoe of Siemens and that Mr. Eismann was assured that Siemens would continue to provide around the clock supervision of the control system until the problem was identified and corrected. Mr. Eismann stated that Mr. Leggo proposed to develop a manual mode operating sequence that the Siemens operator could implement in case the system failed while in automatic control mode. On February 7, 2000 Mr. Leggoe responded to Mr. Eismann's February 3, 2000

correspondence seeking clarification. On February 11, 2000 Interstate Construction received a letter from Ms. Vivienne Gallo regarding the continued provision by Siemens of round-the-clock monitoring of the system. The letter stated, "I believe that the control system still requires the attendance of a round-the-clock Siemens Technician to monitor the chiller plant and to recover from software related system failures...I strongly suggest that the work schedule remain unchanged until such time as the control system reliability can be satisfactorily demonstrated." It was also requested that Siemens and Interstate attend a meeting on February 25, 2000 with NASA. Investigations by Siemens determined that failures starting at 7:32 a.m. on February 3, 2000 were due to excessive network communication traffic on the existing NASA site trunk configuration. On February 15, 2000 Interstate and Siemens met with NASA to discuss issues that had arisen in the course of the Project. During the meeting Siemens was directed by NASA to continue the round-the-clock attendant. A 15-hour shutdown of the system was scheduled to begin on February 21, 2000 at 00:01. Siemens was to document the sequence of events before and during the shutdown as well as perform other additional work. During the meeting, Siemens informed NASA that it had identified two operational issues. The first issue was that program control of the chiller plant had been negatively impacted by trunk communication issues on the BLN which connects nodes added as part of the Project and the existing trunk #03 on the site. The second issue was that the database integrity was comprised by network configuration changes by an unknown resource, made immediately prior to the February 3, 2000 7:32 a.m. chiller shutdown with resulting continuing unstable program operation. At the February 15, 2000 meeting, Siemens presented solutions to the problems it had identified. Siemens suggested changing the controller configuration to minimize dependency on network communication for control functions and relocating the chiller control program ("N258 Chillers") and the VFD valve calculation program ("Modbus Conversions") to the Open Processor with Modbus Master Gateway, addressed as Node 50. Siemens also suggested relocating the majority of the proofs program ("N258 Misc proofs") to the Modbus gateway and changing the virtual or unbundled points as required for the VFDs. Siemens suggested relocating portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51 and change virtual or

unbundled points as required for the Chillers. Siemens also suggested verifying the database for the project and implementing a "reformat" or cold-start and download of Nodes 50 and 51 to eliminate all database corruption and changing the BLN trunk wiring to eliminate "T-Taps", implementing true "daisy-chain" wiring. And finally. Siemens suggested changing the Workstation configuration for the two PCs, reconfiguring the current Node 97 to be a server on the BLN, reconfiguring the current Node 99 to be a client communicating with Server node 97, and no longer residing on the BLN. NASA agreed with Siemens' proposed solutions and instructed INTERSTATE and Siemens to proceed with implementation. Siemens continued the round-the-clock watch until February 23, 2000 when it was released from the watch by NASA. The charges incurred by Siemens for the round-the-clock watch are as follows: (1) 112 regular hours, 27 time-and-a-half overtime hours and 12.5 double time over time hours for System Specialist Dan Walden; (2) 112 regular hours and 36 time-and-a-half overtime hours for System Specialist Brian Bullock; (3) 64 regular hours, 18 time-and-a-half overtime hours and 21 double time overtime hours for Senior System Engineer Tim Jozsa; (4) 32 regular hours and 11 time-and-a-half overtime hours to System Specialist Jeff Sim; (5) 9 time-and-a-half overtime hours and 16 double time overtime hours for Engineering Specialist Jason Murray; (6) 8 time-and-a-half overtime hours and 12 double time overtime hours for Service Specialist Nathan Santora; (7) 8 time-and-a-half overtime hours for System Specialist Larry Daley; (8) 16 time-and-a-half overtime hours for System Specialist Phil Carswell. There was a total of 320 regular hours at $96/hour for a total amount of $30,720.00; 133 time-and-a-half overtime hours at $144/hour for a total amount of $19,152 and 61.5 double time overtime hours at $192/hour for a total amount of $11,808 as well as a 10% overhead in the amount of $6,168 and a 10% profit of $6,684.80 for a final amount of $74,632.80.

51. The third claim for extra work/delay damages was for the solution to NASA BLN Cabling Problem and to Modify the PPCL to enhance COVs. NASA requested that Siemens and Interstate provide a written, detailed description of all N258 chiller plant system failures since the start of Work Phase E (00:00 Monday, January 31, 2000) and list all identified and suspected causes for the failure and the corrective action(s) taken to fix the problem. As discussed above,

Siemens presented a proposed solution to NASA at the February 15, 2000 meeting which NASA accepted and directed Interstate and Siemens to begin implementing the proposed solution. On February 18, 2000 Interstate/Siemens implemented the proposed solution as follows: (1) Changed the controller configuration to minimize dependency on network communication for control functions. Relocated the chiller control program ("N258 Chillers") and the VFD value calculation program ("Modbus Conversions") to the Open processor with Modbus Master Gateway, addressed as Node 50. Relocated the majority of the proofs program ("N258 Misc. proofs") to the Modbus gateway. Changed virtual or unbundled points as required for the VFDs. Relocated portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51. Changed virtual or unbundled points as required for the Chillers. (2) Verified the database for the project and implemented a cold-start and download of Nodes 50 and 51 to eliminate all database corruption. (3) Changed the Workstation configuration for the two PCs. Reconfigured the Node 90 to be a server on the BLN and reconfigured the Node 99 location to be a client communicating with Server Node 98 and no longer residing on the BLN. (4) Modified the applicable Volume #2 Field Test documents for verifying points and automatic system operations. Implementing the proposed solution resulting in the following costs: (1) 56 regular hours, 4 time-and-a-half overtime hours and 20 double time overtime hours for Project Engineer Vinh Lam; (2) 92 regular hours, 23 time-and-a-half overtime hours and 36 double time hours for DQMS Engineer Glen Leggoe; (3) 28 regular hours for Senior Software Engineer Brian Esser; (4) 32 regular hours and 2 time-and-a-half overtime hours for Senior System Engineer Tim Jozsa; (5) 10 regular hours for Engineering Specialist Jason Murray; (6) 16 time-and-a-half overtime hours for System Specialist Phil Carswell for a total of 218 regular hours at $92/hour for an amount of $20,928; a total of 56 time-and-a-half overtime hours at $144/hour for an amount of $8,065; a total of 56 double time overtime hours at $192/hour; 10% overhead for an amount of $3,974.40 and 10% profit for an amount of $4,371.84 for a final amount of $39,744.00.

52. The fourth claim for extra work/delay damages was for Network Card Configuration and Delays. In the process of implementing the proposed solution as discussed

above, Siemens encountered an unexpected delay tying to load the newly purchased NT Server software onto the NASA supplied computer as a result of a defective network card in the NASA supplied computer. In order to get the related systems back online the network card from the NASA supplied computer at 258 room 227 was removed and installed into the NASA supplied computer that is temporarily located in the chiller room. The defective network card resulted in training delay for device location and system operations and extended overtime labor in getting the system back to semi-automatic mode. The component failure and time lost resulted in an inability to configure and startup the client computer and complete its configuration on the MLN to the server. This delay resulted in the following costs: (1) 8 time-and-a-half overtime hours for Project Engineer Vinh Lam; (2) 8 time-and-a-half overtime hours for DQMS Engineer Glen Leggoe; (3) 8 time-and-a-half overtime hours for System Specialist Brian Bullock; (4) 8 time-and-a-half overtime hours for Senior System Engineer Tim Jozsa; (5) 7 regular hours for Engineer Specialist Jason Perry; (6) 14 regular hours and 3 time-and-a-half overtime hours for Engineer Specialist Eric Mino for a total of 21 regular hours at $96/hour for an amount of $2,016; 35 time-and-a-half overtime hours at $144/hour for an amount of $5,040; overhead of 10% for an amount of $705.60; profit of 10% for an amount of $776.16 as well as $930.04 of material costs for a total of $9,467.80. NASA did not dispute this claim in the October 3, 2000 letter, however, NASA never paid Interstate/Siemens on the claim.

53. The fifth claim for extra work/delay damages was for the 15-hour Chiller Shutdown. On February 21, 2000 at 00:01 there was a scheduled 15-hour shutdown of the system during which Siemens personnel was required to be present which resulted in the following costs: (1) 11 double time overtime hours for Project Engineer Vinh Lam; (2) 11 double time overtime hours for Senior System Engineer Tim Jozsa for a total of 22 double time overtime hours at $192/hour for a total amount of $4,224 and a 10% overhead in the amount of $422.40 and a 10% profit of $464.64 for a final amount of $5,111.04.

54. The sixth claim for extra work/delay damages was for PC No. 16–Enhanced Alarming. Siemens implemented Enhanced Alarms based on NASA's recommendations and on observations of field conditions, for a large number of alarmable points. This resulted in 8

regular hours at $96/hour, 9 time-and-a-half overtime hours at $144.00/hour and 9 double time overtime hours at $192/hour plus 10% overhead of $379.20 and 10% profit of $417.12 for a total of $4,588.32. NASA did not dispute this claim in the October 3, 2000 letter, however, NASA never paid Interstate/Siemens on the claim.

55. All of this work was extra and not called for by the contract or the plans and specifications and constituted a change in the scope of the Contract. Thereafter, in or about February or March 2000 INTERSTATE and SIEMENS proceeded with the modifications specified by NASA and at the specific insistence and request of NASA, INTERSTATE and SIEMENS incurred additional costs for the extra work that was to be performed. The actual and necessary cost to INTERSTATE and SIEMENS for performing all extra work was $178,986.00.

56. INTERSTATE has performed all conditions, covenants, and promises under the contract to be performed on its part, including the modifications described above.

57. Siemens submitted a claim to INTERSTATE for payment for the extra work performed by Siemens and ordered by NASA. INTERSTATE in turn passed the claim on to NASA.

58. NASA failed and refused to make an equitable adjustment tot he contract and remit payment for the extra work performed by SIEMENS and ordered by NASA.

59. In or about March NASA breached the contract by refusing to pay for the modifications as provided by the agreement for the extras.

60. NASA has breached the contract by failing and refusing to make an equitable adjustment to the contract and modify the contract in writing based upon the changes ordered directly by NASA which resulted in an increase in INTERSTATE's cost of and time required for the performance of the Contract and for which INTERSTATE became indebted to SIEMENS.

61. INTERSTATE has made demand to NASA for payment for the changes and extras, but NASA failed and refused and still fails and refuses to pay the sum, and the whole sum remains due, owing and unpaid.

62. INTERSTATE was forced to defend the Complaint brought in Federal District Court by Siemens on the above-referenced claims and change order. Judgment was entered

against Interstate Construction in that matter in favor of Siemens. Interstate incurred $53,000.00 in attorneys fees and $3,000.00 in costs defending the action in Federal District Court. INTERSTATE is also seeking damages for attorneys fees and costs in the amount of $56,000 for its defense of the Miller Act claim.

63. As a result of NASA'S breach of the contract INTERSTATE has suffered damages in the approximate sum of $168,744.50 plus $56,000 in attorneys fees and costs for defending the Miller Act claim. This includes the amount payable under the agreement for extras and charges by SIEMENS at the specific request of NASA.

**COUNT II**

63. Pursuant to 28 USCS 2412, the Equal Access to Justice Act, unless expressly prohibited by statute, a court may award reasonable costs, expenses and attorneys fees to the prevailing party in a civil action against the United States. Therefore, Plaintiff respectfully requests that the Court award attorneys fees in costs in an amount to be determined by later motion.

WHEREFORE, Plaintiff requests relief as follows:

1. For damages resulting from NASA's breach of contract;

2. For an equitable adjustment to the Contract for the extra work performed, in an amount to be determined at trial;

3. For attorney's fees and costs incurred in pursuing this action;

4. For such other and further relief as the court may deem just and proper.

Dated: ~~September~~ October 8, 2004

THURBON & McHANEY, LP

By: [signature]

ERIN E. MACKEY for
ROBERT E. THURBON
2356 Gold Meadow Way, Suite 160
Gold River, CA 95670
(916) 636-1840
Attorneys for Plaintiff
INTERSTATE CONSTRUCTION, INC.

INTERSTATE CONSTRUCTION, INC.
3909 Security Park Drive
Rancho Cordova, California 95742
(916) 351-0622
(916) 351-0950 FAX

SUBCONTRACT AGREEMENT

Subcontractor: Siemens Building Technologies, Inc. ~~Landis Division,~~
Address: 2525 Barington Court
Hayward, CA 94545
Contact: Jason P. Daters
Phone: (510) 783-6000
Fax: (510) 293-2100

Subcontract No.: 5340-003
Cost Code: 17060
Job No. 5340
Prime Contract No.: NAS2-99039 (VDG)
Job Title: Process Cooling System Building N258

THIS AGREEMENT, made this 12 day of March , 1999 , by and between Siemens Building Technologies, Inc. ~~Landis Division~~hereinafter called the Subcontractor, and Interstate Construction, Inc., hereinafter called the Contractor, WITNESSETH:

**SECTION 1. STATEMENT OF WORK:** The Subcontractor agrees to furnish all labor, supervision, materials, tools, equipment and supplies necessary to perform, and to perform all work set forth in "Section 2" hereof in the construction of Process Cooling System, Building N258, for NASA-Ames Research Center herein after called the Owner, at NASA-Ames Research Center, Moffett Field, CA in accordance with the terms and provisions of the Principal Contract No. NAS2-99039 (VDG) between the Owner and the Contractor, dated February 8, 1999, including all the General and Special Conditions, Provisions, Drawings, Specifications, Addenda No's: 1, 2, & 3 and all other Documents and Revisions to date, for the construction of the above named project as prepared by NASA-Ames Research Center forming or by reference made a part of the Principal Contract between the Contractor and Owner, and with particular reference to the below listed Technical and/or other Sections of parts of the Contract Documents, all of which shall be considered part of this Subcontract by reference thereto and they are as fully a part of this Subcontract Agreement as if hereto attached or herein repeated, and the subcontractor agrees to bind and obligate himself, in the performance of this Subcontract, to the Contractor by the same terms, conditions, undertakings and obligations that the Contractor is bound and obligated to the Owner by the Principal contract insofar as the terms thereof shall not be in conflict with the terms hereof. Copies of said Principal contract are on file in the office of the contractor.

**SECTION 2. SCOPE OF WORK:** The Subcontractor agrees for the consideration shown to do the work as follows:

Provide all labor, material & equipment per contract drawings and specification 15900 and other related sections including volume 1 & 2, to complete control work. Exclusions Noted.

**SECTION 2A. ADDITIONAL OBLIGATIONS OF SUBCONTRACTOR**: By agreeing to this Subcontract, you are certifying that:

1. You will, at your expense, provide and maintain General, Auto, and Workers Compensation Insurance on all your operations during the performance of this subcontract, as per Section 15 of this agreement. Certificates of Insurance must be furnished to contractor before your work commences on the above referenced project.

2. You are in compliance with the accepted Affirmative Action hiring practices for the above referenced project

3. You understand that you will not be paid unless the contractor receives the Certified Payroll reports. An example is enclosed with this subcontract.

When the Subcontractor does not install all materials furnished under the Subcontract such material as is not installed is to be delivered F.O.B. Job site .

**SECTION 3. SUBMITTALS:** 10 copies of complete detailed shop drawings, lists and brochures for Architects and/or Engineer approval shall be submitted through Contractor's office within 30 days of the date of this agreement, as well as required material samples and color selections.

ALL DRAWINGS OF THE SUBCONTRACTOR MUST BE SUBMITTED FOR APPROVAL OF THE ARCHITECT OR ENGINEER THROUGH THE CONTRACTOR'S OFFICE.

**SECTION 4. TIME OF PERFORMANCE:** The Subcontractor agrees to keep himself informed as to the progress of the project and to faithfully prosecute his work, and the several parts thereof, at such times and in such order as the Contractor considers necessary to keep the same sufficiently in advance of the other parts of the project and to avoid any delay in the completion of the contract as a whole. The scheduled TIME OF PERFORMANCE of work forming a part of this Subcontract is as determined by the project superintendent.

**SECTION 5. PAYMENTS:** The Contractor agrees to pay the Subcontractor for the materials furnished and/or the work to be performed herein and performance of this Subcontract as otherwise provided for herein the sum of Three Hundred Fifty-One Thousand Seven Hundred Twenty-Five and NO/00 Dollars $351,725.00subject to additions and deductions for changes as may be agreed upon, or determined, as provided herein and subject to adjustments from quantity of work performed at Unit Prices set forth under Section 2 above. The aforementioned sum includes all taxes of any nature whatsoever that may be assessed against or incurred by the Subcontractor in performance of this work.

Partial Payments less a retained percentage of 10% will be made to the Subcontract, provided the Subcontractor has submitted his Payment request to the Contractor's office on or before the 10th day of each month, at the unit prices set forth in Section 2 for work and materials incorporated into the construction and/or materials delivered to the site of work as estimated by the Owner's Architect or Engineer, less the aggregate of previous payments, providing payment for such work and materials has been approved by the Owner and received from the Owner by the Contractor; and upon completion performance of this Subcontract and approval and acceptance of the Subcontractor's materials and work by the Architect or Engineer, the Contractor shall make final payment to the Subcontractor of the balance due him, within 30 days after final payment has been received by the Contractor. No payment on account shall be considered as an approval and/or acceptance of work done or materials furnished or any part thereof.

The Subcontractor agrees the moneys received for the performance of this Subcontract shall be used primarily for labor and materials entering into this work and said moneys shall not be diverted to satisfy obligations of the Subcontractor on other contracts and the Subcontractor agrees to furnish proof of same upon written request of the Contractor.

**SECTION 6. LIQUIDATED DAMAGES:** The Prime Contract contains a liquidated damages clause in the amount of $ As per the prime contract . Should the Subcontractor default in the proper performance of his work, thereby causing delay to the entire work, he shall be liable for any and all loss and damages including liquidated damages sustained therefore by the Contractor. The Subcontractor shall not be liable under this paragraph if such default be caused by strikes, lockouts, acts of God, or other reasons beyond the control of Subcontractor, concerning which, however, notice of occurrence of same shall be given in writing within forty-eight (48) hours by Subcontractor to Contractor.

**SECTION 8. SCHEDULES**: In the event that the Job Progress Schedule is a Critical Path Method or similar type Schedule the Subcontractor agrees to fully cooperate with the Contractor in the preparation of and maintenance of said Schedule.

Upon request by the Contractor, the Subcontractor shall furnish the Contractor, in writing, a progress schedule covering the work to be performed under this Subcontract. This schedule will show in detail the procurement, shop drawing, fabrication, delivery and installation activities of all the major components of work and the Subcontractor agrees to meet and keep this schedule and to apprise the Contractor monthly of their progress position

**SECTION 9. EXTENSION OF TIME**: No allowance of an extension of time, for such extension, within forty-eight hours after the cause for such extension unless the Subcontractor shall have made written request upon the Contractor for any cause whatsoever, shall be claimed by the Subcontractor or be made to them, occurred, and unless the Contractor and Subcontractor have agreed in writing upon the allowance of additional time to be made. If such extension of time is requested as aforesaid and the Contractor and Subcontractor cannot agree thereupon, the Architect or Engineer shall determine by certificate in writing what, if any, extension of time shall be allowed.

No allowance of an extension of time shall, in any event, be made to the Subcontractor for delay by the Subcontractor in preparing submittals, or in securing approval of the Architect or Engineer thereto, when such submittals are not properly prepared, or when the Subcontractor by the exercise of reasonable diligence and judgment could have anticipated and avoided the delay.

**SECTION 10. CLEANUP**: Cleanup and removal from the site of this Subcontractor's waste materials and refuse will be the responsibility of this Subcontractor. If said Subcontractor fails to assume this responsibility after having received notice from the Contractor that their cleanup work is not being properly prosecuted, continues to neglect this work, then said cleanup work will be performed by the Contractor's own personnel and backcharged to the subject Contractor's account.

**SECTION 11. WITHHOLDING OF FUNDS:** The Contractor may deduct from any amounts due, or to become due, to the Subcontractor any sum or sums owing by the Subcontractor to the Contractor; and also the Contractor, in the event it deems itself insecure, including under any payment bond furnished by the Subcontractor as hereinafter provided, may reserve from any amounts due or to become due to the Subcontractor the amount necessary to protect the Contractor for any sum or sums owing by the Subcontractor for labor or material or equipment for which debt or debts the laborer, supplier or seller, or lessor has a lien or a claim against the Contractor or the work or the premises under any statute for the statutory period before which the claimant or lienholder is required to notify the Contractor of such lien or claim; and in the event of any breach by the Subcontractor of any provision or obligation of this Subcontract or in the event of the assertion by other parties of any claim or lien against the Contractor or the Contractor's Bond or the premises arising out of the Subcontractor's performance of this Subcontract, the Contractor shall have the right to retain out of any payments due or to become due to the Subcontractor an amount sufficient to completely protect the Contractor from any and all loss, damage or expense therefrom, until the situation has been satisfactory remedied or adjusted by the Subcontractor.

**SECTION 12. CHANGES**: The Contractor reserves the right to make changes in materials to be furnished or work to be performed under this Subcontract, or additions thereto or omissions therefrom, upon written order to the Subcontractor.

Any additions or reductions to be made to or from the amount of the Subcontract price resulting from changes in work or materials furnished shall be agreed upon in writing by the parties hereto, such agreement not being valid unless signed by an authorized representative of the Contractor. in case of disagreement between the parties hereto as to additions or reductions the same shall be determined by the Architect or Engineer by certificate in writing.

No addition or reduction in contract price shall be binding upon the Contractor unless agreed upon in writing or determined by the Architect or Engineer as hereinbefore provided for.

**SECTION 13. TERMINATION OF WORK**: In the event the Owner by any reason is forced to suspend or terminate the construction work, hereunder, the Subcontractor shall be entitled to payment for the work done up to the time of such suspension or cancellation. The amount of said payment shall be established by negotiation between the Subcontractor and Contractor, subject to the final approval of the Owner.

**SECTION 14. FAILURE TO PERFORM**: The Subcontractor shall furnish all materials, labor, tools, equipment, supervision and supplies necessary for the performance of this Subcontract, as herein provided and in a proper, efficient and workmanlike manner. The Subcontractor shall furnish materials and execute the work undertaken at the times herein provided for and otherwise in a prompt, diligent and expeditious manner, and so as to promote the general progress of the entire construction and shall not, by delay or otherwise, interfere with or hinder the work of the Contractor or any other subcontractor.

In the event the Subcontractor fails to comply or becomes disabled from complying with the provisions herein as to character of work and time of performance or refuses to proceed with the work as directed by the Contractor or fails to perform said work in accordance herewith, in whole or in part, or fails to perform any term, covenant or condition contained in this Subcontract the Contractor may, at the Contractor's option and upon three (3) days written notice to the Subcontractor's last known address and without prejudice to any other right or remedy, take any steps the Contractor deems advisable or necessary to secure any labor and/or materials, equipment, services, etc. necessary to the prosecution of the work contained herein and prosecute the work to completion and for that purpose the Subcontractor hereby assigns said equipment, materials, etc. to the Contractor or the Contractor may, without taking over the work, furnish the necessary materials, equipment, etc., and/or employ the personnel necessary to remedy the situation. In case the Contractor deems the foregoing procedure necessary, all monies expended and all of the losses, damages and extra expenses shall be deducted from the Subcontractor's price herein stated and if such expenditures together with said losses, damages and extra expense exceed the amount otherwise due to the Subcontractor hereunder the Subcontractor agrees to pay to the Contractor on demand the full amount of such excess, together with interest thereon at the rate of l 1/2% per month from the original billing date until paid.

The Subcontractor shall reimburse the Contractor for any loss or damage, including but not restricted to any liquidated damages which may become due the Owner by the Contractor under the Principal Contract, and extra expenses paid or Incurred by the Contractor which are due to: (a) Subcontractor's failure to deliver any and all materials and/or supply labor, furnish equipment, or services, etc. as required herein and/or; (b) Subcontractor's failure to properly perform any and all work in keeping with the progress of the general construction work, and/or (c) Subcontractor's failure to properly perform any term, covenant or condition contained In this Subcontract, it Is agreed that the Subcontractor may be considered as disabled from so complying when among other things petition In bankruptcy or for the appointment of receiver is filed by/or against them.

**SECTION 15. INSURANCE**: The Subcontractor shall, at their expense, provide and maintain insurance on all of its operations, during the performance of this subcontract. The insurance carrier must be acceptable to the Contractor, with the minimum limits of insurance noted below: (1) Workman's Compensation and Employer's Liability: For the protection of the subcontractor's employees as required by law. (2) Public Liability: Bodily Injury and Property Damage Liability insurance with limits not less than $1,000,000 per occurrence and $2,000,000 aggregate, unless amounts greater than the foregoing are specifically designated. Such insurance shall include coverage for Completed Operations/Products, Contractual Liability, Explosion, Collapse and Underground Hazards. In addition, the policy shall be endorsed to include Contractor as additional insured and stipulate that such insurance shall be primary insurance. (3) Automobile Liability: Bodily Injury and Property Damage Liability Insurance with limits not less than $1,000,000 including coverage for all owned, hired and non-owned automobiles.

Subcontractor shall provide Contractor with satisfactory evidence that such insurance is in full force and effect prior to starting work. The certificates of insurance shall provide that there will be no cancellation or reduction of coverage without thirty (30) days prior written notice to Contractor. Contractor may withhold payments otherwise due to Subcontractor until such certificates have been furnished to Contractor.

**SECTION 16. ADDITIONAL REQUIREMENTS**: The Subcontractor further specifically obligates themselves to the Contractor in the following respects, to wit: (a) that they shall protect and keep Owner and Contractor (including their agents and employees) harmless and free from all liability, penalties, losses, damages, costs, expenses, causes of action, claims or judgments resulting from injury, harm or death to any person or injury, harm or destruction to any property arising out of or in any way connected with the performance of work under this Subcontract, including sole or contributory negligence of Owner, and Contractor jointly or severally, and shall Indemnify said parties from any claims, suits or actions therefor, including attorney's fees paid or incurred in the premises and from any other claims, suits or liability, on account of any act or omission of the Subcontractor, or any of their officers, agents, or servants; (b) that they shall further hold harmless the Owner and Contractor (Including their agents and employees) from liability or claims for any injuries to or death of Subcontractor's employees (and/or employees of subcontractors employed by this Subcontractor in the performance of work under this Subcontract) resulting from any cause whatsoever, including sole or contributory negligence of Owner and Contractor jointly or severally, and shall indemnify Owner and Contractor for any cost, expense of judgment (including attorney's fees) paid or incurred in that behalf; (c) that they shall indemnify the Contractor against and save them harmless from any and all claims, suits, liability, expense or damage for any alleged or actual infringement or violation of any patent or patent right, arising in connection with this Subcontract and anything done thereunder;(d) that they shall pay for all materials furnished and work and labor performed under this Subcontract, and to satisfy the Contractor thereupon whenever demand Is made, and indemnify the Contractor and the Owner against and save them and their premises harmless from any and all claims, suits, or liens therefor, by others than the Subcontractor; (e) that they shall obtain and pay for all permits, licenses and official Inspections made necessary by their work, and to comply with all laws, ordinances and regulations bearing on their work and the conduct thereof; (f) that they shall warrant and guarantee the work and materials covered by this Subcontract, and agrees to make good, at their own expense, any defect in materials or workmanship which may occur or develop prior to the Contractor's release from responsibility to the Owner therefor; g) that they shall assume toward the Contractor all their obligations and responsibilities that the Contractor assumes toward the Owner, as set forth in the Principal Contract, General and Special Conditions, Drawings, Specifications and other documents hereinabove referred to, insofar as applicable, generally or specifically, to the materials to be furnished, the work to be performed and the responsibilities to be assumed under this Subcontract.

And the Subcontractor shall indemnify the Contractor and the Owner against, and save them harmless from, any and all loss, damage, costs, expenses, and attorney's fees suffered or incurred on account of any breach of the aforesaid obligations and covenants, and any other provision or covenant of this Subcontract.

All legal actions relating to this Subcontract or to the goods or services furnished hereunder shall be instituted and litigated in a state or federal court of competent jurisdiction In the State of California. For that purpose, Subcontractor and Contractor consent to the jurisdiction or those courts.

**SECTION 17. COMPENSATION AND TAXES**: The Subcontractor specifically agrees that they are, or prior to the start of work hereunder will become, an Independent Contractor and an employing unit subject as an employer, to all applicable Unemployment Compensation Statutes so as to relieve the Contractor of any responsibility or liability for treating Subcontractors' employees as employees of the Contractor for the purpose of keeping records, making reports and payment or Unemployment Compensation taxes or contributions;

And the Subcontractor agrees to indemnify and hold the Contractor harmless and reimburse it for any expense or liability incurred under said Statues in connection with employees of the Subcontractor, including a sum equal to benefits paid to those who were Subcontractor's employees, where such benefit payments are charged to the Contractor under any Merit Plan or Individual Reserve Account, pursuant to any State Unemployment Compensation Statute.

The Subcontractor further agrees as regards (a) the production, purchase and sale, furnishing and delivering, pricing, and use or consumption of materials, supplies and equipment (b) the hire, tenure or conditions of employment of employees and their hours or work and rates of and the payment of their wages, and (c) keeping of records, making of reports, and the payment, collection and/or deduction of Federal, State, and municipal taxes and contributions, that the Subcontractor will keep and have available all necessary records and make all payments, reports, collections and deductions, and otherwise do any and all things so as to fully comply with all Federal, State and Municipal laws, ordinances and regulations In regard to any and all said matters insofar as they affect or involve the Subcontractor's performance of this Subcontract, all so as to fully relieve Contractor from and protect it against any and all responsibility or liability therefor or in regard thereto.

**SECTION 18. ASSIGNMENTS**: The Subcontractor shall not assign or sublet this Subcontract or any part thereof without the written consent of the Contractor.

**SECTION 19, ASSIGNMENT OF FUNDS**: The Subcontractor shall not assign, or attempt to assign, in any manner, at any time, funds accrued or to accrue under this Subcontract, without written consent of the Contractor. And, no such assignment shall be binding on the Contractor unless and until accepted in writing by the Contractor.

**SECTION 20. RULINGS**: Is agreed that the Subcontractor shall be bound by the rulings and decisions of the Contracting Authority of the Principal Contract to the same extent and degree that the Contractor is bound by said rulings and decisions insofar as they may pertain to the work included within this Subcontract Agreement.

**SECTION 21. BOND**: If so stated under Section 2 above; the Subcontractor further agrees to provide the Contractor with a corporate surety bond within ten (10) days from date of this Subcontract in the sum of 100% of the Subcontract price, which bond shall be conditioned for the full and faithful performance of this Subcontract in all of its particular, said corporate surety bond to be executed In form and contents acceptable to the Contractor and by a Surety Company acceptable to the Contractor; and the Subcontractor under agrees to furnish payment band In the amount of 100% of the Subcontract price, said corporate surety bond to be executed in form and content acceptable to the Contractor and by a Surety Company acceptable to the Contractor.

**SECTION 22. CALIFORNIA LABOR AGREEMENTS**: When the work covered by this Subcontract occurs within the State of California, the Subcontractor agrees to pay wages and fringe benefits provided for and to comply with all other provisions of the California Labor Agreements In the employment of classifications of labor covered by these agreements.

**SECTION 23. EQUAL EMPLOYMENT OPPORTUNITY:** The Subcontractor will comply with all provisions of Paragraphs I through 7 of Section 204, of Executive Order No. 11246 of Sept 24, 1965, and of the rules, regulations, and relevant orders of The President's Committee on Equal Employment Opportunity created thereby.

**SECTION 24. RESPONSIBILITY FOR WORK**: Subcontractor shall be responsible for their own work, property and/or materials until completion and final acceptance of the Contract by the Owner, and shall bear the risk of any loss or damage until such acceptance. In the event of loss or damage, the Subcontractor shall proceed promptly to make repairs, or replacement of the damaged work, property and/or materials at their own expense, as directed by the Contractor.

Subcontractor waives all rights Subcontractor might have against Owner and Contractor for loss or damage to Subcontractor's work, property or materials.

**SECTION 25. OPERATING INSTRUCTIONS AND WORK GUARANTEE**: The Subcontractor shall furnish all operating instructions, parts lists, and manuals pertinent to requirements of the Principal Contract, and shall guarantee all work performed herein against defective material and/or workmanship for a period of one year from date of acceptance by the Owner of the completed contract, unless a longer period of guarantee is called for in the Principal Contract documents.

**SECTION 26. HOISTING**: Should the Subcontractor make use of the Contractor's hoisting facilities, the Subcontractor shall pay for this service unless otherwise stated herein. Hoisting where requested and provided shall be maintained only on a scheduled basis at the convenience of the Contractor.

**SECTION 27. SAFETY**: In performing any work under this Subcontract in or on the areas which are under the direct control of the Owner and/or the Contractor, the Subcontractor shall; (a) conform to all safety regulations and requirements prescribed by the Federal, County, City, and any other agency or the Contractor having cognizance over the work being performed: (b) take such additional precautions as the Contractor and/or Owner may reasonably require for safety and accident prevention purposes. The Subcontractor agrees to take all reasonable steps and precautions to prevent accidents and preserve the life and health of Subcontractor's, Contractor's, and Owner's personnel performing or in any way coming in contact with the performance of this Subcontract.

Any violation of such rules and requirements unless promptly corrected, as directed by the Contractor and/or the Owner shall be grounds for the termination at this Subcontract.

**SECTION 28. WAIVERS:** Waivers of any breach hereof shall not constitute a waiver of any subsequent breach of the same or any other provision hereof.

**SECTION 29. LAYOUT RESPONSIBILITY**: The Contractor shall establish principal axis lines and levels whereupon the Subcontractor shall lay out and shall be strictly responsible for the accuracy of their work and for any loss or damage to the Contractor or to other subcontractors engaged in work on the site by reason of failure of the undersigned Subcontractor to set out or perform their work correctly. The Subcontractor shall exercise prudence so that actual final conditions and details shall result in perfect alignment of finish surfaces

**SECTION 30. HEADINGS**: The section headings appearing in this Subcontract are inserted as a matter of convenience only, and for reference purposes only, and are not intended to be a part of this Subcontract, or in any way to define, limit, or describe the scope and Intent of the particular section to which they refer.

Each and every provision, term, condition, and covenant herein contained shall extend to and be binding upon the successors, heirs, personal representatives, and assigns of the respective parties hereto. **IN WITNESS WHEREOF,** the parties hereto have executed this Subcontract Agreement by their proper officers duly authorized herein.

| | |
|---|---|
| Interstate Construction Inc. 05/24/99 | Siemens Building Technologies, inc. ~~Landis Division~~ |
| Contractor | Subcontractor Contractor |
| ADDENDUM Dated ~~4/7/99~~ ATTACHED HERETO IS INCORPORATED HEREIN AND MADE A PART HEREOF BY THIS REFERENCE. | Sub's License No: 758796 |
| | License Classification(s): B, C10, C20 |
| Signature & Date: | Signature & Date: 4/7/99 |
| [signature] | [signature] |
| Title: Robert A. Riedel, Secretary/Treasurer | Title: Assistant Secretary |

MAY 24 1999

**Amended 5/20/1999 Addendum to Purchase Order Terms & Conditions**
**between**
**Interstate Construction, Inc. ("Contractor ")**
**and**
**Siemens Building Technologies, Inc. ("Subcontractor")**

Contractor and Subcontractor agree to modify the Subcontract Terms And Conditions as follows:

1. Delete "Siemens Building Technologies, Landis Division" and substitute therein "Siemens Building Technologies, Inc." as it appears in this contract.
2. **Section 16.** Amend this section as follows:
   **SECTION 16. ADDITIONAL REQUIREMENTS:** The Subcontractor further specifically obligates themselves to the Contractor in the following respects, to wit: (a) that they shall protect and keep Owner and Contractor (including their agents and employees) harmless and free from all liability, penalties, losses, damages, costs, expenses, causes of action, claims or judgments resulting from injury, harm or death to any person or injury, harm or destruction to any property arising out of or in any way connected with the performance of work under this Subcontract, including ~~sole or~~ contributory negligence of Owner, and Contractor jointly or severally, and shall Indemnify said parties from any claims, suits or actions therefor, including attorney's fees paid or incurred in the premises and from any other claims, suits or liability, on account of any act or omission to the extent such damages are caused directly by the negligence or willful misconduct of the Subcontractor, or any of their officers, agents, or servants; (b) that they shall further hold harmless the Owner and Contractor (Including their agents and employees) from liability or claims for any injuries to or death of Subcontractor's employees (and/or employees) of subcontractors employed by this Subcontractor in the performance of work under this Subcontract) resulting from any cause whatsoever, including ~~sole or~~ contributory negligence of Owner and Contractor jointly or severally, and shall indemnify Owner and Contractor for any cost, expense of judgment (including attorney's fees) paid or incurred in that behalf; (c) that they shall indemnify the Contractor against and save them harmless from any and all claims, suits, liability, expense or damage for any alleged or actual infringement or violation of any patent or patent right, arising in connection with this Subcontract and anything done thereunder;(d) that they shall pay for all materials furnished and work and labor performed under this Subcontract, and to satisfy the Contractor thereupon whenever demand Is made, and indemnify the Contractor and the Owner against and save them and their premises harmless from any and all claims, suits, or liens therefor, by others than the Subcontractor; (e) that they shall obtain and pay for all permits, licenses and official Inspections made necessary by their work, and to comply with all laws, ordinances and regulations bearing on their work and the conduct thereof; (f) that they shall warrant and guarantee the work and materials covered by this Subcontract, and agrees to make good, at their own expense, any defect in materials or workmanship which may occur or develop prior to the Contractor's release from responsibility to the Owner therefor; g) that they shall assume toward the Contractor all their obligations and responsibilities that the Contractor assumes toward the Owner, as set forth in the Principal Contract, General and Special Conditions, Drawings, Specifications and other documents hereinabove referred to, insofar as applicable, generally or specifically, to the materials to be furnished, the work to be performed and the responsibilities to be assumed under this Subcontract.
3. **Section 21.** The reference to a "payment band" should be corrected to read "payment bond".
4. **Section 24.** Amend this section as follows: " In the event of loss or damage, the Subcontractor shall proceed promptly to make repairs, or replacement of the damaged work, property and/or materials at their own expense if caused indirectly or directly by the Subcontractor, or any of their officers, agents or servants,, as directed by the Contractor.
5. **New Section Consequential Damages.** Add the following as new section 31: "Anything in the contract documents notwithstanding, in no event shall either Subcontractor or Customer be liable for special, indirect, incidental or consequential damages, including commercial loss, loss of use, or lost profits, except for liquidated damages even if either party has been advised of the possibility of such damages."

The parties agree that this addendum modifies the **Subcontract Agreement** between the parties, dated March 12, 1999 and is incorporated therein by this reference.

| | |
|---|---|
| Contractor: **Interstate Construction, Inc.** | Subcontractor: **Siemens Building Technologies, Inc.** |
| by: [signature] | by: [signature] MAY 24 1999 |
| Name & Title: Robert A. Riedel, Secretary/Treasurer | Name & Title: MICHAEL HEUBERGER ASSISTANT SECRETARY |

# STATEMENT AND ACKNOWLEDGEMENT

FORM APPROVED
OMB NO. 3090-0119

## PART 1 - STATEMENT OF PRIME CONTRACTOR

| 1. PRIME CONTRACT NO. | 2. DATE SUBCONTRACT AWARDED | 3. SUBCONTRACT NUMBER |
|---|---|---|
| NAS2-99039 (VDG) | 03/12/99 | 5340-003 |

| 4. PRIME CONTRACTOR (Name, address and ZIP code) | 5. SUBCONTRACTOR (Name, address and ZIP code) |
|---|---|
| Interstate Construction Inc.<br>3909 Security Park Drive<br>Rancho Cordova, Ca. 95742 | Siemens Building Technologies, Inc., Landis Division<br>2525 Barrington Court<br>Hayard, CA 94545 |

6. The prime contractor states that under the contract shown in Item 1, a subcontract was awarded on date shown in Item 2 by (Name of Awarding Firm)

Interstate Construction, Inc.

to the subcontractor identified in Item 5, for the following work:

Furnish Labor, Material, Equipment, And All As Required To Perform The Scope Of Work As Stated In The Above Referenced Subcontract And In Strict Accordance With Plans And Specifications.

| 7. PROJECT | 8. LOCATION |
|---|---|
| Process Cooling System, Building N258 | NASA-Ames Research Center, Moffett Field, CA |

| 9. NAME AND TITLE OF PERSON SIGNING | 10. BY (Signature) | 11. DATE SIGNED |
|---|---|---|
| Lanson R. Brown, Vice President | [signature] | 23 April 1999 |

## PART II - ACKNOWLEDGMENT OF SUBCONTRACTOR

12. The subcontractor acknowledges that the following clauses of the contract shown in Item 1 are included in this subcontract:

| | |
|---|---|
| Contract Work Hours and Safety | Davis-Bacon Act |
| Standards Act - Overtime | Apprentices and Trainees |
| Compensation - Construction | Compliance with copeland Regulations |
| Payrolls and Basic Records | Subcontracts |
| Withholding of Funds | Contract Terminiation-Debarment |
| Disputes Concerning Labor Standards | Certification of Eligibility |

13. NAMES(S) OF ANY INTERMEDIATE SUBCONTRACTORS, IF ANY

| 14. NAME AND TITLE OF PERSON SIGNING | 15. BY (Signature) | 16. DATE SIGNED |
|---|---|---|
| Michael Heuberger Michael Heuberger<br>Assistant Secretary | [signature] | 4/7/99 |

NSN 7540-01-151-4297
1413-101

STANDARD FORM 1413 (10-83)
Prescribed by GSA
FAR (48 CFR) 53.222(e)

# CHANGE ORDER

Contract No. / Purchase Order No. 5340-003 Change Order No. One

This CHANGE ORDER, entered into on 03/20/00 amends the AGREEMENT referenced by the above Contract No. / Purchase Order No. between

**Siemens Building Technologies, Inc.; 2525 Barington Court; Hayward, CA 94545**

(the vendor) and INTERSTATE CONSTRUCTION, INC., 3909 Security Park Drive, Rancho Cordova, CA 95742 (the purchaser), and is subject to all the terms and conditions of the referenced AGREEMENT as though they were printed in full herein.

It is agreed to amend the Contract / Purchase Order

____ as per the attached Exhibit

X as follows

Control Testing Additional Work, PC #5 — 11,340.00

% Sales Tax -

| | |
|---|---|
| Total this change order | $ 11,340.00 |
| Previous change orders | $ - |
| Original contract | $ 351,725.00 |
| Current contract / purchase order | $ 363,065.00 |

The parties hereto have executed this Change Order by the proper duly authorized agents.

| | |
|---|---|
| INTERSTATE CONSTRUCTION, INC. | |
| Purchaser | Vendor |
| | |
| Signature | Signature |
| John Hartmann | |
| typed or printed name of signatory | typed or printed name of signatory |
| Project Manager | |
| Title | Title |

Co-01.xls

000010

SIEMENS

June 26, 2000

Interstate Construction
3909 Security Park Drive
Rancho Cordova, CA 95742
Attn: Mr. John Hartmann

Cc: Glen Zwang – Bartko Zankel Tarant & Miller
Wes Miess, Garry Graham, Jason Daters, Glen Leggoe - Siemens
Job File #620-PE-9677

Project: **NASA N258 Process Cooling System {NA2-99039}**

Subject: **Siemens Claim #1 through #5 and PC #16**

John,

Enclosed are documents for the following:

| | |
|---|---|
| Claim #1 for $9,989.76: | Submitted on June 22, 2000-copy enclosed |
| Claim #2 for $74,632.80: | Enclosed |
| Claim #3 for $39,744.00: | Enclosed |
| Claim #4 for $9,467.80: | Enclosed |
| Claim #5 for $5,111.04: | Enclosed |
| PC #16 for $4,588.32: | Submitted on June 14, 2000-copy enclosed |

We would appreciate a response from Vivienne Gallo of NASA within 60 days, as stated in our Thursday June 8, 2000 meeting.

Siemens is pleased with the results of the automatic operation of this complex chiller system and working with Interstate Construction on this project as well. We look forward to another opportunity in the future.

Regards,

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**
Landis Division
2525 Barrington Court
Hayward, CA 94545

510-783-6000 Off.
510-293-2100 Fax

NASA N258
#620-PE-9677
CLAIM #1 THRU #6 SUMMARY BREAKDOWN

| CLAIM ITEM # | COLOR CODE | DESCRIPTION OF WORK | INITIAL AMOUNT | REVISED AMOUNT | DATE SUBMITTED | NET DIFF |
|---|---|---|---|---|---|---|
| 1 | | PHASE D DELAYS | 9,258.00 | 9,989.76 | 22-Jun-00 | 731.76 |
| 2 | | 24 HOUR WATCH | 88,248.00 | 74,632.80 | 26-Jun-00 | -13,615.20 |
| 3 | | BLN TRUNK & MODIFY PPCL TO ENHANCE | 47,742.00 | 39,744.00 | 26-Jun-00 | -7,998.00 |
| 4 | | NETWORK CARD CONFIG AND DELAYS | 10,368.00 | 9,467.80 | 26-Jun-00 | -900.20 |
| 5 | | 15 HR CHILLER SHUT DOWN | 7,254.00 | 5,111.04 | 26-Jun-00 | -2,142.96 |
| PC #16 | | ENHANCED ALARMING | 4,776.00 | 4,588.32 | 14-Jun-00 | -187.68 |
| | | TOTAL AMOUNT OF CHANGE ORDER | $167,646.00 | $143,533.72 | | -$24,112.28 |

**SIEMENS**

June 22, 2000

Interstate Construction
3909 Security Park Drive
Rancho Cordova, CA 95742
Attn: Mr. John Hartmann

Cc: Glen Zwang – Bartko Zankel Tarant & Miller
Wes Miess, Garry Graham, Jason Daters, Glen Leggoe - Siemens
Job File #620-PE-9677

Project: **NASA N258 Process Cooling System {NA2-99039}**

Subject: **Siemens Claim #1, Phase "D" delays**

John,

Claim #1 for financial compensation, for the amount of **$9,989.76**. See attach spreadsheet for cost break down. Claim is based on, but not limited to items stated below, which are just a brief description of events that caused the additional burden.

- Interstates notified Siemens that Saturday January 29, 2000 at 8:00 a.m., piping work will be complete and new system will go online with new software. {See attachment 'A'}
- Saturday January 29, 2000 at 8:00 a.m. Siemens was present to implement and to exercise equipment per "Approved" validated software program. Interstate completed their portion of work Saturday January 29, 2000 at 6:30 a.m. and notified Siemens personnel to proceed with initial startup of systems.
- From Saturday January 29, 2000 at 8:00 a.m. till Tuesday February 1, 2000 at 11:40 a.m., Siemens was unable to fully test approved validated chiller software program due to mechanical deficiencies and secondary chilled water loops flow problems, not Siemens related. {See attachment "B"}. Some of the mechanical deficiencies were:
    1) Not able to run Chillers, pumps, cooling tower fans in automatic mode because software sequence would turn off chiller, due to no heat load within building.
    2) Sunday January 30, 2000 at 8:00 p.m., pneumatic mixing valve #MOV401 was identified nonfunctional due to excessive condensation within pilot positioner, which had to be replaced by others.
    3) Sunday January 30, 2000 at 11:00 p.m., it was determined through field investigations that there was no water flow at secondary high temp loop due to NASA lock-out service tag on unidentified two-way valve, which was opened by NASA personnel on Monday January 31, 2000 around 8:00 a.m.
    4) Monday January 31, 2000 at 3:00 a.m., JCI temporarily installed two hose bibs to secondary high temp loop, to facilitate some water flow.
- Tuesday February 1, 2000 at 11:30 a.m., system was checkout and indications that system was operational. At that time Cray computer personnel initiated startup procedures. Siemens chiller sequence was back to normal automatic operations and at 11:40 a.m., Cray computer personnel confirmed that their systems was up & running.

We would appreciate a response from Vivienne Gallo of NASA within 60 days, as stated in our Thursday June 8, 2000 meeting.

Siemens is pleased with the results of the automatic operation of this complex chiller system and working with Interstate Construction on this project as well. We look forward to another opportunity in the future.

Regards,

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**
Landis Division
2525 Barrington Court
Hayward, CA 94545

510-783-6000 Off.
510-293-2100 Fax

NASA N258
#620-PE-9677
PHASE 'D' DELAYS

CLAIM #:

| NAME | TITLE | TOTAL REGULAR TOTAL | OT 1.5 TOTAL | OT 2.0 TOTAL | | | |
|---|---|---|---|---|---|---|---|
| VINH LAM | PROJECT ENGINEER | 16.0 | 3.0 | 0.0 | | | |
| GLEN LEGGOE | DQMS ENGINEER | 16.0 | 3.0 | 0.0 | | | |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| DAN WALDEN | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| BRIAN BULLOCK | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| TIM JOZSA | SR. SYSTEM ENGINEER | 6.0 | 0.0 | 0.0 | | | |
| JEFF SIM | SYSTEM SPECIALIST | 6.0 | 0.0 | 0.0 | | | |
| JASON MURRAY | ENGINEERING SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| PATRICK HAYES | SERVICE SPECIALIST | 8.0 | 0.0 | 0.0 | | | |
| NATHAN SANTORA | SERVICE SPECIALIST | 4.0 | 0.0 | 0.0 | | | |
| LARRY DALEY | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| PHIL CARSWELL | SYSTEM SPECIALIST | 4.0 | 6.0 | 0.0 | | | |
| MATT TUDOR | SUPPORT ENGINEER | 8.0 | 0.0 | 0.0 | | | |
| GARRY GRAHAM | GROUP MANAGER | 0.0 | 0.0 | 0.0 | | | |
| DAN SASAKI | PROJECT MANAGER | 0.0 | 0.0 | 0.0 | | | |
| | | | | | RATE: | | TOTAL: |
| STRIAGHT HOURS: | | 68.0 | | | $96.00 | | $6,528.00 |
| OVERTIME HOURS @ TIME AND A HALF | | | 12.0 | | $144.00 | | $1,728.00 |
| OVERTIME HOURS @ DOUBLE TIME | | | | 0.0 | $192.00 | | $0.00 |
| SUBTOTAL | | | | | | | $8,256.00 |
| **OVERHEAD 10%** | | | $8,256.00 | + | $825.60 | = | $9,081.60 |
| **PROFIT 10%** | | | $9,081.60 | + | $908.16 | = | $9,989.76 |
| | | | | | | | |
| | TOTAL LABOR DAYS | | | | | | |
| VEHICLE COST | 10 | AT $30/DAY | | | | | NA |
| | | | | | | | |
| **TOTAL AMOUNT OF PURPOSED CHANGE REQUEST** | | | | | | | **$9,989.76** |

NASA N258
#620-PE-9677
PHASE 'D' DELAYS

CLAIM #1

| NAME | TITLE | SUN: 30-JAN-00 ST | SUN OT 1.5 | SUN OT DBL | MON: 31-JAN-00 ST | MON OT 1.5 | MON OT DBL | TUE: 1-FEB-00 ST | TUE OT 1.5 | TUE OT DBL | WED: 2-FEB-00 ST | WED OT 1.5 | WED OT DBL | THU: 3-FEB-00 ST | THU OT 1.5 | THU OT DBL | FRI: 4-FEB-00 ST | FRI OT 1.5 | FRI OT DBL | SAT: 5-FEB-00 ST | SAT OT 1.5 | SAT OT DBL | REGULAR TOTAL | OT 1.5 TOTAL | OT 2.0 TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| VINH LAM | PROJECT ENGINEER | | | | 8.0 | | | 8.0 | 3.0 | | | | | | | | | | | | | | 16.0 | 3.0 | 0.0 |
| GLEN LEGGOE | DQMS ENGINEER | | | | 8.0 | | | 8.0 | 3.0 | | | | | | | | | | | | | | 16.0 | 3.0 | 0.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | | | 2.0 | | | 4.0 | | | | | | | | | | | | | | | 6.0 | 0.0 | 0.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | 6.0 | | | | | | | | | | | | | | | 6.0 | 0.0 | 0.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | 8.0 | | | | | | | | | | | | | | | 8.0 | 0.0 | 0.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | | | | | 4.0 | | | | | | | | | | | | | | | 4.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | 4.0 | 6.0 | | | | | | | | | | | | | | | | | 4.0 | 6.0 | 0.0 |
| MATT TUDOR | SUPPORT ENGINEER | | | | 8.0 | | | | | | | | | | | | | | | | | | 8.0 | 0.0 | 0.0 |
| GARRY GRAHAM | GROUP MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| STRIAGHT HOURS: | | 0.0 | | | 30.0 | | | 38.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 68.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 0.0 | | | 6.0 | | | 6.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 12.0 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 |

A

Claim #1

**SIEMENS**

**Landis Division**

**Fax / Email #14**

| | | | |
|---|---|---|---|
| To: | John Hartmann | From: | R. Dan Sasaki |
| | Interstate Construction | Phone: | (510) 783-6000 x221 |
| Fax: | (916) 351-0950 | Fax: | (510) 293-2100 |
| Phone: | (916) 351-0622 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| Date: | January 19, 2000 | Pages to Follow: | 1 |

Cc: AC Mosher – NASA {amosher@mail.arc.nasa.gov}
Dave Johnston – ICI (650) 691-1271
Glen Leggoe, Vinh Lam, Jason Murray, – Siemens
Wes Miess, Jason Daters, Garry Graham – Siemens
Job File #620-PE-9677

Message: **NASA N258, Process Cooling System**

John,

Response to your Email of 1-18-00:

Interstate:

NASA, DMJM and Interstate Construction are very concern whether Siemens will be ready for January 29th 2000. This date is the contractual shut down day when the new system goes on line. Testing of your software appears to be lagging and behind. Siemens on-site labor force is sporadic. I was told testing would not resume till Monday the 24th of January.

Siemens response:

As one of the partners in this project, Siemens is also concerned whether the project will be ready for January 29th 2000. Software testing has been proceeding since Interstate notification of VFD startup 3 weeks behind schedule. Testing has uncovered incorrect wiring and programming of the VFD system, notifying Interstate personnel for corrective action. Siemens has been on-site consistently, and continues to work with the schedule compression imposed on us.

Interstate:

Please take serious note; come January 29th at 8 am, building will be shut down. Piping work will be completed and new system will go online with new software. If Siemens is not ready, liquid dated damages, as stated in the contract specification and our subcontract agreement, will be accessed.

Siemens response:

Siemens cannot accept responsibility for delays due to work by others. We continue to allocate appropriate manpower and skills for our commissioning and the additional troubleshooting of work by others, which has become evident and cost impact will be evaluated and assess accordingly.

Interstate:

In order to assure compliance and staying on track, Interstate Construction, NASA and DMJM are willing to work this weekend in order to complete testing, and have some breathing room. I strongly suggest you take up this option.

**Siemens Building Technologies, Inc.**

Landis Division
2525 Barrington Court
Hayward, CA 94545

Tel: (510) 783-6000
Fax: (510) 293-2100

A

Siemens response:
Based on the changing schedule, being determined as GE VFD Modbus system commissioning approaches completion, your GE Modbus person could be required to be present for field testing.

It also appears that Interstate will need to setup mechanical equipment systems before we can exercise and test "Approved" software program prior to witness test, without disrupting service to building loops from Temporary Chiller Plant.

One concern is low side pressure tap to CHWR from device ID. Tag #DPT-201, 301, 401 and 501 are sensing Temp Chiller Plant CHWR pressure. If interstate can't isolate, low side tap location will need to be moved to correct location, please advise. This is currently preventing us from performing Pump Failure field tests stated below.

Siemens is projecting approximately 2 days to exercise field testing after Interstate has items above have been resolved.

Interstate:
Please respond to this letter no later than 12 noon on Wednesday the 19th. Please indicate weather you will take up the weekend testing option, or indicate in writing, prefer to resuming tests on Monday, January 24, and in doing so would give Siemens opportune time to complete testing, as specified, and ready for Saturday January 29th shut down and software implementation.

Siemens response:
Siemens is targeting next Wednesday January 26, 2000 for witness Field Testing by NASA, DMJM, ICI and Siemens personnel, if items above are resolved by Interstate.

If weekends are required for work-field testing due to GE VFD Modbus commissioning being three (3) weeks late, NASA or Interstate to issue EC# for compression of Siemens checkout time?

Volume 2 Field Testing are as follow:

| | |
|---|---|
| 01761-115: | Chiller Emergency Start Sequence 1, Period 1- Field Test **NA** |
| 01761-116: | Chiller Emergency Start Sequence 1, Period 2- Field Test |
| 01761-117: | Chiller Emergency Start Sequence 1, Period 3- Field Test **NA** |
| 01761-118: | Chiller Emergency Start Sequence 1, Period 4- Field Test **NA** |
| | {**NA** – Not applicable due to Chiller #1 not installed} |
| 01762-50: | Cooling Tower Fan Failure- Field Test |
| 01763-35: | Condensing Water Pump Failure- Field Test |
| 01764-29: | Chilled Water Pump Failure- Field Test |
| 01765-10: | Chilled Water Pump Failure {Low Temp Loop}- Field Test |
| 01766-11: | Chilled Water Pump Failure {High Temp Loop}- Field Test |
| 01767-12: | Chilled Water Pump Failure {Cray Loop}- Field Test |
| 01768-5: | Refrigerant Leak Detection- Field Test |
| | **[Pending NASA written approval of PC #6]** |
| 01768-6: | Manual Shutdown switch Activation- Field Test |

If there are any other questions, please contact me.

Sincerely,
R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**

Landis Division
2525 Barrington Court
Hayward, CA 94545

Tel: (510) 783-6000
Fax: (510) 293-2100

[redacted] TRANSACTION REPORT

P.01

JAN-19-2000 WED 05:02 PM

| DATE | START | RECEIVER | TX TIME | PAGES | TYPE | NOTE | M# | DP |
|---|---|---|---|---|---|---|---|---|
| JAN-19 | 05:01 PM | 16506911271 | 54" | 2 | SEND | OK | 664 | |

TOTAL : 54S PAGES: 2

A

# SIEMENS

Landis Division

**Fax / Email #14**

| | | | |
|---|---|---|---|
| To: | John Hartmann<br>Interstate Construction | From: | R. Dan Sasaki |
| Fax: | (916) 351-0950 | Phone: | (510) 783-6000 x221 |
| Phone: | (916) 351-0622 | Fax: | (510) 293-2100 |
| Date: | January 19, 2000 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| | | Pages to Follow: | 1 |

Cc: AC Mosher – NASA {amosher@mail.arc.nasa.gov}
Dave Johnston – ICI (650) 691-1271
Glen Leggoe, Vinh Lam, Jason Murray, – Siemens
Wes Miess, Jason Daters, Garry Graham – Siemens
Job File #620-PE-9677

Message: **NASA N258, Process Cooling System**

John,

Response to your Email of 1-18-00:

Interstate:

NASA, DMJM and Interstate Construction are very concern whether Siemens will be ready for January 29th 2000. This date is the contractual shut down day when the new system goes on line. Testing of your software appears to be lagging and behind. Siemens on-site labor force is sporadic. I was told testing would not resume till Monday the 24th of January.

Siemens response:

JAN.19.2000 8:16AM INTERSTATE CONST. NO.239 P.1/1

A

INTERSTATE CONSTRUCTION

January 18, 2000

Siemens Building Technologies, Inc.
2525 Barington Court
Hayward, CA 94545

RE: Subcontract 5340-003
Process Cooling System, Building N258
NASA-Ames Research Center, Moffett Field, CA
Contract Number NAS2-99039 (VDG)

Attention: Dan Sasaki

Dan:

NASA, DMJM and Interstate Construction are very concern whether Siemens will be ready for January 29th 2000. This date is the contractual shut down day when the new system goes on line. Testing of your software appears to be lagging and behind. Siemens on-site labor force is sporadic. I was told testing would not resume till Monday the 24th of January.

Please take serious note; come January 29th at 8 am, building will be shut down. Piping work will be completed and new system will go online with new software. If Siemens is not ready, liquid dated damages, as stated in the contract specification and our subcontract agreement, will be accessed.

In order to assure compliance and staying on track, Interstate Construction, NASA and DMJM are willing to work this weekend in order to complete testing, and have some breathing room. I strongly suggest you take up this option.

Please respond to this letter no later than 12 noon on Wednesday the 19th. Please indicate weather you will take up the weekend testing option, or indicate in writing, prefer to resuming tests on Monday, January 24, and in doing so would give Siemens opportune time to complete testing, as specified, and ready for Saturday January 29th shut down and software implementation.

If you have any questions, please call me at your conveniences.

John Hartmann
Project Manager
Interstate Construction, Inc
CC: Dave Johnston, IC
AC Mosher, NASA

*3909 Security Park Drive*
*Rancho Cordova, CA 95742*
*website: www.interstatecon.com*

*916/351-0622*
*fax: 916/351-0950*
*e-mail: info@interstatecon.com*

CLAIM #1

**Leggoe Glen**

**From:** Leggoe Glen
**Sent:** Wednesday, February 09, 2000 6:12 PM
**o:** Graham Garry
**Cc:** Sasaki Dan; Miess Wesley
**Subject:** NASA Letter 08 Feb

B

Thanks for giving me an opportunity to review the letter which Vivienne Gallo, contracting officer for NASA, sent to Interstate Construction (attn: John Hartman). I'll offer my opinion based on the analysis we have completed to date. I am struck by the apparent "rush to judgement" to assign accountability based on limited input or understanding of the system. This is particularly troubling to me, having talked with several NASA personnel indicating that we would be investigating the root cause of why events occurred.

NASA states "that the 36-hour Work Phase E startup delay was the result of a missing software "go to" statement, and the need to implement several other software changes to improve network communications with the variable frequency drive RTU network."

The "36-hour Work Phase E startup delay", implying the delay began Midnight on Monday morning, was the result of several factors including, but not limited to: no water flow in the high temperature secondary loop established by others until after 3 AM monday morning, no water flow in the Cray secondary loop established by others until after 4 AM monday morning (both these items were promised to Siemens by NASA in the Wednesday Coordination Meeting on 26-Jan-00), contaminated air lines resulting from defective compressed air dryer, mis-matched chilled water pumps and motors necessitating additional NASA directed testing to determine VFD safety limits, specified condenser water strainers preventing sufficient water flow and necessitating additional testing to determine misapplication of specified strainer. Additional factors may have also contributed to the "delay."

The "missing software 'go to' statement", when added on Monday, may have incidentally triggered a momentary improvement in system response, but is not required and provided no change in the application software (PPCL) operation. The implemented "several other software changes to improve network communications with the variable frequency drive RTU network" similarly may have initiated a momentary improvement in system response, but provided no nctional change in the application software (PPCL) operation.

A timer problem did appear evident "after the plant unexpectedly [shut down] for 4-hours at 7:32 a.m. on Thursday, February 3, 2000." During the several hours prior to 7:32 on Thursday, FMCS operators (using logon operator initials KAG and SP) were recorded by the FMCS as making changes to the Workstation in Control Room 227 (Bldg. N-258), both at the workstation and from the FMCS or PDC Workstations in their location 510. Changes made at the time included ostracizing and adding nodes on the network multiple times, including one event recorded six (6) seconds prior to the alarm event marking failure of the Cray Secondary Chilled Water Loop Pressure at 07:32:44 on Thursday, February 3, 2000.

During the several hours following the event at 07:32:44 on Thursday, February 3, 2000, a NASA FMCS operator (Ken Goodman) made structural changes to the installed software. The software now operating in the system is changed from what Siemens validated, tested, commissioned and tuned. We have the skills and capability to evaluate the current software, but I don't know if such evaluation is within our contracted scope of work.

As stated in it's letter, "NASA realizes that the ongoing software changes being made by Siemens are necessary to obtain reliable system operation...." We have been monitoring the system but not, to my knowledge, making any changes to the application program. Reliable system operation can only be obtained following failure analysis, risk assessment, and a genuine interest from all involved in making the system work correctly and reliably.

Following determination of the root cause of the system event and any subsequent changes made to the installed control database by any operator on the network, we can restore the application program as validated in the Bench Tests performed in Hayward (tuning and timing parameters adjusted based on field observed conditions will need to be maintained for proper function).

NASA has directed the contractor to provide a test plan. We might suggest that NASA reconsider the directive, based on a fuller understanding of the facts and events.

***Glen Leggoe***

**SIEMENS**

**Landis Division**

B

Interoffice Memo

**To:** Dan Sasaki **Date:** January 29, 2000

**From:** Vinh Lam **Re:** NASA Bldg N258 – Job Diary

**01/24 (Monday):**

1/ Immersion sensors – incorrect installed range (0-120) per spec and system configuration (20-120).

2/ Determined incorrect speed signal to VFDs – programmed as 750 pulses (50 HZ) instead of 900 pulses (60 HZ).

**01/25 (Tuesday):**

1/ Determined insufficient water flow capability through condenser water supply strainers.

2/ VFD summary alarm point works incorrectly. Began investigation of "low word" bits mapped through gateway.

**01/26 (Wednesday):**

1/ Determined insufficient water flow capability through condenser water supply strainers. CH-2 tripped on CW flow. Identified issue to Interstate & NASA.

2/ Unable to verify correct amperage readings from VFDs. Began investigation of drive point 102/103.

3/ Chiller amperage point – verified correct reading chiller panel to FMCS.

4/ Chiller summary alarm and summary alert point determined as same point (like "LENUM") at chiller, not 2 digital points as per specification and points list. Code & point definition configuration changes.

4/ Chiller failure on amperage – determined that specified 2-minute delay was insufficient, extended to 5 min to permit compressor startup & amp draw.

5/ Coordination meeting with NASA, DMJM, JCI, Interstate & Siemens. Plant load was discussed – JCI was instructed to provide load at start of shutdown period – "whatever it takes", including manual positioning of valves, open reheats, introduce warm outside air, equipment startup, etc.

**01/27 (Thursday):**

1/ JCI personnel required system shutdown to change strainer baskets on condenser water supply.

2/ Tower fan trip on high voltage identified. On deceleration, inertia of prop drives VFD voltage trip. Ramp increased to prevent drive trip. (see current trip, later).

**01/28 (Friday):**

1/ Reviewed test data sheet for VFD speed point simulation testing with NASA & DMJM. Tested all drives

(B)



for full range response with Karl Evans (NASA witness) and Rick Baptist (Interstate electrician and field observer for test). Confirmed inability of CHWP (1-4) drives to attain 60 HZ operation due to torque/current limit setting at drive (motor cannot deliver pump HP required above 44 HZ without exceeding rated motor capacity).

2/ Created test form and executed test of condenser water pumps, using "new specified strainer" and "existing strainer". Determined that CW pump system capacity is insufficient to maintain design CW flows with "new specified strainer" at some operating conditions.

**01/29 (Saturday):**

1/ Worked with Michael Tubb from GE to resolve problems with current bundle point readout from the GE Modbus gateway.

2/ Around 8:00 AM, JCI from NASA requested Siemens to shut the condenser water pump system so JCI could check and replace the strainer filter basket. The condenser water pumps system went back on line around 9:00 AM.

3/ Finalized MBC cabinet database, checked chillers and verified pump sequences.

4/ Glen requested of JCI (Scott Prevost) to obtain building load to system, was told "nothing could be done, as JCI did not have access to building and couldn't control the AHU load.

5/ Chiller #4 has tripped out on low oil pressure alarm on Friday (1/28) during the exercise of the chiller sequence from Siemens. Gary Wittmer, field coordinator from Carrier was back on site today checking into the low oil pressure problem. Carrier (Gary) commented that the chiller had not ran enough run time and was below the desired condenser water temperature (currently CWT 55 ~ 60 Deg F versus desired CWT 70 ~ 75Deg F) without the tower fan running.

**01/30 (Sunday):**

1/ Siemens continued to check out chiller and pump sequences.

2/ Due to insufficient building load, the three chillers still cycled on (15 min or less) and off (ten min).

3/ Around 10:00 AM, tested CW pump and CHW pump failure sequences with DMJM (Karl) and Interstate (Rick).

4/ Around 3:30 PM, tested emergency chiller sequence with DMJM (Karl) and Interstate (Rick).

5/ Finalized tower fan sequence.

6/ Approximately 11:30 AM, AC Morser from NASA came in the Siemens trailer. Siemens (Glen) expressed the difficulty to test the chiller sequence without the building load. Around 1:00 PM, JCI and AC Morser notified Siemens that all the control valves in the building were open. Siemens noticed that the chiller had stayed on line for 15 minutes and less. The building load still was not sufficient as Siemens anticipated to maintain chiller stable operation.

7/ Finalized Cray loop mixing valves (MOV401 & MOV403). Around 8:00 PM, when Siemens exercised

(B)



the mixing valves, excessive condensation water got pushed out from the exhaust port at the pilot positioner on valve MOV401. Siemens (Vinh) notified interstate (Dave & Carlo). Carlo commented that he would notify JCI to check into the air dryer Monday morning.

7/ At 11:00 PM, the chiller plan sequence #2 was enabled through PPCL. Siemens and NASA engineer staffs were waiting for the Cray computer to come on line. After midnight, the secondary loop equipment was on line and did not have sufficient chilled water supply to the high temp loop. Siemens started looking into the loop pressure problem and found that the high temp loop delta P was at 0 PSI across the loop (High port 80 PSI and Low port 80 PSI). Siemens notified NASA (Bill Iceman and AC Morser) that possibly some isolation hand valves were closed in the loop.

8/ Piping investigation ensued to identify flow failure in high temp and Cray secondary loops. By 3 AM Monday, no change in flow status. Unable to verify flow or perform any loop tuning.

**01/31 (Monday):**

1/ Continued investigation of high temp loop dp reading of zero. With JCI (Courtney) in tow, pointed out 100 PSI reading at both high side port gauge and low side port gauge of DPT. Further investigation of HT loop flow blockage continued to determine reason for continued No Flow through this loop. Whatever resolution was made – no notification of corrective action was transmitted to Siemens.

1/ Approx. 3 AM, Scott Prevost informed Siemens (Glen) that flow through Cray loop had been enabled by installation of two garden hose bypass loops on hose bibs, permitting flow despite closed 2 way valves on RCU Cooling unit(s).

1/ Chiller #2 dropped off line (see panel activity log report). The emergency chiller sequence was enabled and all pumps were started, but the loop pressure did not recover quick enough and the two emergency chiller #2 & #3 were tripped out on low condenser flow.

**02/01 (Tuesday):**

1/ Verified setpoints with AC Mosher who OK'd – chiller LWT setpoint = 41.5, main secondary loop setpoint for stage-up = 45 (not 42 as per spec).

1/ Siemens (Glen) was requested (7:30 AM) to checkout system & indicate suitability for operation. At 11:30 meeting, system was "blessed". Cray operating personnel initiated startup procedures.

1/ Siemens (Glen) put the chiller sequence back to normal operation (FICHSEQ=4) and waiting for Cray computer to come back on line. At 11:40 AM, Cray operating personnel notified Siemens that system was up & running. Chiller plant & controls functioned properly (two secondary loop pumps disabled due to mechanical problems, #6 check valve & #8 bearing).

**02/02 (Wednesday):**

1/ Vinh had no report on this day.

**02/03 (Thursday):**

B



1/ Chiller #4 dropped out at 7:30 AM (see panel activities log report).

2/ There were also some network traffic problems during the incident (see panel activities log report).

3/ All the GE pump control loops were short cycled from 0 Hz to 8 Hz and from 8 Hz to 0 Hz because the Secnd8 was kept reset from 0 & 1.

**02/03 (Thursday):**

1/ Between 22:16 Wednesday and 07:30 Thursday, JCI personnel at two locations (FMCS or PDC Insight in 510 and Insight Node 98 in 227 Control Room in N-258) implemented system and network changes. Changes caused corruption of database in panels 50 & 51, resulting in plant failure at 07:32 on Thursday.

2/ JCI (Ken Goodman) changed operating software to obtain temporary functional operation of plant. Validated code in panel 50 was modified/replaced.

**02/04 (Friday):**

1/ Vinh had no report on this day.

**02/05 (Saturday):**

1/ Chiller system is normal on all shifts.

**02/06 (Sunday):**

1/ At 1:00 AM, Secnd8 counter start counting up. (Larry Daley's shift)

2/ At 12:00 PM, Nathan contacted me on the nextel that high temp loop pressure and temperature were in alarm. I directed Nathan to set up a trending report for the high temp (DPT & CHWP8-9 O/P values). Since the high temperature loop temperature set point was set at 52 Deg F per contract document, the high temp loop temperature has never achieved above set point due to lack of building load. Therefore the high temp loop temperature was always in alarm condition. (Nathan Santora's shift)

3/ At 4:52 PM, chiller #4 dropped out on low condenser flow (see panel activity log report). The emergency chiller sequence was enabled and all pumps were started, but the loop pressure did not recover quick enough and the two emergency chiller #2 & #3 were on line. Chiller #3 was dropped out on low condenser flow.

4/ There were also some network traffic problems during the incident (see panel activities logs report).

B



**Siemens Building Technologies, Inc.**

Landis Division
2525 Barrington Court
Hayward, CA 95545

Tel: (510) 783-6000
Fax: (510) 293-2100

SIEMENS

(B)

Landis Division

**Fax / Email #50**

| | | | |
|---|---|---|---|
| To: | John Hartmann<br>Interstate Construction | From: | R. Dan Sasaki |
| | | Phone: | (510) 783-6000 x221 |
| Fax: | (916) 351-0950 | Fax: | (510) 293-2100 |
| Phone: | (916) 351-0622 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| Date: | January 22, 2000 | Pages to Follow: | **0** |

Cc: AC Mosher – NASA amosher@mail.arc.nasa.gov
Dave Johnston – ICI (650) 691-1271
Garry Graham, Jason Daters, Glen Leggoe, – Siemens
Job File #620-PE-9677

Message: **NASA N258, Process Cooling System**

John,

Siemens personnel have been struggling with preliminary equipment start-up due to GE VFD Modbus not completely commissioned. Problems that we have identified are the following and if system were commissioned 100%, these problems would have surfaced January 3 & 4, 2000.

Over-voltage trip at VFD:
Cooling Tower Fan #1 through Cooling Tower Fan #4

Electrical Thermal Overload trip at VFD:
Chilled Water Pump CHWP-1 through Chilled Water Pump CHWP-4

Modbus Communication Error at VFD:
Chilled Water Pump CHWP-7 and Chilled Water Pump CHWP-8
Condenser Water Pump CWP-2 through Condenser Water Pump CWP-4

If these items above are factual and true, schedule your GE VFD Modbus representative to be at job site on Monday morning, January 24, 2000, to correct any and all VFD wiring, hardware or programming problems.

Interstate and Siemens are in the 11th hour of this project but with the right cooperation, we can make this project success. Contact me Monday morning to confirm time when GE rep will be there.

Siemens personnel will be there Tuesday January 25 at 1:00 p.m. for job site meeting.

Sincerely,

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**

Landis Division
2525 Barrington Court
Hayward, CA 94545

Tel: (510) 783-6000
Fax: (510) 293-2100

**Sasaki Dan**

B

**From:** Leggoe Glen
**Sent:** Thursday, February 10, 2000 3:09 PM
**To:** 'jhartmann@interstatecon.com'
'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; Sasaki Dan; Graham Garry; Lam Vinh-Hoa; Leggoe Glen; Miess Wesley
**Subject:** NASA N-258, Process Cooling System

John,

Attach document is per your request. Hard copy will be faxed Dave Johnston. Call me once you have time to digest. I'll call AC Mosher and notify him of email.

By the way, I'm on Glen leggoe's email account. Thanks.

N258 Opc IC2 Far16.doc

***R. Dan Sasaki***
***Project Manager***

**SIEMENS**

B

**Landis Division**

**Fax / Email #16**

| | | | |
|---|---|---|---|
| To: | John Hartmann | From: | R. Dan Sasaki |
| | Interstate Construction | Phone: | (510) 783-6000 x221 |
| Fax: | (916) 351-0950 | Fax: | (510) 293-2100 |
| Phone: | (916) 351-0622 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| Date: | February 10, 2000 | Pages to Follow: | 0 |

Cc: AC Mosher – NASA amosher@mail.arc.nasa.gov
Bill Eismann – NASA beismann@mail.arc.nasa.gov
Vivienne D Gallo – NASA vgallo@mail.arc.nasa.gov
Dave Johnston – ICI (650) 691-1271
Garry Graham, Jason Daters, Glen Leggoe, – Siemens
Job File #620-PE-9677

Message: NASA N258, Process Cooling System

John,

Controls for the chiller plant began automatic operation mid-day on 01-Feb-2000: many factors contributed to a 36-hour delay from the scheduled 23:59 30-Jan-2000 turnover. We would like to meet with Interstate and NASA to review all contributing factors.

Automatic control of the chiller plant was in-place until an incident on Thursday morning (03-Feb-00). Siemens has extensively investigated the incident; evaluating application code, system activity logs and trend data. The entire project team would benefit from an open discussion of our findings and conclusions.

NASA representatives have implemented network, system and application changes, without notification, to SBT installed work for N258 Process Cooling System: this constitutes acceptance of the system, effective 07:30 on February 3, 2000.

SBT has maintained round-the-clock watches as per NASA request, without written directive, purchase order or change notice. SBT is requesting a more formal process to determine our extended on-site role ands responsibilities: we are currently scheduling on-site labor only until 17:00 tomorrow (11-Feb-00). If we are needed for further responsibility, SBT needs detailed and written direction.

SBT recommends a meeting of all concerned parties, to discuss recent events, the current state of the Process Cooling System controls, and suggestions to improve overall operation of the system.

Please contact us if you have any comments or concerns.

Sincerely,

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**

Landis Division
2525 Barrington Court
Hayward, CA 94545

Tel: (510) 783-6000
Fax: (510) 293-2100

**SIEMENS**

**Landis Division**

Fax #25

| | | | |
|---|---|---|---|
| To: | John Hartmann | From: | R. Dan Sasaki |
| | Interstate Construction | Phone: | (510) 783-6000 x221 |
| Fax: | (916) 351-0950 | Fax: | (510) 293-2100 |
| Phone: | (916) 351-0622 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| Date: | June 23, 2000 | Pages to Follow: | **16** |

Cc: Glen Zwang – Bartko Zankel Tarant & Miller
Wes Miess, Garry Graham, Jason Daters, Glen Leggoe – Siemens
Job File #620-PE-9677

Message: NASA N258, Process Cooling System

John,

Attach is Claim #1 for processing. Hard copy will be mailed to your office today.

Please contact me if you have any comments or concerns.

Regards,

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**

Landis Division
2525 Barrington Court
Hayward, CA 94545

Tel: (510) 783-6000
Fax: (510) 293-2100

TRANSACTION REPORT

P.01

JUN-23-2000 FRI 02:12 PM

| DATE | START | RECEIVER | TX TIME | PAGES | TYPE | NOTE | M# | DP |
|---|---|---|---|---|---|---|---|---|
| JUN-23 | 02:07 PM | 19163510950 | 5′19″ | 17 | SEND | OK | 836 | |

TOTAL : 5M 19S PAGES: 17

**SIEMENS** **Landis Division**

Fax #25

| | | | |
|---|---|---|---|
| To: | John Hartmann<br>Interstate Construction | From: | R. Dan Sasaki |
| Fax: | (916) 351-0950 | Phone: | (510) 783-6000 x221 |
| Phone: | (916) 351-0622 | Fax: | (510) 293-2100 |
| Date: | June 23, 2000 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| | | Pages to Follow: | **16** |

Cc: Glen Zwang – Bartko Zankel Tarant & Miller
Wes Miess, Garry Graham, Jason Daters, Glen Leggoe – Siemens
Job File #620-PE-9677

Message: NASA N258, Process Cooling System

John,

Attach is Claim #1 for processing. Hard copy will be mailed to your office today.

Please contact me if you have any comments or concerns.

Regards,

R. Dan Sasaki
Project Manager

SIEMENS

June 26, 2000

Interstate Construction
3909 Security Park Drive
Rancho Cordova, CA 95742
Attn: Mr. John Hartmann

Cc: Glen Zwang – Bartko Zankel Tarant & Miller
Wes Miess, Garry Graham, Jason Daters, Glen Leggoe - Siemens
Job File #620-PE-9677

Project: **NASA N258 Process Cooling System {NA2-99039}**

Subject: **Siemens Claim #2, 24-hour watch**

John,

Claim #2 for financial compensation, for the amount of **$74,632.80**. See attach spreadsheet for cost break down. Claim is based on, but not limited to items stated below, which are just a brief description of events that caused the additional burden.

- Thursday February 3, 2000 Bill Eismann of NASA Email to AC Mosher of NASA concerning around-the clock attendant. {See attach "A"}
- Monday February 7, 2000 Glen Leggoe of Siemens response to Bill Eismann Email of February 3, 2000. {See attach "B"}
- Friday February 11, 2000 Dan Sasaki of Siemens response to John Hartmann of Interstate Email of February 11, 2000 addressing round-the-clock attendant until FMCS (JCI office) was on-line to Bldg. 258 for remote monitoring of Chiller system. Note that Siemens took responsibility for labor for round-the-clock attendant from Monday January 31, 2000 to Wednesday evening February 2, 2000. {See attach "C"}
- NASA's letter dated February 11, 2000 states "I believe that the control system still requires the attendance of a round-the-clock Siemens Technician to monitor the chiller plant and to recover from software related system failures." {See attach "D"}
- Siemens investigations found that system failures starting 07:32 Thursday February 3, 2000 due to excessive network communication traffic on existing NASA site trunk configuration. {See attach "E"}
- Friday February 11, 2000, Siemens Email Interstate and NASA informing them that Siemens was incurring cost for round-the-clock attendant. {See attach "F"}
- Friday February 11, 2000, Interstate directed Siemens to remain status quo until February 15, 2000 meeting or unless notified otherwise. {See attach "G"}
- Tuesday February 15, 2000 meeting notes, Siemens was directed to continue with round-the-clock attendant. {See attach "H"}
- Friday February 18, 2000, Siemens' Email written notice of cost incurring for round-the-clock attendant and will be submitted for change request {See attach "I"}
- Monday February 21, 2000, Siemens' Fax/Email #18 written response to Vivienne Gallo of NASA correspondence dated February 11, 2000. {See attach "J"}
- Wednesday February 23, 2000, Siemens' Email further detailed response to Vivienne Gallo of NASA correspondence dated February 11, 2000. {See attach "K"}
- Wednesday February 23, 2000, Siemens' Email for ending of around-the-clock attendant. {See attach "L"}
- Wednesday February 23, 2000 Email from Interstate addressing requirements to end around-the-clock attendant. {See attach "M"}
- Wednesday February 23, 2000 Wes Miess of Siemens' Email to Interstate formally asking for end to around-the-clock attendant. {See attach "N"}
- Wednesday February 23, 2000 at 15:07, Vivienne Gallo of NASA Email accepting system operation of the N258 Process Cooling System and relieving Siemens personnel from manning around-the-clock attendant. {See attach "O"}

**Siemens Building Technologies, Inc.**
Landis Division
2525 Barrington Court
Hayward, CA 94545

510-783-6000 Off.
510-293-2100 Fax

SIEMENS

We would appreciate a response from Vivienne Gallo of NASA within 60 days, as stated in our Thursday June 8, 2000 meeting.

Siemens is pleased with the results of the automatic operation of this complex chiller system and working with Interstate Construction on this project as well. We look forward to another opportunity in the future.

Regards,

R. Dan Sasaki

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**
Landis Division
2525 Barrington Court
Hayward, CA 94545

510-783-6000 Off.
510-293-2100 Fax

NASA N258
#620-PE-9677
24 HOUR WATCH

| NAME | TITLE | TOTALS FROM WEEKS 1-4 | | | | | |
|---|---|---|---|---|---|---|---|
| | | REGULAR TOTAL | OT 1.5 TOTAL | OT 2.0 TOTAL | | | |
| VINH LAM | PROJECT ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| GLEN LEGGOE | DQMS ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| DAN WALDEN | SYSTEM SPECIALIST | **112.0** | **27.0** | **12.5** | | | |
| BRIAN BULLOCK | SYSTEM SPECIALIST | **112.0** | **36.0** | 0.0 | | | |
| TIM JOZSA | SR. SYSTEM ENGINEER | **64.0** | **18.0** | **21.0** | | | |
| JEFF SIM | SYSTEM SPECIALIST | **32.0** | **11.0** | 0.0 | | | |
| JASON MURRAY | ENGINEERING SPECIALIST | 0.0 | **9.0** | **16.0** | | | |
| PATRICK HAYES | SERVICE SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| NATHAN SANTORA | SERVICE SPECIALIST | 0.0 | **8.0** | **12.0** | | | |
| LARRY DALEY | SYSTEM SPECIALIST | 0.0 | **8.0** | 0.0 | | | |
| PHIL CARSWELL | SYSTEM SPECIALIST | 0.0 | **16.0** | 0.0 | | | |
| JASON PERRY | SYSTEM ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| FALISHA WILTZ | ENG ASSISTANCE | **0.0** | 0.0 | 0.0 | | | |
| GARRY GRAHAM | GROUP OPS MANAGER | **0.0** | **0.0** | **0.0** | | | |
| DAN SASAKI | PROJECT MANAGER | **0.0** | **0.0** | **0.0** | | | |
| | | | | | RATE: | | TOTAL: |
| STRIAGHT HOURS: | | 320.0 | | | $96.00 | | $30,720.00 |
| OVERTIME HOURS @ TIME AND A HALF | | | 133.0 | | $144.00 | | $19,152.00 |
| OVERTIME HOURS @ DOUBLE TIME | | | | 61.5 | $192.00 | | $11,808.00 |
| SUBTOTAL | | | | | | | $61,680.00 |
| **OVERHEAD 10%** | | | $61,680.00 | + | $6,168.00 | = | $67,848.00 |
| **PROFIT 10%** | | | $67,848.00 | + | $6,784.80 | = | $74,632.80 |
| | | | | | | | |
| | TOTAL LABOR DAYS | | | | | | |
| VEHICLE COST | 64 | AT $30/DAY | | | | | NA |
| | | | | | | | |
| **TOTAL AMOUNT OF CHANGE ORDER** | | | | | | | **$74,632.80** |

SUMMARY

NASA N258
#620-PE-9677
24 HOUR WATCH

| NAME | TITLE | SUN: 30-JAN-00 | | | MON: 31-JAN-00 | | | TUE: 1-FEB-00 | | | WED: 2-FEB-00 | | | THU: 3-FEB-00 | | | FRI: 4-FEB-00 | | | SAT: 5-FEB-00 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | REGULAR | OT 1.5 | OT 2.0 |
| | | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | TOTAL | TOTAL | TOTAL |
| VINH LAM | PROJECT ENGINEER | | | | | | | | | | | | | | | | | | | | | | | | |
| GLEN LEGGOE | DQMS ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | 8.0 | 2.0 | | | 8.5 | | 8.0 | 10.5 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | | | | | | | | | | | | | | | 8.0 | 1.0 | | | 9.0 | | 8.0 | 10.0 | 0.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | | | | | | | 8.0 | 1.0 | | 8.0 | 1.0 | | | | | 16.0 | 2.0 | 0.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | | | | | | | | | | | 8.0 | | | | | | | | | 8.0 | 0.0 | 0.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | 8.0 | | 0.0 | 8.0 | 0.0 |
| JASON PERRY | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| FALISHA WILTZ | ENG ASSISTANCE | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GARRY GRAHAM | GROUP OPS MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| STRIAGHT HOURS: | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 16.0 | | | 24.0 | | | 0.0 | | | 40.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 1.0 | | | 4.0 | | | 25.5 | | | 30.5 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 |

NASA N258
#620-PE-9677
24 HOUR WATCH

| NAME | TITLE | SUN: 6-FEB-00 | | | MON: 7-FEB-00 | | | TUE: 8-FEB-00 | | | WED: 9-FEB-00 | | | THU: 10-FEB-00 | | | FRI: 11-FEB-00 | | | SAT: 12-FEB-00 | | | REGULAR TOTAL | OT 1.5 TOTAL | OT 2.0 TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | | | |
| VINH LAM | PROJECT ENGINEER | | | | | | | | | | | | | | | | | | | | | | | | |
| GLEN LEGGOE | DQMS ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | | 8.0 | | | 8.0 | | | 8.0 | | | 8.0 | 0.5 | | 8.0 | 1.5 | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | | | 8.0 | 2.0 | | 8.0 | 1.5 | | 8.0 | 1.5 | | 8.0 | 1.5 | | 8.0 | 1.5 | | | | | 40.0 | 2.0 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | | 8.0 | 8.0 | 1.5 | | 8.0 | 3.0 | | 8.0 | | | 8.0 | 2.0 | | 8.0 | | | | | | 40.0 | 8.0 | 0.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | 9.5 | | 40.0 | 16.0 | 8.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | 8.0 | | | | | | | | | | | | | | | | | 8.0 | | 0.0 | 8.0 | 0.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 8.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | 12.0 | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | 8.0 | | 0.0 | 8.0 | 12.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON PERRY | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| FALISHA WILTZ | ENG ASSISTANCE | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GARRY GRAHAM | GROUP OPS MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| STRIAGHT HOURS: | | 0.0 | | | 24.0 | | | 24.0 | | | 24.0 | | | 24.0 | | | 24.0 | | | 0.0 | | | 120.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 0.0 | | | 3.5 | | | 4.5 | | | 1.5 | | | 4.0 | | | 3.0 | | | 25.5 | | | 42.0 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 28.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 28.0 |

WEEK2

NASA N258
#620-PE-9877
24 HOUR WATCH

| NAME | TITLE | SUN: 13-FEB-00 | | | MON: 14-FEB-00 | | | TUE: 15-FEB-00 | | | WED: 16-FEB-00 | | | THU: 17-FEB-00 | | | FRI: 18-FEB-00 | | | SAT: 19-FEB-00 | | | REGULAR | OT 1.5 | OT 2.0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | TOTAL | TOTAL | TOTAL |
| VINH LAM | PROJECT ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GLEN LEGGOE | DQMS ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | 12.5 | 8.0 | 1.0 | | 8.0 | 1.5 | | 8.0 | 1.0 | | 8.0 | 1.0 | | 8.0 | 1.0 | | | | | 40.0 | 5.5 | 12.5 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | | | 8.0 | | | 8.0 | 8.0 | | 8.0 | 1.0 | | 8.0 | 1.0 | | 8.0 | | | | | | 40.0 | 10.0 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | | 8.0 | 8.0 | | | | | | | | | | | | | | | | | | 8.0 | 0.0 | 8.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | | | | 8.0 | 1.0 | | 8.0 | 1.0 | | 8.0 | 1.0 | | | | | 24.0 | 3.0 | 0.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | 8.0 | | | | | | | | | | | | | | | | | 9.0 | | 0.0 | 9.0 | 8.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | 16.0 | | 0.0 | 16.0 | 0.0 |
| JASON PERRY | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| FALISHA WILTZ | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | [illegible] |
| GARRY GRAHAM | GROUP OPS MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | [illegible] |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | [illegible] |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| STRIAGHT HOURS: | | 0.0 | | | 24.0 | | | 16.0 | | | 24.0 | | | 24.0 | | | 24.0 | | | 0.0 | | | 112.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 0.0 | | | 1.0 | | | 9.5 | | | 3.0 | | | 3.0 | | | 2.0 | | | 25.0 | | | 43.5 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 28.5 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 28.5 |

NASA N258
#820-PE-9677
24 HOUR WATCH

| NAME | TITLE | SUN: 20-FEB-00 | | | MON: 21-FEB-00 | | | TUE: 22-FEB-00 | | | WED: 23-FEB-00 | | | THU: 24-FEB-00 | | | FRI: 25-FEB-00 | | | SAT: 26-FEB-00 | | | REGULAR | OT 1.5 | OT 2.0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | | |
| | | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | TOTAL | TOTAL | TOTAL |
| VINH LAM | PROJECT ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GLEN LEGGOE | DQMS ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | | 8.0 | 4.0 | | 8.0 | 4.0 | | 8.0 | 1.0 | | | | | | | | | | | 24.0 | 9.0 | 0.0 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | | | 8.0 | 4.0 | | 8.0 | 4.0 | | 8.0 | | | | | | | | | | | | 24.0 | 8.0 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | | 5.0 | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 5.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON PERRY | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| FALISHA WILTZ | ENG ASSISTANCE | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GARRY GRAHAM | GROUP OPS MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| STRIAGHT HOURS: | | 0.0 | | | 16.0 | | | 16.0 | | | 16.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 48.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 0.0 | | | 8.0 | | | 8.0 | | | 1.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 17.0 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 5.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 5.0 |

WEEK4

(A)

**Sasaki Dan**

**From:** Bill Eismann [beismann@mail.arc.nasa.gov]
**Sent:** Thursday, February 03, 2000 12:58 PM
**To:** amosher@mail.arc.nasa.gov
**Cc:** tangney@nas.nasa.gov; ajoly@mail.arc.nasa.gov; jhartmann@interstatecon.com; SasakiD@exchange.us.landisstaefa.com; vgallo@mail.arc.nasa.gov; tmorrissey@mail.arc.nasa.gov
**Subject:** N-258 Chiller Plant Shutdown

A.C.
The chiller plant failed at 7:32 a.m. Thursday, Feb 3. For some unknown reason all the chiller plant pumps; including the two running cray loop pumps stopped running at the same time. Siemens placed the plant back in operation about 11:00 a.m. and will continue to troubleshooting.

Mark Tangney said that one of the cray processor boards was damaged by the the outage. Fortunately, however, they we able to locally locate a replacement processor board.

I spoke with Glenn Leggoe and he assured me that Siemens would continue to provide around the clock supervision of the control system until the problem is identified and corrected. He also proposed to develop a manual mode operating sequence that the Siemens operator could implement in case the system failed while in the automatic control mode.

Until the problem is corrected Glenn also suggested running one of the three cray pumps at a reduced speed in manual mode as a backup to the two pumps which are running under FMCS control. Per Mark's request, Glenn also agreed to place the backup high temperature loop pump in manual mode to provide backup in case the FMCS controlled high temperature pump fails.

B

**Leggoe Glen**

| | |
|---|---|
| From: | Leggoe Glen |
| Sent: | Monday, February 07, 2000 11:11 AM |
| To: | 'beismann@mail.arc.nasa.gov' |
| Cc: | 'amosher@mail.arc.nasa.gov'; 'tangney@nas.nasa.gov'; 'ajoly@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'tmorrissey@mail.arc.nasa.gov'; 'jhartmann@interstatecon.com'; 'wallace@dmjm.com'; Sasaki Dan; Graham Garry; Miess Wesley |
| Subject: | Clarification, discussions at N-258 |

Bill:

We have been quite focused on the work at N-258 Process Cooling System, and only today have I had a chance to review and respond to recent e-mail messages. I wanted to clarify a couple of items you have mentioned recently.

My responsibilities for this project do not include labor allocation or scheduling of personnel. I've said on several occasions, to you and to A.C. Mosher, that decisions for "around the clock supervision" by Siemens are made by our project manager or group operations supervisor. I assume your Feb. 03 e-mail to amosher was referring to a conversation you had with other Siemens personnel.

Your 1/27/00 e-mail to jhartmann at Interstate needs some clarification. I stated that the software was tested thoroughly per the volume 2 factory test procedures, and not that "the software still does not operate per the emergency pump sequence specified in the Sequence of Operation Paragraphs 6.2.1, 6.2.2, 6.2.3, 7.2.1, .2.2, 7.2.3, 10.3.1, 10.3.2, and 10.3.3".

Everyone on the project team has been working at a high intensity level for the last few weeks. I appreciate the dedication of all.

***Glen Leggoe***
Validation Services, QSMR
Siemens Building Technologies, Inc.
510-783-6000 x244 Fax510-293-2100
mailto: <glen.leggoe@SBT.Siemens.com>

C

**Sasaki Dan**

**From:** Sasaki Dan
**Sent:** Friday, February 11, 2000 12:20 PM
' 'jhartmann@interstatecon.com'
' 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; Leggoe Glen; Graham Garry; Lam Vinh-Hoa; Miess Wesley
**Subject:** FW: NASA N-258, Process Cooling System

John,

Siemens will attend Tuesday's meeting at 9 am. We will draft a agenda and forward.

As to NASA's letter dated February 8, 2000, 5th paragraph, Siemens did agree to round the clock attendant until FMCS at Bldg. 510 was on-line to Bldg. 258.

Wednesday evening, 02-Feb-00, Bldg. N258 MBC #50 & 51 were connected to NASA's existing Trunk #3 BLN trunk and on-line to FMCS at Bldg. 510.

Siemens correspondence dated 10-Feb-00, reference 3rd and 4th paragraph for NASA/JCI responsibility for round the clock attendant.
Which differs from 11-Feb-00 correspondence from Vivenne Gallo of NASA to Interstate Construction, Inc.

Question: Who is directing Siemens to continue round the clock attendant?
Are there detailed and written directions?

Please respond by 2:00 p.m. today. Thanks

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
' 'ENS Building Technologies, Inc.

-----Original Message-----
**From:** John Hartmann [SMTP:jhartmann@interstatecon.com]
**Sent:** Friday, February 11, 2000 11:42 AM
**To:** 'Leggoe Glen'; Dan Sasaki (E-mail)
**Cc:** A. C. Mosher (E-mail); Bill Eismann (E-mail); Dave Johnston (E-mail); Vivienne Gallo (E-mail)
**Subject:** RE: NASA N-258, Process Cooling System

Dan,

Please see attached letter from NASA in regards to maintaining 24 hour control watch at building N258. I also refer you to NASA"s letter dated February 8, 2000, 5th paragraph in regards to round the clock attendants by Siemens

Please note meeting scheduled Tuesday morning at 9 am. Notify me if you are not able to attend or would like to reschedule. It would be productive and helpful, before Tuesday morning, if you could outline an agenda (concerns/status/position/suggestions/discovery) etc., and e mail those to me. CC all other parties.

If Siemens precludes any part of the requested work by NASA to constitute a change, please submit written notice within 10 calendar days.

John Hartmann
Interstate Construction, Inc.

- riginal Message-----
' . Leggoe Glen [mailto:glen.leggoe@sbt.siemens.com]
,ent: Thursday, February 10, 2000 3:09 PM
To: 'jhartmann@interstatecon.com'

**Cc:** 'amosher@mail.arc.nas? ›v'; smann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; Sasa. Dan; Graham Garry; Lam Vinh-Hoa; Leggoe Glen; Miess Wesley
**Subject:** NASA N-258, Process Cooling System

<< File: N258 Ogc ICI Fax16.doc >> John,

Attach document is per your request. Hard copy will be faxed Dave Johnston.
Call me once you have time to digest.
I'll call AC Mosher and notify him of email.

By the way, I'm on Glen leggoe's email account. Thanks.

<<N258 Ogc ICI Fax16.doc>>

R. Dan Sasaki

Reliability tests.doc

Project Manager

**SIEMENS** (C) **Landis Division**

**Fax / Email #16**

| | | | |
|---|---|---|---|
| To: | John Hartmann | From: | R. Dan Sasaki |
| | Interstate Construction | Phone: | (510) 783-6000 x221 |
| Fax: | (916) 351-0950 | Fax: | (510) 293-2100 |
| Phone: | (916) 351-0622 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| Date: | February 8, 2000 | Pages to Follow: | **0** |

Cc: AC Mosher – NASA amosher@mail.arc.nasa.gov
Bill Eismann – NASA beismann@mail.arc.nasa.gov
Dave Johnston – ICI (650) 691-1271
Garry Graham, Jason Daters, Glen Leggoe, Vinh Lam– Siemens
Job File #620-PE-9677

Message: **NASA N258, Process Cooling System**

John,

This is to notify you that Siemens have been on a 24 hour watch since last Monday January 31, 2000.

Sincerely,

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**

Landis Division
2525 Barrington Court
Hayward, CA 94545

Tel: (510) 783-6000
Fax: (510) 293-2100

**Sasaki Dan**

D

| | |
|---|---|
| **From:** | John Hartmann [jhartmann@interstatecon.com] |
| **Sent:** | Friday, February 11, 2000 11:42 AM |
| **To:** | 'Leggoe Glen'; Dan Sasaki (E-mail) |
| **Cc:** | A. C. Mosher (E-mail); Bill Eismann (E-mail); Dave Johnston (E-mail); Vivienne Gallo (E-mail) |
| **Subject:** | RE: NASA N-258, Process Cooling System |

← VIVIENNE GALLO OF NASA CORRESPONDENCE DATE FEBRUARY 11, 2000

Dan,

Please see attached letter from NASA in regards to maintaining 24 hour control watch at building N258. I also refer you to NASA"s letter dated February 8, 2000, 5th paragraph in regards to round the clock attendants by Siemens

Please note meeting scheduled Tuesday morning at 9 am. Notify me if you are not able to attend or would like to reschedule. It would be productive and helpful, before Tuesday morning, if you could outline an agenda (concerns/status/position/suggestions/discovery) etc., and e mail those to me. CC all other parties.

If Siemens precludes any part of the requested work by NASA to constitute a change, please submit written notice within 10 calendar days.

John Hartmann
Interstate Construction, Inc.

-----Original Message-----
From: Leggoe Glen [mailto:glen.leggoe@sbt.siemens.com]
Sent: Thursday, February 10, 2000 3:09 PM
To: 'jhartmann@interstatecon.com'
Cc: 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; Sasaki Dan; Graham Garry; Lam Vinh-Hoa; Leggoe Glen; Miess Wesley
Subject: NASA N-258, Process Cooling System

<< File: N258 Ogc ICI Fax16.doc >> John,

Attach document is per your request. Hard copy will be faxed Dave Johnston.
Call me once you have time to digest.
I'll call AC Mosher and notify him of email.

By the way, I'm on Glen leggoe's email account. Thanks.

<<N258 Ogc ICI Fax16.doc>>

R. Dan Sasaki
Project Manager

D

National Aeronautics and
Space Administration

**Ames Research Center**
Moffett Field, California 94035-1000

Reply to Attn of: JAZ: 213-13 -- FAXED -- February 11, 2000

Interstate Construction, Inc.
ATTN: Mr. John Hartmann
3909 Security Park Drive
Rancho Cordova, CA 95742

Subject: Contract NAS2-99039, Process Cooling System, Building N258, NASA-Ames Research Center, Moffett Field, California

I have just been informed that your subcontractor, Siemens has stated that it will stop providing its monitoring of the chiller plant control system.

I believe that the control system still requires the attendance of a round-the-clock Siemens Technician to monitor the chiller plant and to recover from software related system failures.

As of this date:

- The reliability of the system has not been proven;
- Tests have not been completed;
- Test plan to prove the reliability has not been completed and submitted;

I strongly suggest that the work schedule remain unchanged until such time as the control system reliability can be satisfactorily demonstrated.

It is requested that you and Siemens attend a meeting Tuesday morning, February 15, 2000 at 9:00am in the Interstate job trailer.

If you have any questions or wish to discuss anything, please telephone me at (650) 604-5808.

Thank you for your prompt attention to this matter.

Vivienne D. Gallo
Contracting Officer

D

Copy to: A.C. Mosher; B. Eismann; File; R/F

**Sasaki Dan**

E

**From:** Leggoe Glen
**Sent:** Monday, February 07, 2000 11:49 AM
**To:** Sasaki Dan
**Cc:** Graham Garry; Lam Vinh-Hoa; Jozsa Timothy; Miess Wesley
**Subject:** N-258 03 Feb System Event (Log Analysis)

Attached Excel spreadsheet combines Trend info and System Activity Logs (4 PCs), with many non-consequential events removed for clarity. Please review for near-future discussion.


***Glen Leggoe***
Validation Services, QSMR
Siemens Building Technologies, Inc.
510-783-6000 x244 Fax510-293-2100
mailto: <glen.leggoe@SBT.Siemens.com>

03 Feb ( ) Chiller Event

| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| CH Room | 01/31/00 | 1:04:21 | NODE 51 | NODE 51 | Field Panel has returned from failure | SYSTEM | |
| CH Room | 01/31/00 | 6:49:17 | FINAL | FINAL | Graphic was modified on Insight INSIGHTPC399 | Administrator | Graphic modified |
| CH Room | 01/31/00 | 6:53:00 | BLN 1 | | Connected | SYSTEM | |
| FMCS | 01/31/00 | 7:14:32 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Node was deleted from BLN | HONG | Field Panel ostracized. |
| FMCS | 01/31/00 | 7:14:40 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Node was deleted from BLN | HONG | Field Panel ostracized. |
| FMCS | 01/31/00 | 7:14:49 | APOGEE398 | APOGEE398 | Node was deleted from BLN | HONG | Field Panel ostracized. |
| FMCS | 01/31/00 | 7:14:57 | APOGEE399 | APOGEE399 | Node was deleted from BLN | HONG | Field Panel ostracized. |
| FMCS | 01/31/00 | 7:18:06 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| FMCS | 01/31/00 | 7:18:15 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| FMCS | 01/31/00 | 7:18:23 | APOGEE398 | APOGEE398 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| FMCS | 01/31/00 | 7:18:31 | APOGEE399 | APOGEE399 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 01/31/00 | 8:03:34 | INSIGHTPC398 | INSIGHTPC398 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 01/31/00 | 9:06:17 | BLN 1 | BLN 1 | BLN was modified on Insight INSIGHTPC399 | Administrator | |
| CH Room | 01/31/00 | 11:00:06 | BLN 1 | | Disconnect | SYSTEM | No active nodes |
| CH Room | 01/31/00 | 11:04:09 | BLN 1 | | Connected | SYSTEM | |
| CH Room | 01/31/00 | 11:04:09 | INSIGHTPC398 | INSIGHTPC398 | The Field Panel INSIGHTPC398 is on the Insight database, but not on BLN BLN 1. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| CH Room | 01/31/00 | 11:04:27 | BLN 1 | | Connected | SYSTEM | |
| CH Room | 01/31/00 | 11:04:27 | INSIGHTPC398 | INSIGHTPC398 | The Field Panel INSIGHTPC398 is on the Insight database, but not on BLN BLN 1. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 01/31/00 | 12:24:21 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 01/31/00 | 12:24:21 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 01/31/00 | 12:24:21 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 01/31/00 | 12:24:21 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 01/31/00 | 12:25:01 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 01/31/00 | 12:28:08 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 01/31/00 | 12:28:08 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 01/31/00 | 12:28:08 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 01/31/00 | 12:28:08 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 01/31/00 | 12:29:20 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| CH Room | 01/31/00 | 12:38:04 | | | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 01/31/00 | 12:38:06 | INSIGHTPC398 | INSIGHTPC398 | Field Panel was deleted on Insight INSIGHTPC399 | Administrator | |
| CH Room | 01/31/00 | 12:51:49 | BLN 1 | BLN 1 | BLN was modified on Insight INSIGHTPC399 | Administrator | |
| CH Room | 01/31/00 | 12:52:20 | BLN 1 | BLN 1 | BLN was modified on Insight INSIGHTPC399 | Administrator | |
| FMCS | 01/31/00 | 17:18:17 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 01/31/00 | 17:18:18 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 01/31/00 | 17:18:18 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 01/31/00 | 17:18:18 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 01/31/00 | 17:22:06 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 01/31/00 | 17:22:24 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 01/31/00 | 17:22:24 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3 | SYSTEM | Remove the Field Panel manually from Insight if desired |

E.



| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| FMCS | 01/31/00 | 17:22:24 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 01/31/00 | 17:22:24 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3 | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 01/31/00 | 17:22:40 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 01/31/00 | 17:23:48 | FIEF101C | FIEF101C | Acknowledged Alarm received from TRUNK 3 Node 50. Value: 0.07, Status: *F*, Cmd Pri: NONE | xxx | |
| FMCS | 01/31/00 | 17:23:54 | FIEF102C | FIEF102C | Acknowledged Alarm received from TRUNK 3 Node 50. Value: 9.02, Status: -N-, Cmd Pri: NONE | xxx | |
| FMCS | 01/31/00 | 17:23:54 | FIEF102C | FIEF102C | Acknowledged Alarm received from TRUNK 3 Node 50. Value: 9.84, Status: *F*, Cmd Pri: NONE | xxx | |
| CH Room | 01/31/00 | 17:46:22 | BLN 1 | BLN 1 | BLN was modified on Insight INSIGHTPC399 | Administrator | |
| CH Room | 01/31/00 | 17:54:23 | FIHCHDPX | FIHCHDPX | Upload | SYSTEM | Error uploading Point from NODE 50 |
| CH Room | 01/31/00 | 17:54:23 | FILCHDPX | FILCHDPX | Upload | SYSTEM | Error uploading Point from NODE 50 |
| CH Room | 01/31/00 | 19:02:58 | BLN 1 | BLN 1 | BLN was modified on Insight INSIGHTPC399 | Administrator | |
| CH Room | 01/31/00 | 22:22:08 | BLN 1 | | Disconnect | SYSTEM | No active nodes |
| CH Room | 01/31/00 | 22:39:17 | BLN 1 | | Connected | SYSTEM | |
| CH Room | 01/31/00 | 22:39:19 | NODE 50 | NODE 50 | Field Panel has returned from failure | SYSTEM | |
| CH Room | 01/31/00 | 22:39:36 | NODE 51 | NODE 51 | Field Panel has returned from failure | SYSTEM | |
| CH Room | 01/31/00 | 22:45:08 | BLN 1 | | Disconnect | SYSTEM | No active nodes |
| FMCS | 02/01/00 | 6:28:33 | TRUNK 1 Node 25 | BLDG N202 | Field Panel was Coldstarted | SYSTEM | |
| FMCS | 02/01/00 | 6:29:03 | TRUNK 1 Node 07 | BLDG N202 | Field Panel was Coldstarted | SYSTEM | |
| FMCS | 02/01/00 | 6:29:58 | TRUNK 1 Node 22 | BLDG N206 | Field Panel was Coldstarted | SYSTEM | |
| FMCS | 02/01/00 | 6:30:38 | TRUNK 1 Node 23 | BLDG N206 | Field Panel was Coldstarted | SYSTEM | |
| FMCS | 02/01/00 | 6:31:27 | TRUNK 1 Node 24 | BLDG N206 | Field Panel was Coldstarted | SYSTEM | |
| FMCS | 02/01/00 | 6:40:04 | TRUNK 2 Node 15 | BLDG N211 | The Field Panel TRUNK 2 Node 15 is on the Insight database, but not on BLN TRUNK 2. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 6:41:04 | TRUNK 2 | TRUNK 2 | The Destinations do not match on the Insight and on BLN TRUNK 2. The following Destinations are inconsistent: 0, 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 6:41:05 | TRUNK 2 | TRUNK 2 | The DST do not match on the Insight and on BLN TRUNK 2. The following years are inconsistent: 2008. | SYSTEM | Modify manually the DST on Insight or on the Field Panel. |
| FMCS | 02/01/00 | 6:41:06 | TRUNK 2 | TRUNK 2 | The Error Status Messages do not match on the Insight and on BLN TRUNK 2. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel |
| FMCS | 02/01/00 | 6:43:49 | KEN'S_PPCL_LIB | KEN'S_PPCL_LIB | The Field Panel KEN'S_PPCL_LIB is on the Insight database, but not on BLN TRUNK 0. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 6:44:34 | TRUNK 0 | TRUNK 0 | The Destinations do not match on the Insight and on BLN TRUNK 0. The following Destinations are inconsistent: 0, 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 6:44:34 | TRUNK 0 | TRUNK 0 | The DST do not match on the Insight and on BLN TRUNK 0. The following years are inconsistent: 2008. | SYSTEM | Modify manually the DST on Insight or on the Field Panel |
| FMCS | 02/01/00 | 6:44:36 | TRUNK 0 | TRUNK 0 | The Error Status Messages do not match on the Insight and on BLN TRUNK 0. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel |
| FMCS | 02/01/00 | 6:45:17 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 6:45:17 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 6:45:17 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 6:45:17 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3 | SYSTEM | Remove the Field Panel manually from Insight if desired |

E



| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| FMCS | 02/01/00 | 6:45:33 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel. |
| FMCS | 02/01/00 | 6:45:52 | TRUNK 2 Node 15 | BLDG N211 | The Field Panel TRUNK 2 Node 15 is on the Insight database, but not on BLN TRUNK 2. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 6:46:16 | TRUNK 2 | TRUNK 2 | The Destinations do not match on the Insight and on BLN TRUNK 2. The following Destinations are inconsistent: 0, 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 6:46:17 | TRUNK 2 | TRUNK 2 | The DST do not match on the Insight and on BLN TRUNK 2. The following years are inconsistent: 2008. | SYSTEM | Modify manually the DST on Insight or on the Field Panel |
| FMCS | 02/01/00 | 6:46:17 | TRUNK 2 | TRUNK 2 | The Error Status Messages do not match on the Insight and on BLN TRUNK 2. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21. | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel |
| FMCS | 02/01/00 | 6:49:21 | TRUNK 2 Node 15 | BLDG N211 | The Field Panel TRUNK 2 Node 15 is on the Insight database, but not on BLN TRUNK 2. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 6:49:53 | TRUNK 2 | TRUNK 2 | The Destinations do not match on the Insight and on BLN TRUNK 2. The following Destinations are inconsistent: 0, 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 6:49:54 | TRUNK 2 | TRUNK 2 | The DST do not match on the Insight and on BLN TRUNK 2. The following years are inconsistent: 2008. | SYSTEM | Modify manually the DST on Insight or on the Field Panel. |
| FMCS | 02/01/00 | 6:49:57 | TRUNK 2 | TRUNK 2 | The Error Status Messages do not match on the Insight and on BLN TRUNK 2. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21. | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel. |
| FMCS | 02/01/00 | 6:50:31 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 6:50:31 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 6:50:31 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 6:50:31 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 6:50:48 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 6:51:07 | KEN'S_PPCL_LIB | KEN'S_PPCL_LIB | The Field Panel KEN'S_PPCL_LIB is on the Insight database, but not on BLN TRUNK 0. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 6:51:47 | TRUNK 0 | TRUNK 0 | The Destinations do not match on the Insight and on BLN TRUNK 0. The following Destinations are inconsistent: 0, 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 6:51:49 | TRUNK 0 | TRUNK 0 | The DST do not match on the Insight and on BLN TRUNK 0. The following years are inconsistent: 2008. | SYSTEM | Modify manually the DST on Insight or on the Field Panel. |
| FMCS | 02/01/00 | 6:51:49 | TRUNK 0 | TRUNK 0 | The Error Status Messages do not match on the Insight and on BLN TRUNK 0. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21. | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel. |
| FMCS | 02/01/00 | 7:44:52 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 7:44:53 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 7:44:53 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 7:44:53 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 7:45:12 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |

(E.)



| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| FMCS | 02/01/00 | 7:49:08 | KEN'S_PPCL_LIB | KEN'S_PPCL_LIB | Field Panel was deleted on Insight NASAFMCS | KAQ | |
| FMCS | 02/01/00 | 8:03:20 | TRUNK 1 | TRUNK 1 | The Destinations do not match on the Insight and on BLN TRUNK 1. The following Destinations are inconsistent: 0, 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel. |
| FMCS | 02/01/00 | 8:05:08 | TRUNK 1 | TRUNK 1 | The Error Status Messages do not match on the Insight and on BLN TRUNK 1. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21. | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:16:37 | TRUNK 2 Node 15 | BLDG N211 | The Field Panel TRUNK 2 Node 15 is on the Insight database, but not on BLN TRUNK 2. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 8:17:02 | TRUNK 2 | TRUNK 2 | The Destinations do not match on the Insight and on BLN TRUNK 2. The following Destinations are inconsistent: 0, 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:17:03 | TRUNK 2 | TRUNK 2 | The DST do not match on the Insight and on BLN TRUNK 2. The following years are inconsistent: 2008. | SYSTEM | Modify manually the DST on Insight or on the Field Panel. |
| FMCS | 02/01/00 | 8:17:03 | TRUNK 2 | TRUNK 2 | The Error Status Messages do not match on the Insight and on BLN TRUNK 2. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21. | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:17:49 | TRUNK 0 | TRUNK 0 | The Destinations do not match on the Insight and on BLN TRUNK 0. The following Destinations are inconsistent: 0, 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:17:50 | TRUNK 0 | TRUNK 0 | The DST do not match on the Insight and on BLN TRUNK 0. The following years are inconsistent: 2008. | SYSTEM | Modify manually the DST on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:17:50 | TRUNK 0 | TRUNK 0 | The Error Status Messages do not match on the Insight and on BLN TRUNK 0. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21. | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:20:06 | TRUNK 2 Node 15 | BLDG N211 | The Field Panel TRUNK 2 Node 15 is on the Insight database, but not on BLN TRUNK 2. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 8:20:30 | TRUNK 2 | TRUNK 2 | The Destinations do not match on the Insight and on BLN TRUNK 2. The following Destinations are inconsistent: 0, 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:20:31 | TRUNK 2 | TRUNK 2 | The DST do not match on the Insight and on BLN TRUNK 2. The following years are inconsistent: 2008. | SYSTEM | Modify manually the DST on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:20:32 | TRUNK 2 | TRUNK 2 | The Error Status Messages do not match on the Insight and on BLN TRUNK 2. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21. | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:32:52 | TRUNK 1 | TRUNK 1 | The Destinations do not match on the Insight and on BLN TRUNK 1. The following Destinations are inconsistent: 0, 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:34:20 | TRUNK 1 | TRUNK 1 | The Error Status Messages do not match on the Insight and on BLN TRUNK 1. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21. | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel. |
| FMCS | 02/01/00 | 8:43:57 | TRUNK 0 | TRUNK 0 | The Destinations do not match on the Insight and on BLN TRUNK 0. The following Destinations are inconsistent: 0, 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:43:58 | TRUNK 0 | TRUNK 0 | The DST do not match on the Insight and on BLN TRUNK 0. The following years are inconsistent: 2008. | SYSTEM | Modify manually the DST on Insight or on the Field Panel. |
| FMCS | 02/01/00 | 8:43:59 | TRUNK 0 | TRUNK 0 | The Error Status Messages do not match on the Insight and on BLN TRUNK 0. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21. | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:44:23 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |

(E)



| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| FMCS | 02/01/00 | 8:44:23 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 8:44:23 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 8:44:23 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 8:44:38 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 8:59:14 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 8:59:14 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 8:59:14 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 8:59:14 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 8:59:31 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel. |
| FMCS | 02/01/00 | 9:01:48 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 9:01:48 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 9:01:48 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 9:01:48 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 9:02:04 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 9:31:32 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 9:31:32 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 9:31:32 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 9:31:32 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 9:32:02 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 9:35:16 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 9:35:16 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 9:35:16 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 9:35:16 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 9:35:41 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 14:55:43 | EISF1 | 248 AHU1 SUPPLY FAN | 2 State was modified on Insight NASAFMCS | SP | |
| FMCS | 02/01/00 | 14:56:10 | BFCH1 | BFCH1 | 2 State was modified on Insight NASAFMCS | SP | |
| FMCS | 02/01/00 | 14:59:23 | EISF2 | 248 AHU2 SUPPLY FAN | 2 State was modified on Insight NASAFMCS | SP | |
| FMCS | 02/01/00 | 17:35:20 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3 | SYSTEM | Remove the Field Panel manually from Insight if desired |

(E)



| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| FMCS | 02/01/00 | 17:35:21 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 17:35:21 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 17:35:21 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 17:38:54 | APOGEE398 | APOGEE398 | The Field Panel APOGEE398 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired |
| FMCS | 02/01/00 | 17:38:54 | APOGEE399 | APOGEE399 | The Field Panel APOGEE399 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 17:38:54 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | The Field Panel TRUNK 3 Node 50 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 17:38:54 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | The Field Panel TRUNK 3 Node 51 is on the Insight database, but not on BLN TRUNK 3. | SYSTEM | Remove the Field Panel manually from Insight if desired. |
| FMCS | 02/01/00 | 18:56:49 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/01/00 | 19:00:12 | TRUNK 3 | TRUNK 3 | The Destinations do not match on the Insight and on BLN TRUNK 3. The following Destinations are inconsistent: 1. | SYSTEM | Modify manually these Destinations on Insight or on the Field Panel |
| FMCS | 02/02/00 | 7:02:43 | CAB1PS | CAB1PS | 2 State was modified on Insight NASAFMCS | KAG | |
| FMCS | 02/02/00 | 8:30:24 | EBCWPC | EBCWPC | 2 State was modified on Insight NASAFMCS | KAG | |
| CH Room | 02/02/00 | 12:14:58 | TRUNK 3 NODE 01 | TRUNK 3 NODE 01 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:14:58 | TRUNK 3 NODE 01 | TRUNK 3 NODE 01 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:15:21 | TRUNK 3 NODE 01 | TRUNK 3 NODE 01 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:15:49 | TRUNK 3 NODE 02 | TRUNK 3 NODE 02 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:15:49 | TRUNK 3 NODE 02 | TRUNK 3 NODE 02 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:16:05 | TRUNK 3 NODE 02 | TRUNK 3 NODE 02 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:16:54 | TRUNK 3 NODE 03 | TRUNK 3 NODE 03 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:16:54 | TRUNK 3 NODE 03 | TRUNK 3 NODE 03 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:17:33 | TRUNK 3 NODE 04 | TRUNK 3 NODE 04 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:17:33 | TRUNK 3 NODE 04 | TRUNK 3 NODE 04 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:17:48 | TRUNK 3 NODE 01 | TRUNK 3 NODE 01 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:17:51 | TRUNK 3 NODE 02 | TRUNK 3 NODE 02 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:17:54 | TRUNK 3 NODE 03 | TRUNK 3 NODE 03 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:17:57 | TRUNK 3 NODE 04 | TRUNK 3 NODE 04 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:18:18 | TRUNK 3 NODE 05 | TRUNK 3 NODE 05 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:18:20 | TRUNK 3 NODE 05 | TRUNK 3 NODE 05 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:18:56 | TRUNK 3 NODE 06 | TRUNK 3 NODE 06 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:18:56 | TRUNK 3 NODE 06 | TRUNK 3 NODE 06 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:19:36 | TRUNK 3 NODE 07 | TRUNK 3 NODE 07 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:19:36 | TRUNK 3 NODE 07 | TRUNK 3 NODE 07 | Node was added to BLN | SYSTEM | |
| FMCS | 02/02/00 | 12:20:06 | TRUNK 1 PPCL 10 | TRUNK 1 PPCL 10 | PPCL was modified on Insight NT510CLIENT | KAG | PPCL program modified |
| CH Room | 02/02/00 | 12:20:07 | TRUNK 3 NODE 08 | TRUNK 3 NODE 08 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:20:07 | TRUNK 3 NODE 08 | TRUNK 3 NODE 08 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:20:25 | TRUNK 3 NODE 05 | TRUNK 3 NODE 05 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:20:27 | TRUNK 3 NODE 06 | TRUNK 3 NODE 06 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:20:29 | TRUNK 3 NODE 07 | TRUNK 3 NODE 07 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:20:33 | TRUNK 3 NODE 08 | TRUNK 3 NODE 08 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:20:53 | TRUNK 3 NODE 09 | TRUNK 3 NODE 09 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:20:54 | TRUNK 3 NODE 09 | TRUNK 3 NODE 09 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:21:21 | TRUNK 3 NODE 10 | TRUNK 3 NODE 10 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:21:22 | TRUNK 3 NODE 10 | TRUNK 3 NODE 10 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:21:50 | TRUNK 3 NODE 11 | TRUNK 3 NODE 11 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:21:51 | TRUNK 3 NODE 11 | TRUNK 3 NODE 11 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:22:17 | TRUNK 3 NODE 09 | TRUNK 3 NODE 09 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:22:20 | TRUNK 3 NODE 10 | TRUNK 3 NODE 10 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:22:23 | TRUNK 3 NODE 11 | TRUNK 3 NODE 11 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:22:53 | TRUNK 3 NODE 12 | TRUNK 3 NODE 12 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:22:53 | TRUNK 3 NODE 12 | TRUNK 3 NODE 12 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:23:29 | TRUNK 3 NODE 13 | TRUNK 3 NODE 13 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |

E



| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| CH Room | 02/02/00 | 12:23:29 | TRUNK 3 NODE 13 | TRUNK 3 NODE 13 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:23:44 | TRUNK 3 NODE 12 | TRUNK 3 NODE 12 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:23:45 | TRUNK 3 NODE 13 | TRUNK 3 NODE 13 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:24:10 | TRUNK 3 NODE 16 | TRUNK 3 NODE 16 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:24:11 | TRUNK 3 NODE 16 | TRUNK 3 NODE 16 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:24:34 | TRUNK 3 NODE 16 | TRUNK 3 NODE 16 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:24:58 | TRUNK 3 NODE 17 | TRUNK 3 NODE 17 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:24:59 | TRUNK 3 NODE 17 | TRUNK 3 NODE 17 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:25:18 | TRUNK 3 NODE 17 | TRUNK 3 NODE 17 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:25:42 | TRUNK 3 NODE 18 | TRUNK 3 NODE 18 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:25:43 | TRUNK 3 NODE 18 | TRUNK 3 NODE 18 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:28:26 | TRUNK 3 NODE 18 | TRUNK 3 NODE 18 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:28:46 | TRUNK 3 NODE 19 | TRUNK 3 NODE 19 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:28:46 | TRUNK 3 NODE 19 | TRUNK 3 NODE 19 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:29:20 | TRUNK 3 NODE 20 | TRUNK 3 NODE 20 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:29:20 | TRUNK 3 NODE 20 | TRUNK 3 NODE 20 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:29:59 | TRUNK 3 NODE 21 | TRUNK 3 NODE 21 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:30:00 | TRUNK 3 NODE 21 | TRUNK 3 NODE 21 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:30:35 | TRUNK 3 NODE 23 | TRUNK 3 NODE 23 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:30:35 | TRUNK 3 NODE 23 | TRUNK 3 NODE 23 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:31:02 | TRUNK 3 NODE 19 | TRUNK 3 NODE 19 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:31:09 | TRUNK 3 NODE 20 | TRUNK 3 NODE 20 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:31:12 | TRUNK 3 NODE 21 | TRUNK 3 NODE 21 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:31:17 | TRUNK 3 NODE 23 | TRUNK 3 NODE 23 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 12:32:06 | NASAFMCS | NASAFMCS | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 12:32:07 | NASAFMCS | NASAFMCS | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 12:32:19 | NASAFMCS | NASAFMCS | Field Panel has failed | SYSTEM | Panel was Ostracized |
| FMCS | 02/02/00 | 16:10:36 | NJSF1E | NJSF1E | 2 State was deleted on Insight NT510CLIENT | KAG | |
| PDC | 02/02/00 | 16:14:27 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Node was added to BLN Field Panel is failed | KAG | Field Panel readded |
| FMCS | 02/02/00 | 16:14:27 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Node was added to BLN Field Panel is failed | KAG | Field Panel readded. |
| PDC | 02/02/00 | 16:15:00 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Node was added to BLN Field Panel is failed | KAG | Field Panel readded. |
| FMCS | 02/02/00 | 16:15:00 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Node was added to BLN Field Panel is failed | KAG | Field Panel readded |
| PDC | 02/02/00 | 16:17:32 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Node was added to BLN | SYSTEM | |
| FMCS | 02/02/00 | 16:17:32 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Node was added to BLN | SYSTEM | |
| PDC | 02/02/00 | 16:18:04 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Node was added to BLN | SYSTEM | |
| FMCS | 02/02/00 | 16:18:04 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Node was added to BLN | SYSTEM | |
| PDC | 02/02/00 | 16:21:54 | APOGEE398 | APOGEE398 | Field Panel was deleted on Insight NT510CLIENT | KAG | |
| FMCS | 02/02/00 | 16:21:54 | APOGEE398 | APOGEE398 | Field Panel was deleted on Insight NT510CLIENT | KAG | |
| PDC | 02/02/00 | 16:22:08 | APOGEE399 | APOGEE399 | Field Panel was deleted on Insight NT510CLIENT | KAG | |
| FMCS | 02/02/00 | 16:22:08 | APOGEE399 | APOGEE399 | Field Panel was deleted on Insight NT510CLIENT | KAG | |
| PDC | 02/02/00 | 16:23:13 | APOGEE399 | APOGEE399 | Field Panel was added on Insight NT510CLIENT | KAG | |
| FMCS | 02/02/00 | 16:23:13 | APOGEE399 | APOGEE399 | Field Panel was added on Insight NT510CLIENT | KAG | |
| PDC | 02/02/00 | 16:23:40 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Node was added to BLN Field Panel is failed | KAG | Field Panel readded |
| FMCS | 02/02/00 | 16:23:40 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Node was added to BLN Field Panel is failed | KAG | Field Panel readded |
| PDC | 02/02/00 | 16:24:02 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Node was added to BLN Field Panel is failed | KAG | Field Panel readded |
| FMCS | 02/02/00 | 16:24:02 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Node was added to BLN Field Panel is failed | KAG | Field Panel readded. |
| PDC | 02/02/00 | 16:25:08 | | | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| PDC | 02/02/00 | 16:25:22 | | | Field Panel has failed | SYSTEM | Panel was Ostracized |
| PDC | 02/02/00 | 16:26:30 | APOGEE399 | APOGEE399 | Node was added to BLN | SYSTEM | |
| FMCS | 02/02/00 | 16:26:30 | APOGEE399 | APOGEE399 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 16:57:16 | BLN 1 Node 99 | BLN 1 Node 99 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 17:00:49 | BLN 1 Node 99 | BLN 1 Node 90 | Field Panel was modified on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 17:00:49 | BLN 1 Node 99 | BLN 1 Node 99 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 17:00:58 | BLN 1 Node 99 | BLN 1 Node 99 | Field Panel was modified on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 17:03:32 | NODE 50 | NODE 50 | Field Panel has failed | SYSTEM | Panel was Ostracized |
| CH Room | 02/02/00 | 17:03:38 | NODE 51 | NODE 51 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/02/00 | 17:04:23 | BLN 1 Node 99 | BLN 1 Node 99 | Field Panel was deleted on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 17:04:25 | APOGEE398 | APOGEE398 | Field Panel has failed | SYSTEM | Panel was Ostracized |
| CH Room | 02/02/00 | 17:04:50 | APOGEE398 | APOGEE398 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 17:04:51 | APOGEE398 | APOGEE398 | Node was added to BLN | SYSTEM | |
| CH Room | 02/02/00 | 17:05:15 | APOGEE398 | APOGEE398 | Field Panel has failed | SYSTEM | Panel was Ostracized |

| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| CH Room | 02/02/00 | 17:09:06 | BLN 1 | BLN 1 | BLN was modified on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 17:09:18 | | | Field Panel has failed | SYSTEM | Panel was Ostracized |
| CH Room | 02/02/00 | 17:09:19 | APOGEE398 | APOGEE398 | Field Panel was deleted on Insight INSIGHTPC399 | Administrator | |
| PDC | 02/02/00 | 17:32:52 | TRUNK 3 Node 18 | TRUNK 3 Node 18 | Field Panel has failed | SYSTEM | |
| PDC | 02/02/00 | 17:32:53 | TRUNK 3 Node 19 | TRUNK 3 Node 19 | Field Panel has failed | SYSTEM | |
| PDC | 02/02/00 | 17:32:55 | TRUNK 3 Node 20 | TRUNK 3 Node 20 | Field Panel has failed | SYSTEM | |
| CH Room | 02/02/00 | 17:38:55 | BLN 1 | | Connected | SYSTEM | |
| CH Room | 02/02/00 | 17:38:56 | BLN 1 | BLN 1 | The Global Parameters do not match on the Insight and on BLN BLN 1. The following data is inconsistent: (Insight <--> BLN) Backup Mass Storage: 97 <--> 255 Alarm Printer 1: 99 <--> 98 | SYSTEM | Modify manually the Global Parameters on Insight or on the Field Panel |
| PDC | 02/02/00 | 17:40:12 | TRUNK 3 Node 18 | TRUNK 3 Node 18 | Field Panel has returned from failure | SYSTEM | |
| PDC | 02/02/00 | 17:40:15 | TRUNK 3 Node 19 | TRUNK 3 Node 19 | Field Panel has returned from failure | SYSTEM | |
| CH Room | 02/02/00 | 17:40:16 | BLN 1 | BLN 1 | The DST do not match on the Insight and on BLN BLN 1. The following years are inconsistent: 1998. | SYSTEM | Modify manually the DST on Insight or on the Field Panel |
| CH Room | 02/02/00 | 17:40:18 | BLN 1 | BLN 1 | The Error Status Messages do not match on the Insight and on BLN BLN 1. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21. | SYSTEM | Modify manually the Error Status Messages on Insight or on the Field Panel |
| PDC | 02/02/00 | 17:40:28 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Field Panel has returned from failure | SYSTEM | |
| FMCS | 02/02/00 | 17:40:28 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Field Panel has returned from failure | SYSTEM | |
| PDC | 02/02/00 | 17:40:33 | TRUNK 3 Node 20 | TRUNK 3 Node 20 | Field Panel has returned from failure | SYSTEM | |
| PDC | 02/02/00 | 17:40:50 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Field Panel has returned from failure | SYSTEM | |
| FMCS | 02/02/00 | 17:40:50 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Field Panel has returned from failure | SYSTEM | |
| CH Room | 02/02/00 | 17:41:00 | BLN 1 | BLN 1 | The Access Groups do not match on the Insight and on BLN BLN 1. The following Access Groups are inconsistent: 2, 3, 4, 29, 30. | SYSTEM | Modify manually the Access Groups on Insight or on the Field Panel |
| PDC | 02/02/00 | 17:42:18 | APOGEE399 | APOGEE399 | Field Panel has returned from failure | SYSTEM | |
| FMCS | 02/02/00 | 17:42:18 | APOGEE399 | APOGEE399 | Field Panel has returned from failure | SYSTEM | |
| CH Room | 02/02/00 | 18:22:46 | INSIGHTPC398 | INSIGHTPC398 | Field Panel was added on Insight INSIGHTPC399 | Administrator | |
| CH Room | 02/02/00 | 18:22:49 | INSIGHTPC398 | INSIGHTPC398 | Node was added to BLN | SYSTEM | |
| PDC | 02/02/00 | 18:26:11 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Node was added to BLN | SYSTEM | |
| FMCS | 02/02/00 | 18:26:11 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Node was added to BLN | SYSTEM | |
| PDC | 02/02/00 | 18:26:12 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Added Field Panel TRUNK 3 Node 99 to BLN TRUNK 3. | SYSTEM | Insight automatically added this Field Panel in its database |
| FMCS | 02/02/00 | 18:26:12 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Added Field Panel TRUNK 3 Node 99 to BLN TRUNK 3. | SYSTEM | Insight automatically added this Field Panel in its database |
| PDC | 02/02/00 | 18:32:29 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Upload The enumeration value is out of range. | SYSTEM | 0 Terminal Definition records uploaded from TRUNK 3 Node 99 |
| FMCS | 02/02/00 | 18:32:29 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Upload The enumeration value is out of range. | SYSTEM | 0 Terminal Definition records uploaded from TRUNK 3 Node 99 |
| CH Room | 02/02/00 | 18:34:09 | TRUNK 3 NODE 18 | TRUNK 3 NODE 18 | Field Panel has failed | SYSTEM | |
| CH Room | 02/02/00 | 18:38:59 | TRUNK 3 NODE 09 | TRUNK 3 NODE 09 | Field Panel has failed | SYSTEM | |
| PDC | 02/02/00 | 18:42:18 | TRUNK 3 Node 19 | TRUNK 3 Node 19 | Field Panel has failed | SYSTEM | |
| PDC | 02/02/00 | 18:42:18 | TRUNK 3 Node 20 | TRUNK 3 Node 20 | Field Panel has failed | SYSTEM | |
| PDC | 02/02/00 | 18:42:18 | TRUNK 3 Node 21 | TRUNK 3 Node 21 | Field Panel has failed | SYSTEM | |
| PDC | 02/02/00 | 18:42:18 | TRUNK 3 Node 23 | TRUNK 3 Node 23 | Field Panel has failed | SYSTEM | |
| PDC | 02/02/00 | 18:42:20 | TRUNK 3 Node 18 | TRUNK 3 Node 18 | Field Panel has returned from failure | SYSTEM | |
| CH Room | 02/02/00 | 18:44:17 | SCU309 | SCU309 | Alarm received from . Value: , Status: "A", Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/02/00 | 18:51:10 | BLN 1 | BLN 1 | BLN was modified on Insight INSIGHTPC399 | FMCS | |
| CH Room | 02/02/00 | 19:49:13 | TRUNK 3 NODE 18 | TRUNK 3 NODE 18 | Field Panel has failed | SYSTEM | |
| CH Room | 02/02/00 | 19:49:52 | TRUNK 3 NODE 18 | TRUNK 3 NODE 18 | Field Panel has returned from failure | SYSTEM | |
| PDC | 02/02/00 | 19:52:32 | TRUNK 3 Node 18 | TRUNK 3 Node 18 | Field Panel has failed | SYSTEM | |
| PDC | 02/02/00 | 19:53:11 | TRUNK 3 Node 18 | TRUNK 3 Node 18 | Field Panel has returned from failure | SYSTEM | |
| CH Room | 02/02/00 | 19:56:49 | INSIGHTPC398 | INSIGHTPC398 | Field Panel has returned from failure | SYSTEM | |
| PDC | 02/02/00 | 20:00:06 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Field Panel has returned from failure | SYSTEM | |
| FMCS | 02/02/00 | 20:00:06 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Field Panel has returned from failure | SYSTEM | |
| PDC | 02/02/00 | 20:21:38 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | KAG | Upload All |
| FMCS | 02/02/00 | 20:21:38 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | KAG | Upload All |
| PDC | 02/02/00 | 20:21:38 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | KAG | Upload All |



(E)

| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| FMCS | 02/02/00 | 20:21:38 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | KAG | Upload All |
| PDC | 02/02/00 | 20:21:43 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 2 RAC Port records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 20:21:43 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 2 RAC Port records uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 20:21:44 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 2 RAC Port records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:21:44 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 2 RAC Port records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:26:04 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 198 Point records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:26:04 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 198 Point records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:26:07 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Alarm Setup records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:26:07 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Alarm Setup records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:26:10 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Alarm Mode records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:26:10 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Alarm Mode records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:26:12 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Alarm Messages uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:26:12 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Alarm Messages uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:27:51 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 77 PPCL records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:27:51 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 77 PPCL records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:27:55 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Trend Definition records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:27:55 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Trend Definition records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:27:57 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule Zone records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:27:57 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule Zone records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:27:59 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule Cmd records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:27:59 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule Cmd records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:28:01 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule Mode records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:28:01 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule Mode records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:28:04 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule Override records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:28:04 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule Override records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:28:06 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule SSTO General records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:28:06 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule SSTO General records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:28:08 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule SSTO Start records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:28:08 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule SSTO Start records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:28:10 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule SSTO Stop records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:28:10 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule SSTO Stop records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:28:11 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule SSTO Night records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:28:11 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Equipment Schedule SSTO Night records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:28:14 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Terminal Equipment Controller records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:28:14 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Terminal Equipment Controller records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:28:15 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 RAC Partner records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:28:15 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 RAC Partner records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:28:17 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Unitary Controller records uploaded from TRUNK 3 Node 51 |
| FMCS | 02/02/00 | 20:28:17 | TRUNK 3 Node 51 | TRUNK 3 Node 51 | Upload | SYSTEM | 0 Unitary Controller records uploaded from TRUNK 3 Node 51 |
| PDC | 02/02/00 | 20:38:34 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 750 Point records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 20:38:34 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 750 Point records uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 20:39:03 | CAB1PS | CAB1PS | Commanded | SP | ON Cmd Prio: OPER |
| PDC | 02/02/00 | 20:39:05 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 25 Alarm Setup records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 20:39:05 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 25 Alarm Setup records uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 20:39:40 | CAB1SS | 220 BLR1 START STOP | Commanded | SP | ON Cmd Prio: OPER |
| PDC | 02/02/00 | 20:40:04 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 48 Alarm Mode records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 20:40:04 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 48 Alarm Mode records uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 20:40:05 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Alarm Messages uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 20:40:05 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Alarm Messages uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 21:01:33 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 1453 PPCL records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 21:01:33 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 1453 PPCL records uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 21:02:18 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 44 Trend Definition records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 21:02:18 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 44 Trend Definition records uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 21:02:19 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule Zone records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 21:02:19 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule Zone records uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 21:02:20 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule Cmd records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 21:02:20 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule Cmd records uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 21:02:22 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule Mode records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 21:02:22 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule Mode records uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 21:02:23 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule Override records uploaded from TRUNK 3 Node 50 |

E

| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| FMCS | 02/02/00 | 21:02:23 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule Override records uploaded from TRUNK 3 Node 50. |
| PDC | 02/02/00 | 21:02:25 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule SSTO General records uploaded from TRUNK 3 Node 50. |
| FMCS | 02/02/00 | 21:02:25 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule SSTO General records uploaded from TRUNK 3 Node 50. |
| PDC | 02/02/00 | 21:02:26 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule SSTO Start records uploaded from TRUNK 3 Node 50. |
| FMCS | 02/02/00 | 21:02:26 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule SSTO Start records uploaded from TRUNK 3 Node 50. |
| PDC | 02/02/00 | 21:02:27 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule SSTO Stop records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 21:02:27 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule SSTO Stop records uploaded from TRUNK 3 Node 50. |
| PDC | 02/02/00 | 21:02:28 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule SSTO Night records uploaded from TRUNK 3 Node 50. |
| FMCS | 02/02/00 | 21:02:28 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Equipment Schedule SSTO Night records uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 21:03:48 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 78 Point Team Descriptor records uploaded from TRUNK 3 Node 50. |
| FMCS | 02/02/00 | 21:03:48 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 78 Point Team Descriptor records uploaded from TRUNK 3 Node 50 |
| PDC | 02/02/00 | 21:03:56 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 3 Terminal Equipment Controller records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 21:03:56 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 3 Terminal Equipment Controller records uploaded from TRUNK 3 Node 50. |
| PDC | 02/02/00 | 21:03:57 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 RAC Partner records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 21:03:57 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 RAC Partner records uploaded from TRUNK 3 Node 50. |
| PDC | 02/02/00 | 21:03:58 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Unitary Controller records uploaded from TRUNK 3 Node 50 |
| FMCS | 02/02/00 | 21:03:58 | TRUNK 3 Node 50 | TRUNK 3 Node 50 | Upload | SYSTEM | 0 Unitary Controller records uploaded from TRUNK 3 Node 50. |
| PDC | 02/02/00 | 22:16:00 | TRUNK 3 | TRUNK 3 | An attempt was made to change the time at the BLN. The time was not changed on the Insight. Insight time is 02/02/00 10:16:00 PM PM, BLN time is 02/02/00 10:19:55 PM PM. | SYSTEM | Synchronize the network time using System Profile |
| FMCS | 02/02/00 | 22:16:00 | TRUNK 3 | TRUNK 3 | An attempt was made to change the time at the BLN. The time was not changed on the Insight. Insight time is 02/02/00 10:16:00 PM PM, BLN time is 02/02/00 10:19.55 PM PM. | SYSTEM | Synchronize the network time using System Profile. |
| CH Room | 02/02/00 | 22:16:14 | BLN 1 | BLN 1 | The time on the BLN differs from the Insight time by more than two minutes. Insight time is 02/02/00 10:16:14 PM, BLN time is 02/02/00 10.19.55 PM. | SYSTEM | Synchronize the network time using System Profile |
| CH Room | 02/02/00 | 22:18:16 | INSIGHTPC398 | INSIGHTPC398 | Field Panel has failed | SYSTEM | |
| CH Room | 02/02/00 | 22:21:02 | INSIGHTPC398 | INSIGHTPC398 | Field Panel has returned from failure | SYSTEM | |
| PDC | 02/02/00 | 22:21:26 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Field Panel has failed | SYSTEM | |
| FMCS | 02/02/00 | 22:21:26 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Field Panel has failed | SYSTEM | |
| PDC | 02/02/00 | 22:24:15 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Field Panel has returned from failure | SYSTEM | |
| FMCS | 02/02/00 | 22:24:15 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Field Panel has returned from failure | SYSTEM | |
| FMCS | 02/03/00 | 0:56:13 | A10B1B | 010 BLR1 BLOWDOWN SHUTOFF | Commanded | SP | OFF Cmd Prio: NONE |
| PDC | 02/03/00 | 1:02:22 | BDDEM1:DEMAND | BDDEM1:DEMAND | Trend data collection There is some locking conflict. | SYSTEM | 10 Min Failed |
| FMCS | 02/03/00 | 1:02:22 | BDDEM1:DEMAND | BDDEM1:DEMAND | Trend data collection There is some locking conflict. | SYSTEM | 10 Min Failed |
| 258 Control | 02/03/00 | 1:35:57 | GJ2N91 | GJ2N91 | Acknowledged Alarm received from . Value: , Status: "A", Cmd Pri: NONE | KAG | |
| 258 Control | 02/03/00 | 1:35:57 | GJ2N91 | GJ2N91 | Acknowledged Alarm received from . Value: , Status: - N-, Cmd Pri. NONE | KAG | |
| PDC | 02/03/00 | 1:41:33 | TRUNK 1 Node 20 | BLDG N220 | FLN device failure | SYSTEM | 28 FAILURE in Cabinet 20, Lan 2, Drop 29. |
| Trend | 02/03/00 | 5:00:28 | FICT2CD | Trend Value | 40.024517 | | |
| Trend | 02/03/00 | 5:01:33 | FICT2CD | Trend Value | 35.182348 | | |
| Trend | 02/03/00 | 5:02:31 | FICT2CD | Trend Value | 32.056389 | | |
| Trend | 02/03/00 | 5:05:31 | FICT2CD | Trend Value | 35.856571 | | |
| FMCS | 02/03/00 | 5:08:52 | CAB1SS | 220 BLR1 START STOP | Commanded | KAG | OFF Cmd Prio: OPER |
| Trend | 02/03/00 | 5:15:07 | FICT2CD | Trend Value | 34.201653 | | |
| Trend | 02/03/00 | 5:17:09 | FICT2CD | Trend Value | 32.454796 | | |
| Trend | 02/03/00 | 5:19:17 | FICT2CD | Trend Value | 31.290222 | | |
| Trend | 02/03/00 | 5:20:18 | FICT2CD | Trend Value | 33.006435 | | |
| Trend | 02/03/00 | 5:21:14 | FICT2CD | Trend Value | 34.661354 | | |
| 258 Control | 02/03/00 | 5:22:07 | GJ9SAT | GJ9SAT | Alarm received from . Value: , Status: "A", Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 5:22:21 | FICT2CD | Trend Value | 38.461536 | | |
| Trend | 02/03/00 | 5:23:21 | FICT2CD | Trend Value | 45.479618 | | |
| Trend | 02/03/00 | 5:24:28 | FICT2CD | Trend Value | 54.642963 | | |
| Trend | 02/03/00 | 5:25:30 | FICT2CD | Trend Value | 64.143425 | | |

(E)

E



| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| Trend | 02/03/00 | 5:26:28 | FICT2CD | Trend Value | 74.747162 | | |
| Trend | 02/03/00 | 5:27:28 | FICT2CD | Trend Value | 87.557457 | | |
| Trend | 02/03/00 | 5:28:32 | FICT2CD | Trend Value | 92.73674 | | |
| Trend | 02/03/00 | 5:32:29 | FICT2CD | Trend Value | 91.38829 | | |
| Trend | 02/03/00 | 5:44:58 | FICT2CD | Trend Value | 86.362244 | | |
| Trend | 02/03/00 | 5:45:51 | FICT2CD | Trend Value | 77.627945 | | |
| Trend | 02/03/00 | 5:46:48 | FICT2CD | Trend Value | 69.292061 | | |
| Trend | 02/03/00 | 5:47:44 | FICT2CD | Trend Value | 58.964142 | | |
| Trend | 02/03/00 | 5:48:46 | FICT2CD | Trend Value | 51.700886 | | |
| Trend | 02/03/00 | 5:49:54 | FICT2CD | Trend Value | 41.587494 | | |
| Trend | 02/03/00 | 5:50:51 | FICT2CD | Trend Value | 35.243641 | | |
| Trend | 02/03/00 | 5:51:50 | FICT2CD | Trend Value | 32.270916 | | |
| Trend | 02/03/00 | 5:52:53 | FICT2CD | Trend Value | 30.707937 | | |
| 258 Control | 02/03/00 | 5:53:34 | GJ9SAT | GJ9SAT | Acknowledged Alarm received from . Value: , Status: *A*, Cmd Pri: NONE | KAG | |
| 258 Control | 02/03/00 | 5:53:34 | GJ9SAT | GJ9SAT | Acknowledged Alarm received from . Value: , Status: -N-, Cmd Pri: NONE | KAG | |
| Trend | 02/03/00 | 5:54:52 | FICT2CD | Trend Value | 35.642046 | | |
| FMCS | 02/03/00 | 6:01:01 | CAB1SS | 220 BLR1 START STOP | Commanded | SP | ON Cmd Prio: OPER |
| Trend | 02/03/00 | 6:05:40 | FICT2CD | Trend Value | 33.741955 | | |
| Trend | 02/03/00 | 6:07:45 | FICT2CD | Trend Value | 31.22893 | | |
| Trend | 02/03/00 | 6:10:48 | FICT2CD | Trend Value | 33.588722 | | |
| Trend | 02/03/00 | 6:11:47 | FICT2CD | Trend Value | 36.500153 | | |
| Trend | 02/03/00 | 6:12:47 | FICT2CD | Trend Value | 40.790684 | | |
| Trend | 02/03/00 | 6:13:46 | FICT2CD | Trend Value | 46.123199 | | |
| Trend | 02/03/00 | 6:14:44 | FICT2CD | Trend Value | 53.907444 | | |
| Trend | 02/03/00 | 6:15:44 | FICT2CD | Trend Value | 62.764324 | | |
| Trend | 02/03/00 | 6:16:47 | FICT2CD | Trend Value | 71.529266 | | |
| Trend | 02/03/00 | 6:17:54 | FICT2CD | Trend Value | 83.87986 | | |
| Trend | 02/03/00 | 6:18:58 | FICT2CD | Trend Value | 91.75605 | | |
| 258 Control | 02/03/00 | 6:25:28 | FHHBSA | FHHBSA | Alarm received from . Value: , Status: -N-, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 6:26:41 | FICCHDP | Trend Value | 22.077753 | | |
| 258 Control | 02/03/00 | 6:28:31 | FHHBSA | FHHBSA | Acknowledged Alarm received from . Value: , Status: -N-, Cmd Pri: NONE | KAG | |
| Trend | 02/03/00 | 6:31:30 | FICCHDP | Trend Value | 21.065577 | | |
| 258 Control | 02/03/00 | 6:32:32 | FHHBSA | FHHBSA | Alarm received from . Value: , Status: *A*, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 6:33:29 | FICT2CD | Trend Value | 83.87988 | | |
| Trend | 02/03/00 | 6:34:25 | FICT2CD | Trend Value | 74.900398 | | |
| Trend | 02/03/00 | 6:35:25 | FICT2CD | Trend Value | 65.583817 | | |
| Trend | 02/03/00 | 6:36:28 | FICT2CD | Trend Value | 56.420471 | | |
| Trend | 02/03/00 | 6:37:32 | FICT2CD | Trend Value | 46.00061 | | |
| Trend | 02/03/00 | 6:38:32 | FICT2CD | Trend Value | 39.564816 | | |
| Trend | 02/03/00 | 6:39:34 | FICT2CD | Trend Value | 33.925835 | | |
| Trend | 02/03/00 | 6:40:27 | FICCHDP | Trend Value | 19.978424 | | |
| Trend | 02/03/00 | 6:40:34 | FICT2CD | Trend Value | 31.351517 | | |
| Trend | 02/03/00 | 6:42:42 | FICT2CD | Trend Value | 35.519459 | | |
| Trend | 02/03/00 | 6:46:57 | FICCHDP | Trend Value | 21.018717 | | |
| FMCS | 02/03/00 | 6:51:03 | FHHBSA | 257 HW BOILER SUMMARY ALARM | Alarm received from TRUNK 3 Node 10. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| FMCS | 02/03/00 | 6:51:33 | FHHBSA | 257 HW BOILER SUMMARY ALARM | Commanded | KAG | OFF Cmd Prio: NONE Disabled Alarm Printing |
| 258 Control | 02/03/00 | 6:52:18 | FHHBSA | FHHBSA | Alarm received from . Value: , Status: *ODSB*, Cmd Pri: NONE | SYSTEM | |
| FMCS | 02/03/00 | 6:52:18 | FHHBSA | 257 HW BOILER SUMMARY ALARM | Alarm received from TRUNK 3 Node 10. Value: OFF, Status: *ODSB*, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 6:56:31 | FICT2CD | Trend Value | 33.037063 | | |
| Trend | 02/03/00 | 6:58:34 | FICT2CD | Trend Value | 31.075697 | | |
| Trend | 02/03/00 | 6:59:37 | FICT2CD | Trend Value | 32.087036 | | |

(E)



| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| Trend | 02/03/00 | 7:00:39 | FICT2CD | Trend Value | 33.711308 | | |
| Trend | 02/03/00 | 7:01:39 | FICT2CD | Trend Value | 36.884032 | | |
| Trend | 02/03/00 | 7:02:40 | FICT2CD | Trend Value | 41.434261 | | |
| Trend | 02/03/00 | 7:03:45 | FICT2CD | Trend Value | 49.065277 | | |
| Trend | 02/03/00 | 7:04:46 | FICT2CD | Trend Value | 57.033401 | | |
| Trend | 02/03/00 | 7:05:41 | FICT2CD | Trend Value | 66.349983 | | |
| Trend | 02/03/00 | 7:06:39 | FICT2CD | Trend Value | 76.555313 | | |
| Trend | 02/03/00 | 7:07:42 | FICT2CD | Trend Value | 92.062515 | | |
| CH Room | 02/03/00 | 7:15:28 | FICWDPS | FICWDPS | Analog was modified on Insight INSIGHTPC399 | Administrator | |
| FMCS | 02/03/00 | 7:22:19 | FHHBSA | 257 HW BOILER SUMMARY ALARM | Acknowledged Alarm received from TRUNK 3 Node 10. Value: ON, Status: "ODSB", Cmd Pri: NONE | SP | |
| Trend | 02/03/00 | 7:25:00 | FICT2CD | Trend Value | 80.018387 | | |
| Trend | 02/03/00 | 7:26:07 | FICT2CD | Trend Value | 68.342018 | | |
| CH Room | 02/03/00 | 7:26:29 | FICHP4D | N258 CHWP 4 SPEED | Commanded | Administrator | 35 Percnt Cmd Prio: OPER |
| PDC | 02/03/00 | 7:26:54 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Node was deleted from BLN | SP | Field Panel ostracized. |
| FMCS | 02/03/00 | 7:26:54 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Node was deleted from BLN | SP | Field Panel ostracized. |
| CH Room | 02/03/00 | 7:26:59 | FIHCHT | FIHCHT | Alarm received from NODE 50. Value: 50.0, Status: "A", Cmd Pri: NONE | SYSTEM | |
| PDC | 02/03/00 | 7:27:04 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Field Panel was deleted on Insight NT510FMCSPDC | SP | |
| FMCS | 02/03/00 | 7:27:04 | TRUNK 3 Node 99 | TRUNK 3 Node 99 | Field Panel was deleted on Insight NT510FMCSPDC | SP | |
| CH Room | 02/03/00 | 7:27:08 | INSIGHTPC398 | INSIGHTPC398 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| Trend | 02/03/00 | 7:27:12 | FICT2CD | Trend Value | 59.331902 | | |
| CH Room | 02/03/00 | 7:27:19 | INSIGHTPC398 | INSIGHTPC398 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| PDC | 02/03/00 | 7:27:53 | INSIGHTPC399 | INSIGHTPC399 | Field Panel was added on Insight NT510FMCSPDC | SP | |
| FMCS | 02/03/00 | 7:27:53 | INSIGHTPC399 | INSIGHTPC399 | Field Panel was added on Insight NT510FMCSPDC | SP | |
| CH Room | 02/03/00 | 7:28:11 | INSIGHTPC398 | INSIGHTPC398 | Node was added to BLN | SYSTEM | |
| Trend | 02/03/00 | 7:28:18 | FICT2CD | Trend Value | 47.961998 | | |
| CH Room | 02/03/00 | 7:28:30 | INSIGHTPC398 | INSIGHTPC398 | Field Panel has returned from failure | SYSTEM | |
| CH Room | 02/03/00 | 7:29:15 | FIHCHT | FIHCHT | Alarm received from NODE 50. Value: 50.0, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:29:22 | FICT2CD | Trend Value | 40.943916 | | |
| PDC | 02/03/00 | 7:29:28 | TRUNK 3 Node 09 | TRUNK 3 Node 09 | Node was deleted from BLN | SP | Field Panel ostracized. |
| FMCS | 02/03/00 | 7:29:28 | TRUNK 3 Node 09 | TRUNK 3 Node 09 | Node was deleted from BLN | SP | Field Panel ostracized. |
| CH Room | 02/03/00 | 7:29:43 | TRUNK 3 NODE 09 | TRUNK 3 NODE 09 | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| CH Room | 02/03/00 | 7:29:47 | FIHCHT | FIHCHT | Alarm received from NODE 50. Value: 50.0, Status: "A", Cmd Pri: NONE | SYSTEM | |
| PDC | 02/03/00 | 7:29:54 | TRUNK 3 Node 09 | TRUNK 3 Node 09 | Node was added to BLN Field Panel is failed | SP | Field Panel readded. |
| FMCS | 02/03/00 | 7:29:54 | TRUNK 3 Node 09 | TRUNK 3 Node 09 | Node was added to BLN Field Panel is failed | SP | Field Panel readded. |
| CH Room | 02/03/00 | 7:29:59 | TRUNK 3 NODE 09 | TRUNK 3 NODE 09 | Node was added to BLN | SYSTEM | |
| PDC | 02/03/00 | 7:30:02 | | | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| FMCS | 02/03/00 | 7:30:02 | | | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| PDC | 02/03/00 | 7:30:12 | | | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| FMCS | 02/03/00 | 7:30:12 | | | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| Trend | 02/03/00 | 7:30:22 | FICT2CD | Trend Value | 34.446827 | | |
| Trend | 02/03/00 | 7:30:23 | FICT2D | Trend Value | 24.718784 | | |
| CH Room | 02/03/00 | 7:30:25 | FIHCHT | FIHCHT | Alarm received from NODE 50. Value: 50.0, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:30:28 | FICT2D | Trend Value | 23.892612 | | |
| CH Room | 02/03/00 | 7:30:32 | FIHCHT | FIHCHT | Alarm received from NODE 50. Value: 50.0, Status: "A", Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:30:33 | FICT2D | Trend Value | 23.066441 | | |
| Trend | 02/03/00 | 7:30:43 | FICT2D | Trend Value | 22.240269 | | |
| Trend | 02/03/00 | 7:30:46 | FICT2D | Trend Value | 21.414097 | | |
| 258 Control | 02/03/00 | 7:30:49 | BLN1 | | Disconnect | SYSTEM | Our node removed by the network |
| 258 Control | 02/03/00 | 7:30:50 | | | Field Panel has failed | SYSTEM | Panel was Ostracized. |
| Trend | 02/03/00 | 7:30:57 | FICT2D | Trend Value | 20.601597 | | |

| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| Trend | 02/03/00 | 7:31:02 | FICT2D | Trend Value | 19.781284 | | |
| **PDC** | **02/03/00** | **7:31:04** | **INSIGHTPC399** | **INSIGHTPC399** | **Node was added to BLN** | **SYSTEM** | |
| **FMCS** | **02/03/00** | **7:31:04** | **INSIGHTPC399** | **INSIGHTPC399** | **Node was added to BLN** | **SYSTEM** | |
| Trend | 02/03/00 | 7:31:13 | FICT2D | Trend Value | 18.960972 | | |
| Trend | 02/03/00 | 7:31:19 | FICT2D | Trend Value | 18.154331 | | |
| **PDC** | **02/03/00** | **7:31:23** | **INSIGHTPC399** | **INSIGHTPC399** | **Field Panel has returned from failure** | **SYSTEM** | |
| **FMCS** | **02/03/00** | **7:31:23** | **INSIGHTPC399** | **INSIGHTPC399** | **Field Panel has returned from failure** | **SYSTEM** | |
| Trend | 02/03/00 | 7:31:23 | FICT2CD | Trend Value | 31.504749 | | |
| Trend | 02/03/00 | 7:31:25 | FICT2D | Trend Value | 17.339878 | | |
| Trend | 02/03/00 | 7:31:34 | FICT2D | Trend Value | 16.539097 | | |
| Trend | 02/03/00 | 7:31:43 | FICT2D | Trend Value | 15.730502 | | |
| CH Room | 02/03/00 | 7:31:50 | FIHCHT | FIHCHT | Alarm received from NODE 50. Value: 50.0, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:31:53 | FICT2D | Trend Value | 14.921908 | | |
| Trend | 02/03/00 | 7:32:02 | FICT2D | Trend Value | 14.126987 | | |
| Trend | 02/03/00 | 7:32:07 | FICT2D | Trend Value | 13.324252 | | |
| **258 Control** | **02/03/00** | **7:32:12** | **BLN1** | | **Connected** | **SYSTEM** | |
| **CH Room** | **02/03/00** | **7:32:15** | **FICWP3D** | **N258 CWP 3 SPEED** | **Commanded** | **Administrator** | **30 Percnt Cmd Prio: OPER** |
| Trend | 02/03/00 | 7:32:16 | FICT2D | Trend Value | 12.53519 | | |
| Trend | 02/03/00 | 7:32:22 | FICT2D | Trend Value | 11.738315 | | |
| **CH Room** | **02/03/00** | **7:32:23** | **FICWP4S** | **N258 CWP 4 ON OFF** | **Commanded** | **Administrator** | **ON Cmd Prio: OPER** |
| Trend | 02/03/00 | 7:32:28 | FICT2D | Trend Value | 10.94144 | | |
| **CH Room** | **02/03/00** | **7:32:33** | **FICWP4D** | **N258 CWP 4 SPEED** | **Commanded** | **Administrator** | **30 Percnt Cmd Prio: OPER** |
| Trend | 02/03/00 | 7:32:33 | FICT2D | Trend Value | 5 | | |
| Trend | 02/03/00 | 7:32:37 | FICCHDP | Trend Value | 19.781612 | | |
| **PDC** | **02/03/00** | **7:32:38** | **TRUNK 3 Node 09** | **TRUNK 3 Node 09** | **Field Panel has failed** | **SYSTEM** | **Panel was Ostracized.** |
| **FMCS** | **02/03/00** | **7:32:38** | **TRUNK 3 Node 09** | **TRUNK 3 Node 09** | **Field Panel has failed** | **SYSTEM** | **Panel was Ostracized.** |
| Trend | 02/03/00 | 7:32:39 | FICCHDP | Trend Value | 15.45175 | | |
| Trend | 02/03/00 | 7:32:41 | FICCHDP | Trend Value | 16.5389 | | |
| CH Room | 02/03/00 | 7:32:44 | FICCHDPA | N258 CRAY LOOP LOW DP ALARM | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:32:44 | FICCHDP | Trend Value | 12.84015 | | |
| Trend | 02/03/00 | 7:32:45 | FICCHDP | Trend Value | 7.448061 | | |
| Trend | 02/03/00 | 7:32:46 | FICCHDP | Trend Value | 2.583994 | | |
| Trend | 02/03/00 | 7:32:48 | FICCHDP | Trend Value | 0.887662 | | |
| CH Room | 02/03/00 | 7:32:49 | FIHCHT | FIHCHT | Alarm received from NODE 50. Value: 50.0, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| 258 Control | 02/03/00 | 7:32:51 | BLN1 | BLN1 | The DST do not match on the Insight and on BLN BLN1. The following years are inconsistent: 1998 | SYSTEM | Modify manually the DST on Insight or on the Field Panel |
| CH Room | 02/03/00 | 7:32:52 | FIHCHT | FIHCHT | Alarm received from NODE 50. Value: 50.0, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| **PDC** | **02/03/00** | **7:32:52** | **TRUNK 3 Node 09** | **TRUNK 3 Node 09** | **Node was added to BLN** | **SYSTEM** | |
| **FMCS** | **02/03/00** | **7:32:52** | **TRUNK 3 Node 09** | **TRUNK 3 Node 09** | **Node was added to BLN** | **SYSTEM** | |
| **258 Control** | **02/03/00** | **7:32:53** | **BLN1** | **BLN1** | **The Error Status Messages do not match on the Insight and on BLN BLN1. The following Error Status Messages are inconsistent: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21.** | **SYSTEM** | **Modify manually the Error Status Messages on Insight or on the Field Panel.** |
| CH Room | 02/03/00 | 7:32:57 | FIHCHDP | FIHCHDP | Alarm received from NODE 50. Value: 1.0, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:11 | FICHP1CD | N258 CHWP 1 CURRENT DRAW | Alarm received from NODE 50. Value: 0.0, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:13 | FICH3CD | FICH3CD | Alarm received from NODE 50. Value: 0.0, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:13 | FICH3SA | N258 CHILLER 3 SUMM ALARM | Alarm received from NODE 50. Value: 1.00, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| 258 Control | 02/03/00 | 7:33:16 | BLN1 | BLN1 | The Access Groups do not match on the Insight and on BLN BLN1. The following Access Groups are inconsistent: 2, 3, 4, 29, 30 | SYSTEM | Modify manually the Access Groups on Insight or on the Field Panel |

E



| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| CH Room | 02/03/00 | 7:33:17 | FICHP2A | N258 CHWP 2 CURRENT ALARM | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:17 | FICWP3D | N258 CWP 3 SPEED | Commanded | Administrator | 40 Percnt Cmd Prio: OPER |
| CH Room | 02/03/00 | 7:33:19 | FICHP7CD | N258 CHWP 7 CURRENT DRAW | Alarm received from NODE 50. Value: 0.0, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:20 | FICHP5CD | N258 CHWP 5 CURRENT DRAW | Alarm received from NODE 50. Value: 0.0, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:22 | FICH3OT | N258 CHILLER 3 CHW OUTPUT TEMP | Alarm received from NODE 50. Value: 50.0, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:22 | FICLPCDA | FICLPCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:22 | FIPPCDA | FIPPCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:22 | SCU309 | SCU309 | Alarm received from . Value: , Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:23 | FIHLPCDA | FIHLPCDA | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:23 | FILLPCDA | FILLPCDA | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| **258 Control** | **02/03/00** | **7:33:25** | **TRUNK 3 NODE 09** | **TRUNK 3 NODE 09** | **Field Panel has failed** | **SYSTEM** | **Panel was Ostracized.** |
| CH Room | 02/03/00 | 7:33:28 | FICWP4D | N258 CWP 4 SPEED | Commanded | Administrator | 40 Percnt Cmd Prio: OPER |
| Trend | 02/03/00 | 7:33:29 | FICT2CD | Trend Value | 35.887218 | | |
| CH Room | 02/03/00 | 7:33:33 | FICHP11CD | N258 CHWP 11 CURRENT DRAW | Alarm received from NODE 50. Value: 0.0, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:36 | FICWP3D | N258 CWP 3 SPEED | Commanded | Administrator | 50 Percnt Cmd Prio: OPER |
| 258 Control | 02/03/00 | 7:33:38 | SCU309 | SCU309 | Alarm received from . Value: , Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:33:38 | SCU309 | SCU309 | Alarm received from . Value: , Status: *A*, Cmd Pri: NONE | SYSTEM | |
| FMCS | 02/03/00 | 7:33:38 | SCU309 | 227D SCU 309 | Alarm received from TRUNK 3 Node 08. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| **258 Control** | **02/03/00** | **7:33:40** | **TRUNK 3 NODE 09** | **TRUNK 3 NODE 09** | **Node was added to BLN** | **SYSTEM** | |
| CH Room | 02/03/00 | 7:33:46 | FICWP4D | N258 CWP 4 SPEED | Commanded | Administrator | 50 Percnt Cmd Prio: OPER |
| CH Room | 02/03/00 | 7:33:56 | FICH3CD | FICH3CD | Alarm received from NODE 50. Value: 0.0, Status: *P*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:34:07 | FICH3SA | N258 CHILLER 3 SUMM ALARM | Alarm received from NODE 50. Value: 0.00, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:34:09 | FICHP1CD | N258 CHWP 1 CURRENT DRAW | Alarm received from NODE 50. Value: 31.5, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:34:15 | FICHP5CD | N258 CHWP 5 CURRENT DRAW | Alarm received from NODE 50. Value: 45.8, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:34:18 | FICHP7CD | N258 CHWP 7 CURRENT DRAW | Alarm received from NODE 50. Value: 22.5, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:34:19 | FIHLPCDA | FIHLPCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:34:19 | FILLPCDA | FILLPCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:34:23 | FICWP2CD | N258 CWP 2 CURRENT DRAW | Alarm received from NODE 50. Value: 18.2, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:34:25 | FICWP1CD | N258 CWP 1 CURRENT DRAW | Alarm received from NODE 50. Value: 19.2, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:35:08 | FICHP1CD | N258 CHWP 1 CURRENT DRAW | Alarm received from NODE 50. Value: 0.0, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:35:13 | FICHP7CD | N258 CHWP 7 CURRENT DRAW | Alarm received from NODE 50. Value: 0.0, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:35:14 | FICHP5CD | N258 CHWP 5 CURRENT DRAW | Alarm received from NODE 50. Value: 0.0, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:35:14 | FIHLPCDA | FIHLPCDA | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:35:15 | FICHP9S | N258 CHWP 9 ON OFF | Commanded | Administrator | OFF Cmd Prio: OPER |

E



| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| CH Room | 02/03/00 | 7:35:16 | FICHP9CD | N258 CHWP 9 CURRENT DRAW | Alarm received from NODE 50. Value: 0.0, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:35:21 | FICHP10CD | N258 CHWP 10 CURRENT DRAW | Alarm received from NODE 50. Value: 0.0, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:35:23 | FICLPCDA | FICLPCDA | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:35:23 | FILLPCDA | FILLPCDA | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:35:56 | FIHCHDPA | N258 HIGH LOOP LOW DP ALARM | Commanded | Administrator | OFF Cmd Prio: OPER |
| Trend | 02/03/00 | 7:36:07 | FICH4CD | Trend Value | 0 | | |
| CH Room | 02/03/00 | 7:36:11 | FICTCDA | FICTCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:36:13 | FICHP9S | N258 CHWP 9 ON OFF | Commanded | Administrator | ON Cmd Prio: OPER |
| CH Room | 02/03/00 | 7:36:18 | FICWP1CD | N258 CWP 1 CURRENT DRAW | Alarm received from NODE 50. Value: 21.1, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:36:19 | FICWPCDA | FICWPCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:36:28 | FICWPCDA | FICWPCDA | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:36:30 | FICW4DPA | N258 CHILLER 4 CW DP ALARM | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:36:39 | FICTCDA | FICTCDA | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:36:52 | FICHP10S | N258 CHWP 10 ON OFF | Commanded | Administrator | OFF Cmd Prio: OPER |
| CH Room | 02/03/00 | 7:37:09 | FICHP10S | N258 CHWP 10 ON OFF | Commanded | Administrator | ON Cmd Prio: OPER |
| CH Room | 02/03/00 | 7:37:19 | FICWP1CD | N258 CWP 1 CURRENT DRAW | Alarm received from NODE 50. Value: 20.7, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| FMCS | 02/03/00 | 7:37:26 | DECTRT | 234 CTW RETURN TEMP | Alarm received from TRUNK 0 Node 16. Value: 74.83, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:38:07 | FICHMFL | FICHMFL | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:38:10 | FICWPCDA | FICWPCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:38:12 | FICC4IVC | Trend Value | OFF | | |
| Trend | 02/03/00 | 7:38:12 | FICC4IVO | Trend Value | ON | | |
| CH Room | 02/03/00 | 7:38:16 | FICTCDA | FICTCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:38:28 | FICW2DPA | N258 CHILLER 2 CW DP ALARM | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:38:41 | FICTCDA | FICTCDA | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:38:53 | FICHP9CD | N258 CHWP 9 CURRENT DRAW | Alarm received from NODE 50. Value: 0.0, Status: *P*, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:38:59 | FICC4IVC | Trend Value | ON | | |
| Trend | 02/03/00 | 7:38:59 | FICC4IVO | Trend Value | OFF | | |
| CH Room | 02/03/00 | 7:39:04 | FICTCDA | FICTCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:39:06 | FICC4IVC | Trend Value | OFF | | |
| Trend | 02/03/00 | 7:39:06 | FICC4IVO | Trend Value | ON | | |
| CH Room | 02/03/00 | 7:39:15 | FICH3SA | N258 CHILLER 3 SUMM ALARM | Alarm received from NODE 50. Value: 1.00, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:39:15 | FICHP7CD | N258 CHWP 7 CURRENT DRAW | Alarm received from NODE 50. Value: 31.4, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:39:17 | FICHP5CD | N258 CHWP 5 CURRENT DRAW | Alarm received from NODE 50. Value: 35.0, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:39:20 | FIHLPCDA | FIHLPCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |

E



| Insight Location | Date | Time | System Name | Name | Action | Operator | Comment |
|---|---|---|---|---|---|---|---|
| CH Room | 02/03/00 | 7:39:20 | FILLPCDA | FILLPCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:39:25 | FICWP2CD | N258 CWP 2 CURRENT DRAW | Alarm received from NODE 50. Value: 26.1, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:39:25 | FICCHDP | Trend Value | 1.974813 | | |
| CH Room | 02/03/00 | 7:39:26 | FIHCHDP | FIHCHDP | Alarm received from NODE 50. Value: 2.0, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:39:27 | FIHCHDP | FIHCHDP | Alarm received from NODE 50. Value: 2.0, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:39:28 | FICTCDA | FICTCDA | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:39:28 | FICWP1CD | N258 CWP 1 CURRENT DRAW | Alarm received from NODE 50. Value: 28.4, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:39:32 | FICHP11CD | N258 CHWP 11 CURRENT DRAW | Alarm received from NODE 50. Value: 36.5, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:39:35 | FICHP10CD | N258 CHWP 10 CURRENT DRAW | Alarm received from NODE 50. Value: 34.2, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:39:38 | FICLPCDA | FICLPCDA | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:39:41 | FICCHDP | Trend Value | 3.043221 | | |
| CH Room | 02/03/00 | 7:39:42 | FI3SAT | 258 AH3 SUPPLY TEMP | Alarm received from TRUNK 3 NODE 16. Value: 64.87, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:39:45 | FIHCHDPA | N258 HIGH LOOP LOW DP ALARM | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: OPER | SYSTEM | |
| CH Room | 02/03/00 | 7:39:47 | FIHLPCDA | FIHLPCDA | Alarm received from NODE 50. Value: OFF, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:40:01 | FIHCHDP | FIHCHDP | Alarm received from NODE 50. Value: 2.0, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:40:05 | FICHP1CD | N258 CHWP 1 CURRENT DRAW | Alarm received from NODE 50. Value: 31.1, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:40:13 | FILCHT | FILCHT | Alarm received from NODE 50. Value: 44.1, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:40:19 | FIHCHDP | FIHCHDP | Alarm received from NODE 50. Value: 2.2, Status: -N-, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:40:20 | FICWP2CD | N258 CWP 2 CURRENT DRAW | Alarm received from NODE 50. Value: 18.9, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| CH Room | 02/03/00 | 7:40:28 | FICLPCDA | FICLPCDA | Alarm received from NODE 50. Value: ON, Status: *A*, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:40:33 | FICCHDP | Trend Value | 4.317814 | | |
| Trend | 02/03/00 | 7:40:35 | FICCHDP | Trend Value | 11.487392 | | |
| Trend | 02/03/00 | 7:40:36 | FICCHDP | Trend Value | 16.351461 | | |
| Trend | 02/03/00 | 7:40:37 | FICCHDP | Trend Value | 17.597937 | | |
| Trend | 02/03/00 | 7:40:41 | FICCHDP | Trend Value | 18.900644 | | |
| CH Room | 02/03/00 | 7:40:58 | FICH3CD | FICH3CD | Alarm received from NODE 50. Value: 0.0, Status: *A3*, Cmd Pri: NONE | SYSTEM | |
| Trend | 02/03/00 | 7:40:59 | FICCHDP | Trend Value | 13.193098 | | |

CLAIM #2

**Leggoe Glen**

(E)

**From:** Leggoe Glen
**Sent:** Wednesday, February 09, 2000 6:12 PM
**To:** Graham Garry
**Cc:** Sasaki Dan; Miess Wesley
**Subject:** NASA Letter 08 Feb

Thanks for giving me an opportunity to review the letter which Vivienne Gallo, contracting officer for NASA, sent to Interstate Construction (attn: John Hartman). I'll offer my opinion based on the analysis we have completed to date. I am struck by the apparent "rush to judgement" to assign accountability based on limited input or understanding of the system. This is particularly troubling to me, having talked with several NASA personnel indicating that we would be investigating the root cause of why events occurred.

NASA states "that the 36-hour Work Phase E startup delay was the result of a missing software "go to" statement, and the need to implement several other software changes to improve network communications with the variable frequency drive RTU network."

The "36-hour Work Phase E startup delay", implying the delay began Midnight on Monday morning, was the result of several factors including, but not limited to: no water flow in the high temperature secondary loop established by others until after 3 AM monday morning, no water flow in the Cray secondary loop established by others until after 4 AM monday morning (both these items were promised to Siemens by NASA in the Wednesday Coordination Meeting on 26-Jan-00), contaminated air lines resulting from defective compressed air dryer, mis-matched chilled water pumps and motors necessitating additional NASA directed testing to determine VFD safety limits, specified condenser water strainers preventing sufficient water flow and necessitating additional testing to determine misapplication of specified strainer. Additional factors may have also contributed to the "delay."

The "missing software 'go to' statement", when added on Monday, may have incidentally triggered a momentary improvement in system response, but is not required and provided no change in the application software (PPCL) operation. The implemented "several other software changes to improve network communications with the variable frequency drive RTU network" similarly may have initiated a momentary improvement in system response, but provided no functional change in the application software (PPCL) operation.

A timer problem did appear evident "after the plant unexpectedly [shut down] for 4-hours at 7:32 a.m. on Thursday, February 3, 2000." During the several hours prior to 7:32 on Thursday, FMCS operators (using logon operator initials KAG and SP) were recorded by the FMCS as making changes to the Workstation in Control Room 227 (Bldg. N-258), both at the workstation and from the FMCS or PDC Workstations in their location 510. Changes made at the time included ostracizing and adding nodes on the network multiple times, including one event recorded six (6) seconds prior to the alarm event marking failure of the Cray Secondary Chilled Water Loop Pressure at 07:32:44 on Thursday, February 3, 2000.

During the several hours following the event at 07:32:44 on Thursday, February 3, 2000, a NASA FMCS operator (Ken Goodman) made structural changes to the installed software. The software now operating in the system is changed from what Siemens validated, tested, commissioned and tuned. We have the skills and capability to evaluate the current software, but I don't know if such evaluation is within our contracted scope of work.

As stated in it's letter, "NASA realizes that the ongoing software changes being made by Siemens are necessary to obtain reliable system operation...." We have been monitoring the system but not, to my knowledge, making any changes to the application program. Reliable system operation can only be obtained following failure analysis, risk assessment, and a genuine interest from all involved in making the system work correctly and reliably.

Following determination of the root cause of the system event and any subsequent changes made to the installed control database by any operator on the network, we can restore the application program as validated in the Bench Tests performed in Hayward (tuning and timing parameters adjusted based on field observed conditions will need to be maintained for proper function).

NASA has directed the contractor to provide a test plan. We might suggest that NASA reconsider the directive, based on a fuller understanding of the facts and events.

***Glen Leggoe***

**Sasaki Dan** E

**From:** Leggoe Glen
**Sent:** Thursday, February 10, 2000 3:09 PM
**To:** 'jhartmann@interstatecon.com'
'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; Sasaki Dan; Graham Garry; Lam Vinh-Hoa; Leggoe Glen; Miess Wesley
**Subject:** NASA N-258, Process Cooling System

John,

Attach document is per your request. Hard copy will be faxed Dave Johnston. Call me once you have time to digest.
I'll call AC Mosher and notify him of email.

By the way, I'm on Glen leggoe's email account. Thanks.

***R. Dan Sasaki***
***Project Manager***

E

**SIEMENS** **Landis Division**

**Fax / Email #16**

| | | | |
|---|---|---|---|
| To: | John Hartmann | From: | R. Dan Sasaki |
| | Interstate Construction | Phone: | (510) 783-6000 x221 |
| Fax: | (916) 351-0950 | Fax: | (510) 293-2100 |
| Phone: | (916) 351-0622 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| Date: | February 10, 2000 | Pages to Follow: | 0 |

Cc: AC Mosher – NASA amosher@mail.arc.nasa.gov
Bill Eismann – NASA beismann@mail.arc.nasa.gov
Vivienne D Gallo – NASA vgallo@mail.arc.nasa.gov
Dave Johnston – ICI (650) 691-1271
Garry Graham, Jason Daters, Glen Leggoe, – Siemens
Job File #620-PE-9677

Message: NASA N258, Process Cooling System

John,

#1 ~~Controls for the chiller plant began automatic operation mid-day on 01-Feb-2000: many factors contributed to a 36-hour delay from the scheduled 23:59 30-Jan 2000 turnover. We would like to meet with Interstate and NASA to review all contributing factors.~~

Automatic control of the chiller plant was in-place until an incident on Thursday morning (03-Feb-00). Siemens has extensively investigated the incident; evaluating application code, system activity logs and trend data. The entire project team would benefit from an open discussion of our findings and conclusions.

NASA representatives have implemented network, system and application changes, without notification, to SBT installed work for N258 Process Cooling System: this constitutes acceptance of the system, effective 07:30 on February 3, 2000.

SBT has maintained round-the-clock watches as per NASA request, without written directive, purchase order or change notice. SBT is requesting a more formal process to determine our extended on-site role ands responsibilities: we are currently scheduling on-site labor only until 17:00 tomorrow (11-Feb-00). If we are needed for further responsibility, SBT needs detailed and written direction.

SBT recommends a meeting of all concerned parties, to discuss recent events, the current state of the Process Cooling System controls, and suggestions to improve overall operation of the system.

Please contact us if you have any comments or concerns.

Sincerely,

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**

Landis Division
2525 Barrington Court
Hayward, CA 94545

Tel: (510) 783-6000
Fax: (510) 293-2100

(F.)

**Leggoe Glen**

**From:** Sasaki Dan
**ent:** Friday, February 11, 2000 1:28 PM
**o:** 'jhartmann@interstatecon.com'
**Cc:** 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; Graham Garry; Leggoe Glen; Lam Vinh-Hoa; Bullock Brian; Jozsa Timothy; Walden Daniel; Sim Jeff; Murray Jason; Santora Nathan; Miess Wesley
**Subject:** NASA 258-Siemens Round the Clock Attendant

John,

Siemens is incurring cost since Thursday 03-Feb-00 at 07:30, for round the clock attendant for NASA's 258 Process Cooling System.
Incurring cost will be calculated and submitted to Interstate for processing.

Siemens will honor NASA's request for continuing the round the clock attendant this weekend, Saturday & Sunday, 12 & 13-Feb-00.

Sincerely,

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

G

**Sasaki Dan**

**From:** John Hartmann [jhartmann@interstatecon.com]
**Sent:** Friday, February 11, 2000 1:59 PM
'r 'Sasaki Dan'
ɔ ct: RE: NASA N-258, Process Cooling System

Dan,

As per our phone conversation today, Seimens to remain status quo unit 2/15/00 meeting or unless notified otherwise.

-----Original Message-----
From: Sasaki Dan [mailto:dan.sasaki@sbt.siemens.com]
Sent: Friday, February 11, 2000 12:20 PM
To: 'jhartmann@interstatecon.com'
Cc: 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; Leggoe Glen; Graham Garry; Lam Vinh-Hoa; Miess Wesley
Subject: FW: NASA N-258, Process Cooling System

<< File: Reliability tests.doc >> John,

Siemens will attend Tuesday's meeting at 9 am. We will draft a agenda and forward.

As to NASA's letter dated February 8, 2000, 5th paragraph, Siemens did agree to round the clock attendant until FMCS at Bldg. 510 was on-line to Bldg. 258.

'Wr-'nesday evening, 02-Feb-00, Bldg. N258 MBC #50 & 51 were connected to 's existing Trunk #3 BLN trunk and on-line to FMCS at Bldg. 510.

Siemens correspondence dated 10-Feb-00, reference 3rd and 4th paragraph for NASA/JCI responsibility for round the clock attendant.
Which differs from 11-Feb-00 correspondence from Vivenne Gallo of NASA to Interstate Construction, Inc.

Question: Who is directing Siemens to continue round the clock attendant?
Are there detailed and written directions?

Please respond by 2:00 p.m. today. Thanks

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
SIEMENS Building Technologies, Inc.

> -----Original Message-----
> From: John Hartmann [SMTP:jhartmann@interstatecon.com]
> Sent: Friday, February 11, 2000 11:42 AM
> To: 'Leggoe Glen'; Dan Sasaki (E-mail)
> Cc: A. C. Mosher (E-mail); Bill Eismann (E-mail); Dave Johnston
> (E-mail); Vivienne Gallo (E-mail)
> Subject: RE: NASA N-258, Process Cooling System
>
>
> r

Please see attached letter from NASA in regards to maintaining 24 hour
> control watch at building N258. I also refer you to NASA"s letter dated

> February 8, 2000, 5th paragraph in ... rds to round the clock attendants
> by
> Siemens
>
> Please note meeting scheduled Tuesday morning at 9 am. Notify me if you
> are
...able to attend or would like to reschedule. It would be productive and
... pful, before Tuesday morning, if you could outline an agenda
> (concerns/status/position/suggestions/discovery) etc., and e mail those to
> me. CC all other parties.
>
> If Siemens precludes any part of the requested work by NASA to constitute
> a
> change, please submit written notice within 10 calendar days.
>
> John Hartmann
> Interstate Construction, Inc.
>
> -----Original Message-----
> From: Leggoe Glen [mailto:glen.leggoe@sbt.siemens.com]
> Sent: Thursday, February 10, 2000 3:09 PM
> To: 'jhartmann@interstatecon.com'
> Cc: 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov';
> 'vgallo@mail.arc.nasa.gov'; Sasaki Dan; Graham Garry; Lam Vinh-Hoa; Leggoe
> Glen; Miess Wesley
> Subject: NASA N-258, Process Cooling System
>
> << File: N258 Ogc ICI Fax16.doc >> John,
>
> Attach document is per your request. Hard copy will be faxed Dave
> Johnston.
> Call me once you have time to digest.
> I'll call AC Mosher and notify him of email.
>
... he way, I'm on Glen leggoe's email account. Thanks.

> <<N258 Ogc ICI Fax16.doc>>
>
>
>
> R. Dan Sasaki
> Project Manager <<Reliability tests.doc>>

H

**Leggoe Glen**

**From:** Sasaki Dan
**`ent:** Wednesday, February 16, 2000 11:29 AM
**o:** 'jhartmann@interstatecon.com'
**Cc:** 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Miess Wesley; Graham Garry; Leggoe Glen
**Subject:** NASA 258 meeting summary

John,

Summary of items discussed at Tuesday's 15-Feb-00 meeting at NASA.

1. NASA representative directed Siemens to continue round the clock attendant.
2. Siemens to respond to correspondence, Vivienne Gallo's letter of 11-Feb-00 and Bill Eismann's Email of 14-Feb-00.
3. 15 hour shutdown of system is schedule this weekend, starting at Sunday 21-Feb-00 at 00:01.
4. NASA suggested that training could run concurrently with field testing-acceptance.
5. JCI will investigate and correct BLN trunk wiring installation by Wagle mechanical
6. Siemens will document sequence of events before and during shutdown, and additional work which has a cost impact.
7. System operational issues Siemens identified were two-fold:
   a. Program control of the chiller plant has been negatively impacted by trunk communication issues on the BLN which connects nodes added as part of this project and the existing trunk #03 on the site.
   b. Database integrity was compromised by network configuration changes (by resource unknown) made immediately prior to the 03-Feb-00 07:32 AM chiller shutdown, with resulting unstable program operation continuing through the present.
8. Siemens presented proposed solution, including:
   a. Change the controller configuration to minimize dependency on network communication for control functions. Relocate the chiller control program ("N258 Chillers") and the VFD value calculation program ("Modbus Conversions") to the Open Processor with Modbus Master Gateway, addressed as Node 50. Relocate also the majority of the proofs program ("N258 Misc proofs") to the Modbus gateway. Change virtual or unbundled points as required for the VFDs. Relocate portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51. Change virtual or unbundled points as required for the Chillers.
   b. Verify the database for the project, then implement a "reformat" or cold-start and download of Nodes 50 and 51 to eliminate all database corruption.
   c. Change the BLN trunk wiring to eliminate "T-Taps," implementing true "daisy-chain" wiring.
   d. Change the Workstation configuration for the two PCs. Reconfigure the current Node 97 (scheduled location in N258 Room 127A) to be a server on the BLN. Reconfigure the current Node 99 (scheduled location in N258 Room 227) to be a client communicating with Server Node 97, and no longer residing on the BLN.
9. NASA agreed with our proposed solution and instructed Interstate/Siemens to proceed with implementation.
10. NASA, Interstate, JCI and Siemens will meet Wednesday 16-Feb-00 at 2:00 p.m. to discuss, develop & implement action plan.

With the participation of all parties, striving for the same common goal of a successful project completion, these items could be resolved and implemented in a timely manner.

regards,

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

(I)

**Leggoe Glen**

**From:** Sasaki Dan
**Sent:** Friday, February 18, 2000 3:30 PM
**To:** 'jhartmann@interstatecon.com'
**Cc:** A. C. Mosher (E-mail); Bill Eismann (E-mail); Dave Johnston (E-mail); Vivienne Gallo (E-mail); Graham Garry; Leggoe Glen; Miess Wesley
**Subject:** RE: NASA N-258, Process Cooling System

John,

This email constitutes as a written notice as stated in your 3rd paragraph below and that Siemens will be submitting to Interstate Construction, cost impact for 24 hour, round the clock attendant, starting from 07:30 on Thursday 03-Feb-00. We will submit hard copy of change order document.

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

-----Original Message-----
**From:** John Hartmann [SMTP:jhartmann@interstatecon.com]
**Sent:** Friday, February 11, 2000 11:42 AM
**To:** 'Leggoe Glen'; Dan Sasaki (E-mail)
**Cc:** A. C. Mosher (E-mail); Bill Eismann (E-mail); Dave Johnston (E-mail); Vivienne Gallo (E-mail)
**Subject:** RE: NASA N-258, Process Cooling System

Dan,

Please see attached letter from NASA in regards to maintaining 24 hour control watch at building N258. I also refer you to NASA"s letter dated February 8, 2000, 5th paragraph in regards to round the clock attendants by Siemens

Please note meeting scheduled Tuesday morning at 9 am. Notify me if you are not able to attend or would like to reschedule. It would be productive and helpful, before Tuesday morning, if you could outline an agenda (concerns/status/position/suggestions/discovery) etc., and e mail those to me. CC all other parties.

If Siemens precludes any part of the requested work by NASA to constitute a change, please submit written notice within 10 calendar days.

John Hartmann
Interstate Construction, Inc.

-----Original Message-----
From: Leggoe Glen [mailto:glen.leggoe@sbt.siemens.com]
Sent: Thursday, February 10, 2000 3:09 PM
To: 'jhartmann@interstatecon.com'
Cc: 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; Sasaki Dan; Graham Garry; Lam Vinh-Hoa; Leggoe Glen; Miess Wesley
Subject: NASA N-258, Process Cooling System

<< File: N258 Ogc ICI Fax16.doc >> John,

Attach document is per your request. Hard copy will be faxed Dave Johnston.
Call me once you have time to digest.
I'll call AC Mosher and notify him of email.

I

By the way, I'm on Glen leggoe's email account. Thanks.

<<N258 Ogc ICI Fax16.doc>>

R. Dan Sasaki
Project Manager << File: Reliability tests.doc >>

SIEMENS

Landis Division

**Fax / Email #18**

| | | | |
|---|---|---|---|
| To: | John Hartmann | From: | R. Dan Sasaki |
| | Interstate Construction | Phone: | (510) 783-6000 x221 |
| Fax: | (916) 351-0950 | Fax: | (510) 293-2100 |
| Phone: | (916) 351-0622 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| Date: | February 21, 2000 | Pages to Follow: | 0 |

Cc: AC Mosher – NASA amosher@mail.arc.nasa.gov
Bill Eismann – NASA beismann@mail.arc.nasa.gov
Vivienne D Gall – NASA vgallo@mail.arc.nasa.gov
Dave Johnston – ICI (650) 691-1271
Garry Graham, Jason Daters, Glen Leggoe, Vinh Lam – Siemens
Job File #620-PE-9677

Message: NASA N258, Process Cooling System

John,

In response to Vivienne Gallo of NASA correspondence dated 11-Feb-00, three items of concerns were as follow:

1. The reliability of the system has not been proven;
2. Tests have not been completed;
3. Test plan to prove the reliability has not been completed and submitted;

Automatic control of the chiller plant was in-place and operational until an incident on Thursday morning (03-Feb-00). Siemens has extensively investigated the incident; evaluating application code, system activity logs and trend data, our findings were:

- Program control of the chiller plant has been negatively impacted by trunk communication issues on the BLN at N258, which connects nodes added as part of this project, to the existing BLN trunk #03 on the site.
- Database integrity was compromised by network configuration changes made immediately prior to the 03-Feb-00 07:32 AM chiller shutdown, with resulting unstable program operation.
- NASA representatives have implemented network, system and application changes to the Siemens installed "Validated Bench Test Software", without written notification and prior to completing the three items described above. Siemens contend that this action by the NASA representatives constitutes as an "Acceptance of the system", effective as of 07:30 on February 3, 2000.

Siemens is continuing the round the clock watch of chiller system and cost is being incurred.

Please contact us if you have any comments or concerns.

Sincerely,

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**

Landis Division
2525 Barrington Court
Hayward, CA 94545

Tel: (510) 783-6000
Fax: (510) 293-2100

K

**Leggoe Glen**

| | |
|---|---|
| **From:** | Sasaki Dan |
| **ent:** | Wednesday, February 23, 2000 10:14 AM |
| **.o:** | 'jhartmann@interstatecon.com' |
| **Cc:** | 'amosher@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Graham Garry; Miess Wesley; Leggoe Glen; Lam Vinh-Hoa; Jozsa Timothy; Walden Daniel; Bullock Brian; Daters Jason |
| **Subject:** | N258, response to V. Gallo's 2-11-00 correspondence |

John,

In response to Vivienne Gallo of NASA correspondence dated 11-Feb-00, three items of concerns were as follow:

1. The reliability of the system has not been proven;
   → On 22-Feb-00, NASA representatives and Siemens personnel successfully completed Verification and Testing plan that was submitted on 18-Feb-00.
2. Test plan to prove the reliability has not been completed and submitted;
   →On 18-Feb-00, Siemens submitted Verification and Testing to Interstate Construction, with cc to AC Mosher and Bill Eismann of NASA.
3. Tests have not been completed;
   → On 22-Feb-00, NASA representatives and Siemens personnel successfully completed Verification and Testing plan that was submitted on 18-Feb-00.

Automatic control of the chiller plant was in-place and operational until an incident on Thursday morning 03-Feb-00. Siemens has extensively investigated the incident; evaluating application code, system activity logs and trend data, our findings were:

- Program control of the chiller plant has been negatively impacted by campus wide trunk communication issues on the BLN at N258, which connects nodes added as part of this project, to the existing BLN trunk #03 on the site.
  - a. Thursday 17-Feb-00, JCI eliminate existing BLN trunk #3 tee taps and re-wire trunk to a true daisy chain configuration.
- Database integrity was compromised by network configuration changes made by personnel other than Siemens, immediately prior to the 03-Feb-00 07:32 AM chiller shutdown, with resulting unstable program operation. NASA representatives have implemented network, system and application changes to the Siemens installed "Validated Bench Test Software", without written notification and prior to completing the three items described above.
  - → b. Siemens contends that this action by the NASA representatives constitutes as an "Acceptance of the system, Beneficial Occupancy", effective as of 07:30 on February 3, 2000.
  - → b.1. Siemens is continuing the round the clock watch of chiller system and cost is being incurred.
- Proposed solutions on 15-Feb-00, NASA agreed with our proposed solution and instructed Interstate & Siemens to proceed with implementation, the following was implemented on Friday 18-Feb-00
  - c. Change the controller configuration to minimize dependency on network communication for control functions. Relocate the chiller control program ("N258 Chillers") and the VFD value calculation program ("Modbus Conversions") to the Open processor with Modbus Master Gateway, addressed as Node 50. Relocate also the majority of the proofs program ("N258 Misc. proofs") to the Modbus gateway. Change virtual or unbundled points as required for the VFDs. Relocate portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51. Change virtual or unbundled points as required for the Chillers.
  - d. Verify the database for the project, then implement a cold-start and download of Nodes 50 and 51 to eliminate all database corruption.
  - e. Change the Workstation configuration for the two PCs. Reconfigure the current Node 98 (scheduled location in N258 Room 127A) to be a server on the BLN. Reconfigure the current Node 99 (scheduled location in N258 Room 227) to be a client communicating with Server Node 98, and no longer residing on the BLN.
  - f. Modify applicable Volume #2 Field Test documents for verifying points and automatic system operations.

Please contact us if you have any comments or concerns.

Sincerely,

Dan Sasaki
ɔject Manager

R. Dan Sasaki

(K)

Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

(L.)

**Leggoe Glen**

**From:** Sasaki Dan
**ent:** Wednesday, February 23, 2000 10:39 AM
**o:** 'jhartmann@interstatecon.com'
**Cc:** 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Graham Garry; Miess Wesley; Leggoe Glen; Lam Vinh-Hoa; Jozsa Timothy; Walden Daniel; Bullock Brian; Daters Jason
**Subject:** N258 Turnover

John,

By the end of today, Siemens will have completed all training per project requirements.

Yesterday's field testing of system operations with NASA representatives went well with no failures. Chiller system is currently in automatic controls except for Cray loop pump #9, which is still under manual controls at 48.7 Hz.

By the statements above, Siemens has met requirements to be relieved from round the clock watch, as requested by NASA/JCI.

- Please advise, no later than 12:00 today if NASA concurs and that JCI will be responsible for N258 Chiller system by monitoring from FMCS Bldg. 510, starting today at 17:00.
- Also advise if Cray loop pump #9 is to be left in manual control or to be released to automatic.

Regards,

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

(K)

Sasaki Dan

**From:** John Hartmann [jhartmann@interstatecon.com]
**Sent:** Wednesday, February 23, 2000 11:11 AM
**T-:** 'Sasaki Dan'
A. C. Mosher (E-mail); Vivienne Gallo (E-mail); Wesley Miess (E-mail); Bill Eismann (E-mail); Dave Johnston (E-mail)
**Subject:** RE: 24 hour watch

Dan,

Please provide a letter ( attached it to an E mail and CC all parties ) stating items outlined by NASA ( as per meeting February 15,200 ) have been accomplished and also required training for Johnson Control personnel will be completed today. This letter must be generated by Wesley Miess, according to AC. AC is in agreement that Siemens is in compliance, however, documentation is required. Finial acceptance will come from Ms. Gallo with some input from Bill Eismann. In order for Siemens to pull out today, expedient response is required. The letter generated by Siemens should also include a request to end 24 hour watch and notice for "beneficial occupancy".

John Hartmann
Interstate Construction, Inc.

-----Original Message-----
From: Sasaki Dan [mailto:dan.sasaki@sbt.siemens.com]
Sent: Wednesday, February 23, 2000 10:14 AM
To: 'jhartmann@interstatecon.com'
Cc: 'amosher@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Graham Garry; Miess Wesley; Leggoe Glen; Lam Vinh-Hoa; Jozsa Timothy; Walden Daniel; ...:k Brian; Daters Jason
Subject: N258, response to V. Gallo's 2-11-00 correspondence

John,

In response to Vivienne Gallo of NASA correspondence dated 11-Feb-00, three items of concerns were as follow:

1. The reliability of the system has not been proven;
   On 22-Feb-00, NASA representatives and Siemens personnel successfully completed Verification and Testing plan that was submitted on 18-Feb-00.
2. Test plan to prove the reliability has not been completed and submitted;
   On 18-Feb-00, Siemens submitted Verification and Testing to Interstate Construction, with cc to AC Mosher and Bill Eismann of NASA.
3. Tests have not been completed;
   On 22-Feb-00, NASA representatives and Siemens personnel successfully completed Verification and Testing plan that was submitted on 18-Feb-00.

CLAIM #2

Automatic control of the chiller plant was in-place and operational until an incident on Thursday morning 03-Feb-00. Siemens has extensively investigated the incident; evaluating application code, system activity logs and trend data, our findings were:

CLAIM #3

- Program control of the chiller plant has been negatively impacted by campus wide trunk communication issues on the BLN at N258, which connects no--s added as part of this project, to the existing BLN trunk #03 on the si...

  a. Thursday 17-Feb-00, JCI eliminate existing BLN trunk #3 tee taps and re-wire trunk to a true daisy chain configuration.

(M)

- Database integrity was compromised by network configuration changes made by personnel other than Sieme immediately prior to the 03-Feb-00 07:32 AM chiller shutdown, with r ting unstable program operation. NASA representatives have implemented network, system and application changes to the Siemens installed "Validated Bench Test Software", without written notification and prior to completing the three items described above.

b. Siemens contends that this action by the NASA sentatives constitutes as an "Acceptance of the system, Beneficial Occupancy", effective as of 07:30 on February 3, 2000.

b.1. Siemens is continuing the round the clock watch of chiller system and cost is being incurred.

- Proposed solutions on 15-Feb-00, NASA agreed with our proposed solution and instructed Interstate & Siemens to proceed with implementation, the following was implemented on Friday 18-Feb-00

c. Change the controller configuration to minimize dependency on network communication for control functions. Relocate the chiller control program ("N258 Chillers") and the VFD value calculation program ("Modbus Conversions") to the Open processor with Modbus Master Gateway, addressed as Node 50. Relocate also the majority of the proofs program ("N258 Misc. proofs") to the Modbus gateway. Change virtual or unbundled points as required for the VFDs. Relocate portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51. Change virtual or unbundled points as required for the Chillers.

d. Verify the database for the project, then implement a cold-start and download of Nodes 50 and 51 to eliminate all database corruption.

e. Change the Workstation configuration for the two PCs. Reconfigure the current Node 98 (scheduled location in N258 Room 127A) to be a server on the BLN. Reconfigure the current Node 99 (scheduled location in N258 Room 227) to be a client communicating with Server Node 98, and no longer residing on the BLN.

f. Modify applicable Volume #2 Field Test documents for verifying points and automatic system operations.

Please contact us if you have any comments or concerns.

Sincerely,

R. Dan Sasaki
Project Manager

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
SIEMENS Building Technologies, Inc.

N.

**Leggoe Glen**

**From:** Miess Wesley
**ent:** Wednesday, February 23, 2000 2:16 PM
**o:** 'jhartmann@interstatecon.com'
**Cc:** 'amosher@mail.arc.nasa.gov'; "vgallo@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; Sasaki Dan; Graham Garry; Lam Vinh-Hoa; Leggoe Glen; 'sprevost@mail.arc.nasa.gov'; Daters Jason; Nichols Jack
**Subject:** Beneficial Occupancy

John Hartman,

At this time, all items outlined by NASA in our meeting February 15, 2000 have been accomplished. The required training for Johnson Control personnel is under way and will be completed today.

At this time, we are requesting final acceptance for beneficial occupancy. We are also requesting an end to the 24 hour watch as of 1700 hours on February 23, 2000.

Please let me know if you have any further questions.

Sincerely,

*Wesley Miess*
Siemens Building Technologies
*District Operations Manager*
*orthern California District*

O

**Leggoe Glen**

**From:** Sasaki Dan
**Sent:** Wednesday, February 23, 2000 3:58 PM
**To:** Miess Wesley; Graham Garry
**Cc:** Leggoe Glen; Lam Vinh-Hoa; Daters Jason; Jozsa Timothy; Lam Vinh-Hoa; Walden Daniel; Bullock Brian
**Subject:** FW: N258 Turnover

**Importance:** High

Good News from the front lines. We're outta of here! See you at the office tomorrow. Thanks to all.

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

-----Original Message-----
**From:** Vivienne Gallo [SMTP:vgallo@mail.arc.nasa.gov]
**Sent:** Wednesday, February 23, 2000 3:07 PM
**To:** Interstate Construction Co.
**Cc:** beismann@mail.arc.nasa.gov; amosher@mail.arc.nasa.gov; dan.sasaki@sbt.siemens.com
**Subject:** N258 Turnover
**Importance:** High

Hi John,

>NASA concurs that Siemens has successfully completed all the
>required chiller plant test and training requirements, and that the
>round-the-clock Siemens attendant will no longer be required upon
receipt of the previously requested letter signed by Interstate
>Management and Mr. Wesley Miess of Siemens stating that - "the N-258
>chiller plant operates reliably in both the manual and automatic
>mode(s) in accordance with the Contract Documents and agreed upon
>control system changes".
>
>Issues relating to control system problems and corrective actions
>taken DO NOT need to be addressed in the aforementioned letter as a
>condition to suspending the round-the-clock Siemens attendant. These
>issues will be discussed in detail if any contract claims are
>initiated.
>
>Thank you,

Vivienne

3

SIEMENS

June 26, 2000

Interstate Construction
3909 Security Park Drive
Rancho Cordova, CA 95742
Attn: Mr. John Hartmann

Cc: Glen Zwang – Bartko Zankel Tarant & Miller
Wes Miess, Garry Graham, Jason Daters, Glen Leggoe - Siemens
Job File #620-PE-9677

Project: **NASA N258 Process Cooling System {NA2-99039}**

Subject: **Siemens Claim #3, Solution to NASA BLN Cabling Problem & Modify PPCL to Enhance COV's**

John,

Claim #3 for financial compensation, for the amount of **$39,744.00**. See attach spreadsheet for cost break down. Claim is based on, but not limited to items stated below, which are just a brief description of events that caused the additional burden.

- Monday February 14, 2000 Bill Eismann of NASA Email to John Hartmann of Interstate addressing topics for 09:00 Tuesday February 15, 2000 meeting at NASA N213. {See attach "A"}
- Wednesday February 16, 2000 My Email response to you addressing items discussed, agreement to implement proposed solutions. {See attach "B"}
- N258 Plan for February 18, 2000, to implement purposed solutions. {See attach "C"}
- Wednesday February 23, 2000 my Email response to you addressing Vivienne Gallo of NASA correspondence dated February 11, 2000. {see attach "D"}

We would appreciate a response from Vivienne Gallo of NASA within 60 days, as stated in our Thursday June 8, 2000 meeting.

Siemens is pleased with the results of the automatic operation of this complex chiller system and working with Interstate Construction on this project as well. We look forward to another opportunity in the future.

Regards,

R. Dan Sasaki

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**
Landis Division
2525 Barrington Court
Hayward, CA 94545

510-783-6000 Off.
510-293-2100 Fax

NASA N258
#620-PE-9677
IDENTIFY NASA BLN PROBLEM AND MODIFY PPCL TO ENHANCE COV'S

| NAME | TITLE | TOTALS FROM WEEKS 1-4 | | | | | |
|---|---|---|---|---|---|---|---|
| | | REGULAR | OT 1.5 | OT 2.0 | | | |
| | | TOTAL | TOTAL | TOTAL | | | |
| VINH LAM | PROJECT ENGINEER | **56.0** | **4.0** | **20.0** | | | |
| GLEN LEGGOE | DQMS ENGINEER | **92.0** | **34.0** | **36.0** | | | |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | **28.0** | 0.0 | 0.0 | | | |
| DAN WALDEN | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| BRIAN BULLOCK | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| TIM JOZSA | SR. SYSTEM ENGINEER | **32.0** | **2.0** | 0.0 | | | |
| JEFF SIM | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| JASON MURRAY | ENGINEERING SPECIALIST | **10.0** | 0.0 | 0.0 | | | |
| PATRICK HAYES | SERVICE SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| NATHAN SANTORA | SERVICE SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| LARRY DALEY | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| PHIL CARSWELL | SYSTEM SPECIALIST | 0.0 | **16.0** | 0.0 | | | |
| JASON PERRY | SYSTEM ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| ERIC MINO | SYSTEM ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| GARRY GRAHAM | GROUP OPS MANAGER | **0.0** | **0.0** | **0.0** | | | |
| DAN SASAKI | PROJECT MANAGER | **0.0** | **0.0** | **0.0** | | | |
| | | | | | RATE: | | TOTAL: |
| STRIAGHT HOURS: | | 218.0 | | | $96.00 | | $20,928.00 |
| OVERTIME HOURS @ TIME AND A HALF | | | 56.0 | | $144.00 | | $8,064.00 |
| OVERTIME HOURS @ DOUBLE TIME | | | | 56.0 | $192.00 | | $10,752.00 |
| SUBTOTAL | | | | | | | $39,744.00 |
| **OVERHEAD 10%** | | | $39,744.00 | + | $3,974.40 | = | $43,718.40 |
| **PROFIT 10%** | | | $43,718.40 | + | $4,371.84 | = | $48,090.24 |
| | | | | | | | |
| | TOTAL LABOR DAYS | | | | | | |
| VEHICLE COST | 41 | AT $30/DAY | | | | | NA |
| | | | | | | | |
| **TOTAL AMOUNT OF CHANGE ORDER** | | | | | | | **$39,744.00** |

SUMMARY

NASA N258
#620-PE-9677
IDENTIFY NASA BLN PROBLEM AND MODIFY PPCL TO ENHANCE COV'S

| NAME | TITLE | SUN: 30-JAN-00 | | | MON: 31-JAN-00 | | | TUE: 1-FEB-00 | | | WED: 2-FEB-00 | | | THU: 3-FEB-00 | | | FRI: 4-FEB-00 | | | SAT: 5-FEB-00 | | | REGULAR | OT 1.5 | OT 2.0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | TOTAL | TOTAL | TOTAL |
| VINH LAM | PROJECT ENGINEER | | | 16.0 | | | | | | | 8.0 | | | 8.0 | 4.0 | | 8.0 | | | | | | 24.0 | 4.0 | 16.0 |
| GLEN LEGGOE | DQMS ENGINEER | | | 16.0 | | | | | | | 8.0 | | | 8.0 | 4.0 | | | 8.0 | | | | | 16.0 | 12.0 | 16.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | | | | | | | | | | | | | | 2.0 | | | | | | 2.0 | 0.0 | 0.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | 16.0 | | | | | 0.0 | 16.0 | 0.0 |
| JASON PERRY | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| ERIC MINO | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GARRY GRAHAM | GROUP OPS MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| STRIAGHT HOURS: | | 0.0 | | | 0.0 | | | 0.0 | | | 16.0 | | | 16.0 | | | 10.0 | | | 0.0 | | | 42.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 8.0 | | | 24.0 | | | 0.0 | | | 32.0 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 32.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 32.0 |

WEEK1

NASA N258
#620-PE-9677
IDENTIFY NASA BLN PROBLEM AND MODIFY PPCL TO ENHANCE COV'S

| NAME | TITLE | SUN: 6-FEB-00 | | | MON: 7-FEB-00 | | | TUE: 8-FEB-00 | | | WED: 9-FEB-00 | | | THU: 10-FEB-[illegible] | | | FRI: 11-FEB-00 | | | SAT: 12-FEB-00 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | REGULAR | OT 1.5 | OT 2.0 |
| | | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | TOTAL | TOTAL | TOTAL |
| VINH LAM | PROJECT ENGINEER | | | 4.0 | 8.0 | | | 8.0 | | | | | | 5.0 | | | | | | | | | 21.0 | 0.0 | 4.0 |
| GLEN LEGGOE | DQMS ENGINEER | | | 8.0 | 8.0 | | | 8.0 | | | 8.0 | | | 8.0 | | | 4.0 | | | | | | 36.0 | 0.0 | 8.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | | | | | | | 8.0 | | | | | | | | | | | | 8.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON PERRY | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| ERIC MINO | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GARRY GRAHAM | GROUP OPS MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| STRIAGHT HOURS: | | 0.0 | | | 16.0 | | | 16.0 | | | 16.0 | | | 13.0 | | | 4.0 | | | 0.0 | | | 65.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 12.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 12.0 |

NASA N258
#620-PE-9677
IDENTIFY NASA BLN PROBLEM AND MODIFY PPCL TO ENHANCE COV'S

| NAME | TITLE | SUN: 13-FEB-00 | | | MON: 14-FEB-00 | | | TUE: 15-FEB-00 | | | WED: 16-FEB-00 | | | THU: 17-FEB-00 | | | FRI: 18-FEB-00 | | | SAT: 19-FEB-00 | | | REGULAR | OT 1.5 | OT 2.0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | TOTAL | TOTAL | TOTAL |
| VINH LAM | PROJECT ENGINEER | | | | | | | 3.0 | | | | | | | | | 8.0 | | | | | | 11.0 | 0.0 | 0.0 |
| GLEN LEGGOE | DQMS ENGINEER | | | | 8.0 | 4.0 | | 8.0 | 6.0 | | 8.0 | 6.0 | | 8.0 | 6.0 | | 8.0 | | | | | 12.0 | 40.0 | 22.0 | 12.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | 4.0 | | | | | | 8.0 | | | 8.0 | | | | | | | | | 20.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | | | | | | 8.0 | | | 8.0 | | | 8.0 | 2.0 | | 8.0 | | | | | | 32.0 | 2.0 | 0.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 8.0 | 0.0 | 0.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | | | | | | | | | | 8.0 | | | | | | 0.0 | 0.0 | 0.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON PERRY | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| ERIC MINO | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GARRY GRAHAM | GROUP OPS MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| STRIAGHT HOURS: | | 0.0 | | | 12.0 | | | 19.0 | | | 24.0 | | | 24.0 | | | 32.0 | | | 0.0 | | | 111.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 0.0 | | | 4.0 | | | 6.0 | | | 6.0 | | | 8.0 | | | 0.0 | | | 0.0 | | | 24.0 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 12.0 | | | 12.0 |

WEEK3

NASA N258
#620-PE-9677
IDENTIFY NASA BLN PROBLEM AND MODIFY PPCL TO ENHANCE COV'S

| NAME | TITLE | SUN: 20-FEB-00 | | | MON: 21-FEB-00 | | | TUE: 22-FEB-00 | | | WED: 23-FEB-00 | | | THU: 24-FEB-00 | | | FRI: 25-FEB-00 | | | SAT: 26-FEB-00 | | | REGULAR TOTAL | OT 1.5 TOTAL | OT 2.0 TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | | | |
| VINH LAM | PROJECT ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GLEN LEGGOE | DQMS ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON PERRY | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| ERIC MINO | SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GARRY GRAHAM | GROUP OPS MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| STRIAGHT HOURS: | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 |

(A)

**Leggoe Glen**

**From:** Bill Eismann [beismann@mail.arc.nasa.gov]
**ent:** Monday, February 14, 2000 10:36 AM
**o:** jhartmann@interstatecon.com
**Cc:** amosher@mail.arc.nasa.gov; tangney@nas.nasa.gov; vgallo@mail.arc.nasa.gov; SasakiD@exchange.us.landisstaefa.com; garry.graham@sbt.siemens.com; glen.leggoe@sbt.siemens.com; sprevost@mail.arc.nasa.gov; tmorrissey@mail.arc.nasa.gov; ajoly@mail.arc.nasa.gov
**Subject:** Contract NAS2-99039 - N258 Chiller Plant Control System Meeting

John,
Please notify your people that the location for the 9:00 a.m. Tuesday, February 15, 2000 N258 control system meeting has been changed to NASA Building N213, Conference Room 220.

NASA requests that Interstate / Siemens provide information and be prepared to discuss the following topics during the meeting in addition to any other agenda items:

1) Provide a written, detailed description of all N258 chiller plant system failures since the start of Work Phase E (00:00 Monday, January 31, 2000) to the present. List all identified and suspected causes for the failure, and the corrective action(s) taken to fix the problem.

List shall include a description of all chiller plant system problems, including unexpected chiller shutdowns like the low condenser water flow shutdown that occurred Sunday, February 6, 2000 that did not result in interruption to any of the N-258 building systems.

2) Provide a written description of all N258 chiller plant control system software changes made since the end of Work Phase "C" Bench and Field Tests.

3) Provide a written schedule with the following critical milestones:

- Written assurance by Interstate Construction and Siemens Building Technologies, Inc. that the N258 chiller plant control system is now operating reliably in accordance with the Contract Sequence of Operation in both the manual and full automatic modes.

- State how much longer Interstate Construction and Siemens Building Technologies, Inc. feels that one of the cray loop pumps and one high temp loop pumps must be operated in the "manual mode" to provide backup in the event of primary pump failure. These pumps do not have by-pass piping and they could be damaged by excessive heating if they are continuously operated in a static no-flow mode.

-Section 15900, Par 3.5 - Contractor test plan that conclusively demonstrates that the N258 chiller plant software continues to operate in accordance with the Contract Control Sequence of Operation.

Test plan shall demonstrate at a minimum, Normal Operating Mode Changes for the chillers, cooling tower fans, and pumps; Emergency Operation; Alarms, etc.

-Section 15900, Par 1.1-I - Government training agenda.

-Section 15900, Par 1.1-I - Government training dates.

Section 15900, Par 3.6 - Final acceptance test agenda.

(A)

-**Section** 15900, Par 3.6 - Final acceptance test date(s).

Thank you,
V. Eismann
NASA Project Manager

B

**Leggoe Glen**

**From:** Sasaki Dan
**ent:** Wednesday, February 16, 2000 11:29 AM
**.o:** 'jhartmann@interstatecon.com'
**Cc:** 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Miess Wesley; Graham Garry; Leggoe Glen
**Subject:** NASA 258 meeting summary

John,

Summary of items discussed at Tuesday's 15-Feb-00 meeting at NASA.

1. NASA representative directed Siemens to continue round the clock attendant.
2. Siemens to respond to correspondence, Vivienne Gallo's letter of 11-Feb-00 and Bill Eismann's Email of 14-Feb-00.
3. 15 hour shutdown of system is schedule this weekend, starting at Sunday 21-Feb-00 at 00:01.
4. NASA suggested that training could run concurrently with field testing-acceptance.
5. JCI will investigate and correct BLN trunk wiring installation by Wagle mechanical
6. Siemens will document sequence of events before and during shutdown, and additional work which has a cost impact.
7. System operational issues Siemens identified were two-fold:
   a. Program control of the chiller plant has been negatively impacted by trunk communication issues on the BLN which connects nodes added as part of this project and the existing trunk #03 on the site.
   b. Database integrity was compromised by network configuration changes (by resource unknown) made immediately prior to the 03-Feb-00 07:32 AM chiller shutdown, with resulting unstable program operation continuing through the present.
8. Siemens presented proposed solution, including:
   a. Change the controller configuration to minimize dependency on network communication for control functions. Relocate the chiller control program ("N258 Chillers") and the VFD value calculation program ("Modbus Conversions") to the Open Processor with Modbus Master Gateway, addressed as Node 50. Relocate also the majority of the proofs program ("N258 Misc proofs") to the Modbus gateway. Change virtual or unbundled points as required for the VFDs. Relocate portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51. Change virtual or unbundled points as required for the Chillers.
   b. Verify the database for the project, then implement a "reformat" or cold-start and download of Nodes 50 and 51 to eliminate all database corruption.
   c. Change the BLN trunk wiring to eliminate "T-Taps," implementing true "daisy-chain" wiring.
   d. Change the Workstation configuration for the two PCs. Reconfigure the current Node 97 (scheduled location in N258 Room 127A) to be a server on the BLN. Reconfigure the current Node 99 (scheduled location in N258 Room 227) to be a client communicating with Server Node 97, and no longer residing on the BLN.
9. NASA agreed with our proposed solution and instructed Interstate/Siemens to proceed with implementation.
10. NASA, Interstate, JCI and Siemens will meet Wednesday 16-Feb-00 at 2:00 p.m. to discuss, develop & implement action plan.

With the participation of all parties, striving for the same common goal of a successful project completion, these items could be resolved and implemented in a timely manner.

regards,

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

N258 Plan for 18 February 2000

C

Start with: 07:00 Site Coordination Meeting, immediately followed by:

1. Verify configuration of Strainer at Cooling Tower (set valves mid-way for maximum flow / minimum PD).
2. Verify configuration, alignment and manual operation of Chiller, CT Cell, CW Pumps, PCHW Pumps, LTCHW Pumps, HTCHW Pumps, Cray Loop Pumps.
3. From FMCS, remove nodes 50, 51, 97 & 99 from Trunk 3.
4. From FMCS, eliminate all traces and vestiges of nodes 50, 51, 97 & 99 in the database. Verify with point logs, point usage reports, node tables, etc.)
5. At chiller room and Control Room 227, remove trunk wire connection of nodes 97 & 99 to Trunk 3 wiring. Relocate PCs to "shop" location to begin reconfiguration as Server/Client Apogee Workstations.
6. At chiller room, disconnect trunk wire connection of nodes 50 & 51 to Trunk 3 wiring. Coldstart each panel, power down enclosure & remove battery from both open processors for minimum of 2 minutes. Apply disinfectant & pesticide.
7. Install battery in each open processor module. Power up MBC enclosure.
8. Set address of Open Processor with Carrier Gateway driver to "51", and ensure point module scan is not enabled.
9. Set address of Open Processor with Modbus Master driver to "50", and enable point module scan.
10. Establish network communication between 50 & 51. Perform diagnostics as necessary.
11. Connect laptop to 50 / 51 network and download P2 files for 50 and 51.
12. Perform diagnostics as necessary (unresolved, failed, trace, etc).
13. Command "FIALARM" to "ON" in Priority "NONE". Enable PPCL.
14. Verify Point-to-Point.
15. Verify setpoints and alarm limits.
16. Command "FIALARM" to "OFF" in Priority "NONE".
17. Manipulate "Chillers Required" and "manual" control of field equipment as needed for testing.
18. Verify sequence of operation with Field Tests and Sequence Tests.
19. Backup P2 files from 50 & 51 to laptop. Backup point definition report and PPCL text.
20. Return operation of plant to "Manual".
21. Disable PPCL in 50 & 51. From 50, ostracize 51 and ensure both nodes are "OFF-LINE".
22. Disconnect P2 network connection between 50 & 51.
23. Connect BLN wire (Trunk 3) to node 50.
24. From FMCS, add node 50 to network.
25. WAIT (300), then ensure all network nodes recognise node 50.
26. Connect BLN wire (Trunk 3) to node 51.
27. From FMCS, add node 51 to network.
28. WAIT (300), then ensure all network nodes recognise node 51.
29. Enable PPCL in 50 & 51.
30. Restore program to automatic operation.
31. Verify stable operation with defined setpoints.
32. Initiate Emergency Start Sequence A. Verify correct system response (early termination requirement likely dependent on loading of chillers).
33. Connect BLN wire (Trunk 3) to newly configured Insight Server (to be located in Room 127B, temporarily located in Chiller/Mechanical Room).
34. From FMCS, add Insight Server (Room 127B) to network.
35. At Insight Server, upload all databases, then verify network communication & graphics display.
36. At Insight Server, perform ATOMBACK to C:\Backup directory.
37. Connect MLN cable / hub between Insight Server and Insight Client (to be located in Control Room 227, temporarily located in Mechanical/Chiller Room).
38. At Insight Client, verify network communication & graphics display.
39. Observe system automatic operation to be acceptable.
40. Locate Insight Server in Room 127B. Verify network communication & graphics display.
41. Locate Insight Client in Control Room 227. Verify network communication & graphics display.
42. Observe system automatic operation to be acceptable.

**Sasaki Dan**

D

**From:** John Hartmann [jhartmann@interstatecon.com]
**Sent:** Wednesday, February 23, 2000 11:11 AM
**To:** 'Sasaki Dan'
A. C. Mosher (E-mail); Vivienne Gallo (E-mail); Wesley Miess (E-mail); Bill Eismann (E-mail); Dave Johnston (E-mail)
**Subject:** RE: 24 hour watch

Dan,

Please provide a letter ( attached it to an E mail and CC all parties ) stating items outlined by NASA ( as per meeting February 15,200 ) have been accomplished and also required training for Johnson Control personnel will be completed today. This letter must be generated by Wesley Miess, according to AC. AC is in agreement that Siemens is in compliance, however, documentation is required. Finial acceptance will come from Ms. Gallo with some input from Bill Eismann. In order for Siemens to pull out today, expedient response is required. The letter generated by Siemens should also include a request to end 24 hour watch and notice for "beneficial occupancy".

John Hartmann
Interstate Construction, Inc.

-----Original Message-----
From: Sasaki Dan [mailto:dan.sasaki@sbt.siemens.com]
Sent: Wednesday, February 23, 2000 10:14 AM
To: 'jhartmann@interstatecon.com'
Cc: 'amosher@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Graham Garry; Miess Wesley; Leggoe Glen; Lam Vinh-Hoa; Jozsa Timothy; Walden Daniel; k Brian; Daters Jason
Subject: N258, response to V. Gallo's 2-11-00 correspondence

John,

In response to Vivienne Gallo of NASA correspondence dated 11-Feb-00, three items of concerns were as follow:

1. The reliability of the system has not been proven;
On 22-Feb-00, NASA representatives and Siemens personnel successfully completed Verification and Testing plan that was submitted on 18-Feb-00.
2. Test plan to prove the reliability has not been completed and submitted;
On 18-Feb-00, Siemens submitted Verification and Testing to Interstate Construction, with cc to AC Mosher and Bill Eismann of NASA.
3. Tests have not been completed;
On 22-Feb-00, NASA representatives and Siemens personnel successfully completed Verification and Testing plan that was submitted on 18-Feb-00.

Automatic control of the chiller plant was in-place and operational until an incident on Thursday morning 03-Feb-00. Siemens has extensively investigated the incident; evaluating application code, system activity logs and trend data, our findings were:

- Program control of the chiller plant has been negatively impacted by ampus wide trunk communication issues on the BLN at N258, which connects nodes added as part of this project, to the existing BLN trunk #03 on the site
  a. Thursday 17-Feb-00, JCI eliminate existing BLN trunk 3 tee taps and re-wire trunk to a true daisy chain configuration.

- Database integrity was compro[illegible]sed by network configuration changes made by personnel other than Siem[illegible] [illegible]mediately prior to the 03-Feb-00 07:32 AM chiller shutdown, with re[illegible]ng unstable program operation. NASA representatives have implemented network, system and application changes to the Siemens installed "Validated Bench Test Software", without written notification and prior to completing the three items described above.

b. Siemens contends that this action by the NASA [illegible]entatives constitutes as an "Acceptance of the system, Beneficial Occupancy", effective as of 07:30 on February 3, 2000.

b.1. Siemens is continuing the round the clock watch of chiller system and cost is being incurred.

- Proposed solutions on 15-Feb-00, NASA agreed with our proposed solution and instructed Interstate & Siemens to proceed with implementation, the following was implemented on Friday 18-Feb-00

→ c. Change the controller configuration to minimize dependency on network communication for control functions. Relocate the chiller control program ("N258 Chillers") and the VFD value calculation program ("Modbus Conversions") to the Open processor with Modbus Master Gateway, addressed as Node 50. Relocate also the majority of the proofs program ("N258 Misc. proofs") to the Modbus gateway. Change virtual or unbundled points as required for the VFDs. Relocate portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51. Change virtual or unbundled points as required for the Chillers.

→ d. Verify the database for the project, then implement a cold-start and download of Nodes 50 and 51 to eliminate all database corruption.

→ e. Change the Workstation configuration for the two PCs. Reconfigure the current Node 98 (scheduled location in N258 Room 27A) to be a server on the BLN. Reconfigure the current Node 99 (scheduled location in N258 Room 227) to be a client communicating with Server Node 98, and no longer residing on the BLN.

→ f. Modify applicable Volume #2 Field Test documents for verifying points and automatic system operations.

Ple[illegible] contact us if you have any comments or concerns.

[illegible]ncerely,

R. Dan Sasaki
Project Manager

[illegible] Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
SIEMENS Building Technologies, Inc.

4

**SIEMENS**

June 26, 2000

Interstate Construction
3909 Security Park Drive
Rancho Cordova, CA 95742
Attn: Mr. John Hartmann

Cc: Glen Zwang – Bartko Zankel Tarant & Miller
Wes Miess, Garry Graham, Jason Daters, Glen Leggoe - Siemens
Job File #620-PE-9677

Project: **NASA N258 Process Cooling System {NA2-99039}**

Subject: **Siemens Claim #4, Network Card Configuration and Delays**

John,

Claim #4 for financial compensation, for the amount of **$9,467.80**. See attach spreadsheet for cost break down. Claim is based on, but not limited to items stated below, which are just a brief description of events that caused the additional burden.

- Wednesday February 16, 2000 my Email response to you addressing items discussed, agreement to implement proposed solutions. {See attach "A"}
- N258 Plan for Friday February 18, 2000, to implement purposed solutions. {See attach "B"}
- Sunday February 20, 2000 my Email to you addressing unexpected delays due to defect in NASA supplied network card. Also mentioned was NT server software at that time was to be provided by NASA. At a later date, NASA/FMCS requested Siemens to furnish NT software because FMCS could not find their original license diskette. {See attach "C"}
- Friday February 18, 2000 report from Glen Leggoe of Siemens, stating events of defective network card in the Server computer. {See attach "D"}
- Tuesday February 22, 2000 my Email to you addressing when will replacement network card be available to complete this portion of work. {See attach "E"}
- Wednesday February 23, 2000 my Email to you addressing that item is complete and accepted by FMCS. {See attach "F"}

We would appreciate a response from Vivienne Gallo of NASA within 60 days, as stated in our Thursday June 8, 2000 meeting.

Siemens is pleased with the results of the automatic operation of this complex chiller system and working with Interstate Construction on this project as well. We look forward to another opportunity in the future.

Regards,

R. Dan Sasaki

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**
Landis Division
2525 Barrington Court
Hayward, CA 94545

510-783-6000 Off.
510-293-2100 Fax

NASA N258
#620-PE-9677
NETWORK CARD CONFIGURATION AND DELAY

| NAME | TITLE | TOTALS REGULAR TOTAL | OT 1.5 TOTAL | OT 2.0 TOTAL | | | |
|---|---|---|---|---|---|---|---|
| VINH LAM | PROJECT ENGINEER | 0.0 | **8.0** | 0.0 | | | |
| GLEN LEGGOE | DQMS ENGINEER | 0.0 | **8.0** | 0.0 | | | |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| DAN WALDEN | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| BRIAN BULLOCK | SYSTEM SPECIALIST | 0.0 | **8.0** | 0.0 | | | |
| TIM JOZSA | SR. SYSTEM ENGINEER | 0.0 | **8.0** | 0.0 | | | |
| JEFF SIM | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| JASON MURRAY | ENGINEERING SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| PATRICK HAYES | SERVICE SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| NATHAN SANTORA | SERVICE SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| LARRY DALEY | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| PHIL CARSWELL | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| JASON PERRY | ENGINEER SPECIALIST | **7.0** | 0.0 | 0.0 | | | |
| ERIC MINO | ENGINEER SPECIALIST | **14.0** | **3.0** | 0.0 | | | |
| GARRY GRAHAM | GROUP OPS MANAGER | **0.0** | 0.0 | 0.0 | | | |
| DAN SASAKI | PROJECT MANAGER | **0.0** | **0.0** | 0.0 | | | |
| | | | | | RATE: | | TOTAL: |
| STRIAGHT HOURS: | | 21.0 | | | $96.00 | | $2,016.00 |
| OVERTIME HOURS @ TIME AND A HALF | | | 35.0 | | $144.00 | | $5,040.00 |
| OVERTIME HOURS @ DOUBLE TIME | | | | 0.0 | $192.00 | | $0.00 |
| SUBTOTAL | | | | | | | $7,056.00 |
| **OVERHEAD 10%** | | | $7,056.00 | + | $705.60 | = | $7,761.60 |
| **PROFIT 10%** | | | $7,761.60 | + | $776.16 | = | $8,537.76 |
| MATERIAL: | WINDOWS NT SERVER | 650.00 | | | | | |
| | TAX 8.25% | 53.63 | | | | | |
| | FREIGHT 6.0% | 39.00 | | | | | |
| | WARRANTY 4.0% | 26.00 | | | | | |
| | SUBTOTAL: | 768.63 | | | | | |
| | OVERHEAD 10.0% | 76.86 | | | | | |
| | PROFIT 10.0% | 84.55 | | | | | |
| **TOTAL MATERIAL COST:** | | | | | | | **$930.04** |
| | | | | | | | |
| **TOTAL AMOUNT OF CHANGE ORDER** | | | | | | | **$9,467.80** |

SUMMARY

NASA N258
#620-PE-9677
NETWORK CARD CONFIGURATION AND DELAY

| NAME | TITLE | FRI: 18-FEB-00 | | | | | | MON: 28-FEB-00 | | | | | | | | | | | | | | | REGULAR | OT 1.5 | OT 2.0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | OT | OT | | | | | OT | OT | | | | | | | | | | | | | | | |
| | | ST | 1.5 | DBL | | | | ST | 1.5 | DBL | | | | | | | | | | | | | TOTAL | TOTAL | TOTAL |
| VINH LAM | PROJECT ENGINEER | | 8.0 | | | | | | | | | | | | | | | | | | | | 0.0 | 8.0 | 0.0 |
| GLEN LEGGOE | DQMS ENGINEER | | 8.0 | | | | | | | | | | | | | | | | | | | | 0.0 | 8.0 | 0.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | 8.0 | | | | | | | | | | | | | | | | | | | | 0.0 | 8.0 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | 8.0 | | | | | | | | | | | | | | | | | | | | 0.0 | 8.0 | 0.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON PERRY | ENGINEER SPECIALIST | 7.0 | | | | | | | | | | | | | | | | | | | | | 7.0 | 0.0 | 0.0 |
| ERIC MINO | ENGINEER SPECIALIST | 8.0 | 3.0 | | | | | 6.0 | | | | | | | | | | | | | | | 14.0 | 3.0 | 0.0 |
| GARRY GRAHAM | GROUP OPS MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| STRIAGHT HOURS: | | 15.0 | | | 0.0 | | | 6.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 21.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 35.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 35.0 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 |

A

**Leggoe Glen**

**From:** Sasaki Dan
**ent:** Wednesday, February 16, 2000 11:29 AM
**.o:** 'jhartmann@interstatecon.com'
**Cc:** 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Miess Wesley; Graham Garry; Leggoe Glen
**Subject:** NASA 258 meeting summary

John,

Summary of items discussed at Tuesday's 15-Feb-00 meeting at NASA.

1. NASA representative directed Siemens to continue round the clock attendant.
2. Siemens to respond to correspondence, Vivienne Gallo's letter of 11-Feb-00 and Bill Eismann's Email of 14-Feb-00.
3. 15 hour shutdown of system is schedule this weekend, starting at Sunday 21-Feb-00 at 00:01.
4. NASA suggested that training could run concurrently with field testing-acceptance.
5. JCI will investigate and correct BLN trunk wiring installation by Wagle mechanical
6. Siemens will document sequence of events before and during shutdown, and additional work which has a cost impact.
7. System operational issues Siemens identified were two-fold:
   a. Program control of the chiller plant has been negatively impacted by trunk communication issues on the BLN which connects nodes added as part of this project and the existing trunk #03 on the site.
   b. Database integrity was compromised by network configuration changes (by resource unknown) made immediately prior to the 03-Feb-00 07:32 AM chiller shutdown, with resulting unstable program operation continuing through the present.
8. Siemens presented proposed solution, including:
   a. Change the controller configuration to minimize dependency on network communication for control functions. Relocate the chiller control program ("N258 Chillers") and the VFD value calculation program ("Modbus Conversions") to the Open Processor with Modbus Master Gateway, addressed as Node 50. Relocate also the majority of the proofs program ("N258 Misc proofs") to the Modbus gateway. Change virtual or unbundled points as required for the VFDs. Relocate portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51. Change virtual or unbundled points as required for the Chillers.
   b. Verify the database for the project, then implement a "reformat" or cold-start and download of Nodes 50 and 51 to eliminate all database corruption.
   c. Change the BLN trunk wiring to eliminate "T-Taps," implementing true "daisy-chain" wiring.
   d. Change the Workstation configuration for the two PCs. Reconfigure the current Node 97 (scheduled location in N258 Room 127A) to be a server on the BLN. Reconfigure the current Node 99 (scheduled location in N258 Room 227) to be a client communicating with Server Node 97, and no longer residing on the BLN.
9. NASA agreed with our proposed solution and instructed Interstate/Siemens to proceed with implementation.
10. NASA, Interstate, JCI and Siemens will meet Wednesday 16-Feb-00 at 2:00 p.m. to discuss, develop & implement action plan.

With the participation of all parties, striving for the same common goal of a successful project completion, these items could be resolved and implemented in a timely manner.

regards,

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

N258 Plan for 18 February 2000

(B)

Start with: 07:00 Site Coordination Meeting, immediately followed by:

1. Verify configuration of Strainer at Cooling Tower (set valves mid-way for maximum flow / minimum PD).
2. Verify configuration, alignment and manual operation of Chiller, CT Cell, CW Pumps, PCHW Pumps, LTCHW Pumps, HTCHW Pumps, Cray Loop Pumps.
3. From FMCS, remove nodes 50, 51, 97 & 99 from Trunk 3.
4. From FMCS, eliminate all traces and vestiges of nodes 50, 51, 97 & 99 in the database. Verify with point logs, point usage reports, node tables, etc.)
5. At chiller room and Control Room 227, remove trunk wire connection of nodes 97 & 99 to Trunk 3 wiring. Relocate PCs to "shop" location to begin reconfiguration as Server/Client Apogee Workstations.
6. At chiller room, disconnect trunk wire connection of nodes 50 & 51 to Trunk 3 wiring. Coldstart each panel, power down enclosure & remove battery from both open processors for minimum of 2 minutes. Apply disinfectant & pesticide.
7. Install battery in each open processor module. Power up MBC enclosure.
8. Set address of Open Processor with Carrier Gateway driver to "51", and ensure point module scan is not enabled.
9. Set address of Open Processor with Modbus Master driver to "50", and enable point module scan.
10. Establish network communication between 50 & 51. Perform diagnostics as necessary.
11. Connect laptop to 50 / 51 network and download P2 files for 50 and 51.
12. Perform diagnostics as necessary (unresolved, failed, trace, etc).
13. Command "FIALARM" to "ON" in Priority "NONE". Enable PPCL.
14. Verify Point-to-Point.
15. Verify setpoints and alarm limits.
16. Command "FIALARM" to "OFF" in Priority "NONE".
17. Manipulate "Chillers Required" and "manual" control of field equipment as needed for testing.
18. Verify sequence of operation with Field Tests and Sequence Tests.
19. Backup P2 files from 50 & 51 to laptop. Backup point definition report and PPCL text.
20. Return operation of plant to "Manual".
21. Disable PPCL in 50 & 51. From 50, ostracize 51 and ensure both nodes are "OFF-LINE".
22. Disconnect P2 network connection between 50 & 51.
23. Connect BLN wire (Trunk 3) to node 50.
24. From FMCS, add node 50 to network.
25. WAIT (300), then ensure all network nodes recognise node 50.
26. Connect BLN wire (Trunk 3) to node 51.
27. From FMCS, add node 51 to network.
28. WAIT (300), then ensure all network nodes recognise node 51.
29. Enable PPCL in 50 & 51.
30. Restore program to automatic operation.
31. Verify stable operation with defined setpoints.
32. Initiate Emergency Start Sequence A. Verify correct system response (early termination requirement likely dependent on loading of chillers).
33. Connect BLN wire (Trunk 3) to newly configured Insight Server (to be located in Room 127B, temporarily located in Chiller/Mechanical Room).
34. → From FMCS, add Insight Server (Room 127B) to network.
35. → At Insight Server, upload all databases, then verify network communication & graphics display.
36. → At Insight Server, perform ATOMBACK to C:\Backup directory.
37. → Connect MLN cable / hub between Insight Server and Insight Client (to be located in Control Room 227, temporarily located in Mechanical/Chiller Room).
38. → At Insight Client, verify network communication & graphics display.
39. → Observe system automatic operation to be acceptable.
40. → Locate Insight Server in Room 127B. Verify network communication & graphics display.
41. → Locate Insight Client in Control Room 227. Verify network communication & graphics display.
42. Observe system automatic operation to be acceptable.

C

**Leggoe Glen**

**From:** Sasaki Dan
**ınt:** Sunday, February 20, 2000 11:39 AM
**. o:** 'jhartmann@interstatecon.com'
**Cc:** 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Graham Garry; Leggoe Glen; Jozsa Timothy; Lam Vinh-Hoa; Daters Jason; Miess Wesley
**Subject:** RE: NASA 258 Training

John,

On Friday 18-Feb-00, there was a unexpected project delay trying to load newly purchased NT Server software onto NASA supplied computer. This caused training delay for device location & system operations, extended overtime labor once NT server software was successfully loaded onto computer, getting chiller system back to semi-automatic mode. NASA & JCI are aware of hardware problem that was identified that late afternoon, bad network card and replacement card will be purchased by JCI.

Siemens personnel for change request are as follow, please issue separate EC number for the amount of **$6,528.00**.
1. Dan Sasaki, 8 hrs. @ OT rate of $144.00/hr. = $1,152.00
2. Glen Leggoe, 8 hrs. @ OT rate of $144.00/hr. = $1,152.00
3. Vinh Lam, 8 hrs. @ OT rate of $144.00/hr. = $1,152.00
4. Tim Jozsa, 8 hrs. @ OT rate of $144.00/hr. = $1,152.00
5. Brian Bullock, 8 hrs. @ OT rate of $144.00/hr. = $1,152.00
6. Eric Mino, 4 hrs. @ regular rate of $96.00/hr. = $ 384.00
7. Jason Perry, 4 hrs. @ regular rate of $96.00/hr. = $ 384.00

Note that this quote does not include the purchase of NT server software, this will be processed under a different EC number.

you have any question or concerns, please contact me.

Regards,

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

-----Original Message-----
**From:** Sasaki Dan
**Sent:** Friday, February 18, 2000 10:52 AM
**To:** 'jhartmann@interstatecon.com'
**Cc:** 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Graham Garry; Leggoe Glen; Jozsa Timothy; Miess Wesley
**Subject:** NASA 258 Training

John,

As we are currently enhancing system operations today. Tentative date for training are as follow:

Friday 18-Feb-00 & Sunday 20-Feb-00: 4 hours of equipment/device location and system operation and 4 hours of system operation at Host {FMCS at 510}
Note: During site meetings, it was acceptable to sign these two training periods off while performing checkout/testing with NASA, JCI, ICI and Siemens personnel.

Tuesday 22-Feb-00: 8 hours of training at N258 new Insight PC station.

Can you find out who will be attending? Knowledge & skill set level of personnel? Information needed so that we can structure training class accordingly.

Thanks.

C

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

D

SIEMENS

Project Memo NASA N258

**Date** February 18, 2000

**To:** Dan Sasaki

**From:** Glen Leggoe

**Cc:** Eric Mino
Jason Perry

**Subject:** Insight PC Component Defect

***REMARKS:*** ☐ *Urgent* ☒ *For your information* ☐ *Reply ASAP* ☐ *Please Comment*

Configuration and startup of the two Insight PCs was delayed today as a result of a defective network card in the "Server" computer. After reloading drivers and testing and other diagnostic efforts consumed time of both Eric and Jason, the card from the "Client" machine was installed in the server, with immediate success. Unfortunately, the component failure and time lost resulted inability to configure and startup the client computer and complete its configuration on the MLN to the server.

The defective card is identified as:
Kingston KNE 100TX
10/100 Mbps
Assy#9920292-001B00
Barcode *984300011491 6PK
Barcode 00C0F03B8AA7

(E)

**Leggoe Glen**

| | |
|---|---|
| **From:** | Sasaki Dan |
| **Sent:** | Tuesday, February 22, 2000 11:26 AM |
| **To:** | 'jhartmann@interstatecon.com' |
| **Cc:** | 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Graham Garry; Leggoe Glen; Lam Vinh-Hoa; Miess Wesley; Mino Eric; Perry Jason |
| **Subject:** | N258 Network card |

John,

Last Friday 18-Feb-00, Siemens had extensive labor delays due to NASA supplied computer having a bad network card. In order to get related systems back on-line, network card from NASA supplied computer at 258 room 227 was removed and installed into NASA supplied computer that's temporarily located in chiller room.

When will replacement network card be available and installed into computer at 258 room 227? This is required to complete reconfiguration of computer software setup.

Please advise so that additional labor can be scheduled.

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

(F)

**Sasaki Dan**

| | |
|---|---|
| **From:** | John Hartmann [jhartmann@interstatecon.com] |
| **Sent:** | Wednesday, February 23, 2000 11:11 AM |
| **To:** | 'Sasaki Dan' |
| **Cc:** | A. C. Mosher (E-mail); Vivienne Gallo (E-mail); Wesley Miess (E-mail); Bill Eismann (E-mail); Dave Johnston (E-mail) |
| **Subject:** | RE: 24 hour watch |

Dan,

Please provide a letter ( attached it to an E mail and CC all parties ) stating items outlined by NASA ( as per meeting February 15,200 ) have been accomplished and also required training for Johnson Control personnel will be completed today. This letter must be generated by Wesley Miess, according to AC. AC is in agreement that Siemens is in compliance, however, documentation is required. Finial acceptance will come from Ms. Gallo with some input from Bill Eismann. In order for Siemens to pull out today, expedient response is required. The letter generated by Siemens should also include a request to end 24 hour watch and notice for "beneficial occupancy".

John Hartmann
Interstate Construction, Inc.

-----Original Message-----
From: Sasaki Dan [mailto:dan.sasaki@sbt.siemens.com]
Sent: Wednesday, February 23, 2000 10:14 AM
To: 'jhartmann@interstatecon.com'
Cc: 'amosher@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Graham Garry; Miess Wesley; Leggoe Glen; Lam Vinh-Hoa; Jozsa Timothy; Walden Daniel; k Brian; Daters Jason
Subject: N258, response to V. Gallo's 2-11-00 correspondence

John,

In response to Vivienne Gallo of NASA correspondence dated 11-Feb-00, three items of concerns were as follow:

1. The reliability of the system has not been proven;
   On 22-Feb-00, NASA representatives and Siemens personnel successfully completed Verification and Testing plan that was submitted on 18-Feb-00.
2. Test plan to prove the reliability has not been completed and submitted;
   On 18-Feb-00, Siemens submitted Verification and Testing to Interstate Construction, with cc to AC Mosher and Bill Eismann of NASA.
3. Tests have not been completed;
   On 22-Feb-00, NASA representatives and Siemens personnel successfully completed Verification and Testing plan that was submitted on 18-Feb-00.

Automatic control of the chiller plant was in-place and operational until an incident on Thursday morning 03-Feb-00. Siemens has extensively investigated the incident; evaluating application code, system activity logs and trend data, our findings were:

- Program control of the chiller plant has been negatively impacted by ampus wide trunk communication issues on the BLN at N258, which connects nodes added as part of this project, to the existing BLN trunk #03 on the ci
  a. Thursday 17-Feb-00, JCI eliminate existing BLN trunk #3 tee taps and re-wire trunk to a true daisy chain configuration.

(F)

- Database integrity was comp... ed by network configuration changes made by personnel other than Siem... , immediately prior to the 03-Feb-00 07:32 AM chiller shutdown, with resulting unstable program operation. NASA representatives have implemented network, system and application changes to the Siemens installed "Validated Bench Test Software", without written notification and prior to completing the three items described above.

b. Siemens contends that this action by the NASA ...sentatives constitutes as an "Acceptance of the system, Beneficial Occupancy", effective as of 07:30 on February 3, 2000.

b.1. Siemens is continuing the round the clock watch of chiller system and cost is being incurred.

- Proposed solutions on 15-Feb-00, NASA agreed with our proposed solution and instructed Interstate & Siemens to proceed with implementation, the following was implemented on Friday 18-Feb-00

c. Change the controller configuration to minimize dependency on network communication for control functions. Relocate the chiller control program ("N258 Chillers") and the VFD value calculation program ("Modbus Conversions") to the Open processor with Modbus Master Gateway, addressed as Node 50. Relocate also the majority of the proofs program ("N258 Misc. proofs") to the Modbus gateway. Change virtual or unbundled points as required for the VFDs. Relocate portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51. Change virtual or unbundled points as required for the Chillers.

d. Verify the database for the project, then implement a cold-start and download of Nodes 50 and 51 to eliminate all database corruption.

e. Change the Workstation configuration for the two PCs. Reconfigure the current Node 98 (scheduled location in N258 Room 227A) to be a server on the BLN. Reconfigure the current Node 99 (scheduled location in N258 Room 227) to be a client communicating with Server Node 98, and no longer residing on the BLN.

f. Modify applicable Volume #2 Field Test documents for verifying points and automatic system operations.

... contact us if you have any comments or concerns.

Sincerely,

R. Dan Sasaki
Project Manager

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
SIEMENS Building Technologies, Inc.

SIEMENS

June 26, 2000

Interstate Construction
3909 Security Park Drive
Rancho Cordova, CA 95742
Attn: Mr. John Hartmann

Cc: Glen Zwang – Bartko Zankel Tarant & Miller
Wes Miess, Garry Graham, Jason Daters, Glen Leggoe - Siemens
Job File #620-PE-9677

Project: **NASA N258 Process Cooling System {NA2-99039}**

Subject: **Siemens Claim #5, 15-hour Chiller Shutdown**

John,

Claim #5 for financial compensation, for the amount of **$5,111.04**. See attach spreadsheet for cost break down. Claim is based on, but not limited to items stated below, which are just a brief description of events that caused the additional burden.

- Wednesday February 16, 2000 my Email response to you addressing items discussed at Tuesday February 15, 2000 meeting at NASA. An additional 15-hour Chiller shutdown was scheduled for Saturday February 19, 2000 starting at 00:01. {See attach "A"}
- Thursday February 17, 2000 Inter-office Email discussing personnel that need to be present at Friday February 18, 2000 coordination meeting at 07:00, at job site trailer. {See attach "B"}

We would appreciate a response from Vivienne Gallo of NASA within 60 days, as stated in our Thursday June 8, 2000 meeting.

Siemens is pleased with the results of the automatic operation of this complex chiller system and working with Interstate Construction on this project as well. We look forward to another opportunity in the future.

Regards,

R. Dan Sasaki

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**
Landis Division
2525 Barrington Court
Hayward, CA 94545

510-783-6000 Off.
510-293-2100 Fax

NASA N258
#620-PE-9677
15 HOUR SCHEDULED CHILLER SHUT DOWN

| NAME | TITLE | TOTALS REGULAR TOTAL | OT 1.5 TOTAL | OT 2.0 TOTAL | | | |
|---|---|---|---|---|---|---|---|
| VINH LAM | PROJECT ENGINEER | 0.0 | 0.0 | **11.0** | | | |
| GLEN LEGGOE | DQMS ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| DAN WALDEN | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| BRIAN BULLOCK | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| TIM JOZSA | SR. SYSTEM ENGINEER | 0.0 | 0.0 | **11.0** | | | |
| JEFF SIM | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| JASON MURRAY | ENGINEERING SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| PATRICK HAYES | SERVICE SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| NATHAN SANTORA | SERVICE SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| LARRY DALEY | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| PHIL CARSWELL | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| JASON PERRY | ENGINEER SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| ERIC MINO | ENGINEER SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| GARRY GRAHAM | GROUP OPS MANAGER | 0.0 | 0.0 | **0.0** | | | |
| DAN SASAKI | PROJECT MANAGER | 0.0 | 0.0 | **0.0** | | | |
| | | | | | RATE: | | TOTAL: |
| STRIAGHT HOURS: | | 0.0 | | | $96.00 | | $0.00 |
| OVERTIME HOURS @ TIME AND A HALF | | | 0.0 | | $144.00 | | $0.00 |
| OVERTIME HOURS @ DOUBLE TIME | | | | 22.0 | $192.00 | | $4,224.00 |
| SUBTOTAL | | | | | | | $4,224.00 |
| **OVERHEAD 10%** | | | $4,224.00 | + | $422.40 | = | $4,646.40 |
| **PROFIT 10%** | | | $4,646.40 | + | $464.64 | = | $5,111.04 |
| | | | | | | | |
| | | | | | | | |
| | TOTAL LABOR DAYS | | | | | | |
| VEHICLE COST | 3 | AT $30/DAY | | | | | NA |
| | | | | | | | |
| **TOTAL AMOUNT OF CHANGE ORDER** | | | | | | | **$5,111.04** |

SUMMARY

NASA N258
#620-PE-9677
15 HOUR SCHEDULED CHILLER SHUT DOWN

| NAME | TITLE | SUN: 20-FEB-00 | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | ST | OT 1.5 | OT DBL | REGULAR TOTAL | OT 1.5 TOTAL | OT 2.0 TOTAL |
| VINH LAM | PROJECT ENGINEER | | | 11.0 | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 11.0 |
| GLEN LEGGOE | DQMS ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | | 11.0 | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 11.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON PERRY | ENGINEER SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| ERIC MINO | ENGINEER SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GARRY GRAHAM | GROUP OPS MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| STRIAGHT HOURS: | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 22.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 22.0 |

LABOR

A

**Leggoe Glen**

**From:** Sasaki Dan
**Sent:** Wednesday, February 16, 2000 11:29 AM
**To:** 'jhartmann@interstatecon.com'
**Cc:** 'amosher@mail.arc.nasa.gov'; 'beismar..n@mail.arc.nasa.gov'; 'vgallo@mail.arc.nasa.gov'; 'sprevost@mail.arc.nasa.gov'; Miess Wesley; Graham Garry; Leggoe Glen
**Subject:** NASA 258 meeting summary

John,

Summary of items discussed at Tuesday's 15-Feb-00 meeting at NASA.

1. NASA representative directed Siemens to continue round the clock attendant.
2. Siemens to respond to correspondence, Vivienne Gallo's letter of 11-Feb-00 and Bill Eismann's Email of 14-Feb-00.
3. 15 hour shutdown of system is schedule this weekend, starting at Sunday 21-Feb-00 at 00:01.
4. NASA suggested that training could run concurrently with field testing-acceptance.
5. JCI will investigate and correct BLN trunk wiring installation by Wagle mechanical
6. Siemens will document sequence of events before and during shutdown, and additional work which has a cost impact.
7. System operational issues Siemens identified were two-fold:
   a. Program control of the chiller plant has been negatively impacted by trunk communication issues on the BLN which connects nodes added as part of this project and the existing trunk #03 on the site.
   b. Database integrity was compromised by network configuration changes (by resource unknown) made immediately prior to the 03-Feb-00 07:32 AM chiller shutdown, with resulting unstable program operation continuing through the present.
8. Siemens presented proposed solution, including:
   a. Change the controller configuration to minimize dependency on network communication for control functions. Relocate the chiller control program ("N258 Chillers") and the VFD value calculation program ("Modbus Conversions") to the Open Processor with Modbus Master Gateway, addressed as Node 50. Relocate also the majority of the proofs program ("N258 Misc proofs") to the Modbus gateway. Change virtual or unbundled points as required for the VFDs. Relocate portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51. Change virtual or unbundled points as required for the Chillers.
   b. Verify the database for the project, then implement a "reformat" or cold-start and download of Nodes 50 and 51 to eliminate all database corruption.
   c. Change the BLN trunk wiring to eliminate "T-Taps," implementing true "daisy-chain" wiring.
   d. Change the Workstation configuration for the two PCs. Reconfigure the current Node 97 (scheduled location in N258 Room 127A) to be a server on the BLN. Reconfigure the current Node 99 (scheduled location in N258 Room 227) to be a client communicating with Server Node 97, and no longer residing on the BLN.
9. NASA agreed with our proposed solution and instructed Interstate/Siemens to proceed with implementation.
10. NASA, Interstate, JCI and Siemens will meet Wednesday 16-Feb-00 at 2:00 p.m. to discuss, develop & implement action plan.

With the participation of all parties, striving for the same common goal of a successful project completion, these items could be resolved and implemented in a timely manner.

regards,

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

**Leggoe Glen**

| | |
|---|---|
| **From:** | Sasaki Dan |
| **Sent:** | Thursday, February 17, 2000 1:31 PM |
| **To:** | Walden Daniel; Bullock Brian; Jozsa Timothy; Sim Jeff; Murray Jason; Carswell Phillip; Lam Vinh-Hoa; Leggoe Glen |
| **Cc:** | Graham Garry; Miess Wesley |
| **Subject:** | NASA 258 |

All,

Review attach revised watch schedule for your assignments:

24 hr watch sched.xls

IMPORTANT! When you are on watch, keep your time outside the chiller room to a minimum, since there's no way to tell from our trailer if chiller, pumps or equipment are malfunctioning.

Also, this coming Saturday, 12 midnight, chiller plant will in a 15 hour shutdown. Target for Chiller plant to be back on-line is Sunday afternoon at 3 p.m..

Glen L., Tim J., Vinh L.,
Tomorrow, Friday at 6:30 am, meet at site trailer. There will be a 7 am kickoff meeting with NASA, ICI, JCI to discuss game plan and responsibilities. Need you there on Sunday 12 noon for prep work and getting Chiller plant back on-line at 3 pm, re-test emergency start sequence 1 with NASA reps. {i.e.. AC, Mark, Bill?}

Brian B. please be at job site tomorrow, Friday no later than 9:30 am with laptop computer for downloading modified P2 files.

Thanks to all,

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

**Sasaki Dan**

**From:** Sasaki Dan
**Sent:** Wednesday, June 14, 2000 5:01 PM
'JHARTMANN@interstatecon.com'
Graham Garry; Daters Jason; Miess Wesley; Leggoe Glen
**Subject:** NASA N258 PC #16

John,

Attach is revised formal quotation request for NASA PC #16, for enchanced alarming. Please note that management labor and vehicle cost have been deleted but 10% overhead and 10% profit was added in per section H.6 of volume one.

6-Enhanced Alarming change and...

Please forward to NASA for approval process and if there are any questions, contact me.

Regards,

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**SIEMENS Building Technologies, Inc.**

NASA N258
#620-PE-9677
ENHANCED ALARMING

| NAME | TITLE | TOTALS<br>REGULAR<br>TOTAL | <br>OT 1.5<br>TOTAL | <br>OT 2.0<br>TOTAL | | | |
|---|---|---|---|---|---|---|---|
| VINH LAM | PROJECT ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| GLEN LEGGOE | DQMS ENGINEER | **8.0** | **9.0** | **9.0** | | | |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| DAN WALDEN | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| BRIAN BULLOCK | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| TIM JOZSA | SR. SYSTEM ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| JEFF SIM | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| JASON MURRAY | ENGINEERING SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| PATRICK HAYES | SERVICE SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| NATHAN SANTORA | SERVICE SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| LARRY DALEY | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| PHIL CARSWELL | SYSTEM SPECIALIST | 0.0 | 0.0 | 0.0 | | | |
| MATT TUDOR | SUPPORT ENGINEER | 0.0 | 0.0 | 0.0 | | | |
| GARRY GRAHAM | GROUP MANAGER | **0.0** | **0.0** | **0.0** | | | |
| DAN SASAKI | PROJECT MANAGER | **0.0** | **0.0** | **0.0** | | | |
| | | | | | RATE: | | TOTAL: |
| STRIAGHT HOURS: | | 8.0 | | | $96.00 | | $768.00 |
| OVERTIME HOURS @ TIME AND A HALF | | | 9.0 | | $144.00 | | $1,296.00 |
| OVERTIME HOURS @ DOUBLE TIME | | | | 9.0 | $192.00 | | $1,728.00 |
| SUBTOTAL | | | | | | | $3,792.00 |
| **OVERHEAD 10%** | | | $3,792.00 | + | $379.20 | = | $4,171.20 |
| **PROFIT 10%** | | | $4,171.20 | + | $417.12 | = | $4,588.32 |
| | | | | | | | |
| | TOTAL LABOR DAYS | | | | | | |
| VEHICLE COST | 3.25 | AT $30/DAY | | | | | NA |
| | | | | | | | |
| **TOTAL AMOUNT OF CHANGE ORDER** | | | | | | | **$4,588.32** |

SUMMARY

NASA N258
#620-PE-9677
ENHANCED ALARMING

| NAME | TITLE | SAT: 19-FEB-00 | | | SUN: 20-JAN-00 | | | MON: 21-FEB-00 | | | | | | TUE: 29-FEB-00 | | | | | | | | | REGULAR | OT 1.5 | OT 2.0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | OT | OT | | | |
| | | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | ST | 1.5 | DBL | TOTAL | TOTAL | TOTAL |
| VINH LAM | PROJECT ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GLEN LEGGOE | DQMS ENGINEER | | 9.0 | | | | 9.0 | 4.0 | | | | | | 4.0 | | | | | | | | | 8.0 | 9.0 | 9.0 |
| BRIAN ESSER | SR. SOFTWARE ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN WALDEN | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| BRIAN BULLOCK | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| TIM JOZSA | SR. SYSTEM ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JEFF SIM | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| JASON MURRAY | ENGINEERING SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PATRICK HAYES | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| NATHAN SANTORA | SERVICE SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| LARRY DALEY | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| PHIL CARSWELL | SYSTEM SPECIALIST | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| MATT TUDOR | SUPPORT ENGINEER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| GARRY GRAHAM | GROUP MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| DAN SASAKI | PROJECT MANAGER | | | | | | | | | | | | | | | | | | | | | | 0.0 | 0.0 | 0.0 |
| | | | | | | | | | | | | | | | | | | | | | | | | | |
| STRIAGHT HOURS: | | 0.0 | | | 0.0 | | | 4.0 | | | 0.0 | | | 4.0 | | | 0.0 | | | 0.0 | | | 8.0 | | |
| OVERTIME HOURS @ TIME AND A HALF | | | 9.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 9.0 | |
| OVERTIME HOURS @ DOUBLE TIME | | | | 0.0 | | | 9.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 0.0 | | | 9.0 |

# FAX COVER LETTER

INTERSTATE CONSTRUCTION

3909 Security Park Drive
Rancho Cordova, CA 95742
website:
www.interstatecon.com

(916) 351-0622
fax (916) 351-0960
e-mail:
jhartmann@interstatecon.com

**to:** Siemens Building Tech.
**fax #:** 510-293-2100
**phone #:** 510-783-6000
**subject:** Process Cooling System, NAS2-99039
**date:** 04/20/00
**pages:** 2, including this cover sheet

Attention: Dan Sasaki,

Dan,

Per conversation today with Mr. Mocher of NASA, the government is requesting a cost proposal know as PC #16. See attached NASA construction change letter dated 3/15/00.

I believe this is #6 in your cost claim dated March 20, 00. However, Siemens is requested to separate and submit ASAP. Note on your cost proposal #6 and also 1-5, there are cost charged for management ( such as your self, Gary Graham etc.). There is even an auto charge that is questionable. Per my conversation with Mr. Mocher, this is not acceptable; this is part of your OverHead. Please adjust <u>or</u> briefly detail and justify why this should be paid and attached your submit cost for PC#16.

Ms. Gallo was not in today. I will try to contact her tomorrow to set up a meeting to discuss remaining items and to word off attempts of claims to the Government. However, I will need your revised pricing for items 1-5 ( as explained in paragraph 2 ), along with a brief detailed description and justification for compensation for each item.

If you have any question, please call me at your convenience.

Thank you,

John Hartmann
Project Manager

**From the desk of...**

**John Hartmann**

APR.20.2000 ... 8:54AM ... NO.889 P.2

John Hartmann

Ames Research Center

# CONSTRUCTION CLARIFICATION/CHANGE

| | | |
|---|---|---|
| Contractor<br>INTERSTATE CONSTRUCTION<br>3909 SECURITY PARK DRIVE<br>RANCHO CORDOVA, CA 95742<br><br>ATTN: JOHN HARTMANN<br>Phone: (916) 351-0622<br>FAX: (916) 351-0950 | Project<br>PROCESS COOLING SYSTEM N-258 | |
| | Contract<br>NAS2-99039 | Log / WP No. |
| | Date<br>3/15/00 | Doc. No. Rev.<br>PC#16 |
| | Spec. Sec. / DRG No. | IRR No. |
| Title<br>ENHANCED ALARMING | | RFI No. |

☐ Emergency change — This is a "Change Order" under the "Changes" clause. The contractor is directed to proceed as shown below, and to submit a proposal for equitable adjustment within 30 calendar days.

☒ Proposed change — This is a request for proposal, not a change order. The contractor shall not proceed with this work unless directed to do so by contract modification or Change Order.

☐ Clarification — This is "Technical Direction" under the contract. If the contractor perceives any part of this to constitute a change, he shall give written notice within 20 days, per the "Changes" clause.

DESCRIPTION (ATTACH SKETCHES, REDLINES, ETC., AS REQUIRED).

PROVID ENHANCED ALARMING AS DISCUSSED BETWEEN A.C MOSHER AND GLEN LEGGOE OF SIEMENS. TIME CARDS TO BE SIGNEDE BY A.C. MOSHER AT TIME OF WORK.

| | | | |
|---|---|---|---|
| Construction Manager<br>A.C. Mosher [signature] | Date<br>4/1/00 | Contracting Officer/Specialist<br>[signature] | Date<br>4/14/00 |
| Project Manager/Engineer<br>W. H. Eismann Jr. | Date | Copy to: ☒ Project Manager ☐ Inspector | |

ARC 181 (Apr 96)E



APR 19 '00 10:15 FR CODE JE 415 604 4984 TO 719163510950 P.01/01

**Leggoe Glen**

| | |
|---|---|
| **From:** | Sasaki Dan |
| **nt:** | Sunday, February 20, 2000 2:10 PM |
| **.o:** | 'jhartmann@interstatecon.com' |
| **Cc:** | 'amosher@mail.arc.nasa.gov'; 'beismann@mail.arc.nasa.gov'; 'vgallo@interstatecon.com'; 'djohnston@interstatecon.com'; Graham Garry; Leggoe Glen; Lam Vinh-Hoa; Jozsa Timothy; Miess Wesley; Daters Jason |
| **Subject:** | N258 standby |

John,

This is to inform you that AC Mosher of NASA has authorized Siemens to implement "Enhanced Alarms", based on our recommendation and on observation of field conditions, for a large number of alarmable points. He understands that considerable time has already been expended to prepare our recommendation and additional labor will be involved in implementing a solution that is not in specific compliance with the contract documents.

Affect Contract documents include:
FMCS Instruments Point List, sheets 1 through 4, with specified alarm values.
Sequence of Operations, sheets 1 through 9, specifying response to values of current.

NASA has requested documentation of all personnel and time devoted to this effort, with regular verification by the NASA Construction Manager. Once completed, Siemens will tabulate and forward for processing.

If there are any question, please contact Glen Leggoe or me.

Regards,

R. Dan Sasaki
Project Manager
ɔ.sasaki@sbt.siemens.com
**ↄIEMENS Building Technologies, Inc.**

**SIEMENS** **Landis Division**

Fax #23

| | | | |
|---|---|---|---|
| To: | John Hartmann | From: | R. Dan Sasaki |
| | Interstate Construction | Phone: | (510) 783-6000 x221 |
| Fax: | (916) 351-0950 | Fax: | (510) 293-2100 |
| Phone: | (916) 351-0622 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| Date: | May 18, 2000 | Pages to Follow: | 8 |

Cc: AC Mosher, Vivienne Gallo – NASA (650) 604-4984
Garry Graham, Wes Miess, Jason Daters – Siemens
Job File #620-PE-9677

Message: NASA N258, Process Cooling System

John,

Per your Email request of 5/16/00, attach are documents for PC #16 "Enhanced Alarming" per directive from AC Mosher of NASA to Glen Leggoe of Siemens.

Proposed Change PC #16 for the amount of $4,776.00

Please contact me if you have any comments or concerns.

Regards,

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**

Landis Division
2525 Barrington Court
Hayward, CA 94545

Tel: (510) 783-6000
Fax: (510) 293-2100

**Sasaki Dan**

**From:** Leggoe Glen
**Sent:** Tuesday, February 29, 2000 6:24 PM
**T** Sasaki Dan
**ct:** RE: N258

Labor for NASA billing on enhanced alarms. Implemented enhanced alarms on 42 points. Check your mail box for paperwork on "Enhanced Alarm Setup Verification", including attached list of enhanced alarm messages. Minor adjustment is required for 3 points, noted on the verification form.

19 Feb - 9 hours OT
20 Feb - 9 hours OT
21 Feb - 4 hours Reg
29 Feb - 4 hours Reg

-----Original Message-----
**From:** Sasaki Dan
**Sent:** Thursday, February 24, 2000 11:49 AM
**To:** Leggoe Glen
**Cc:** Graham Garry; Daters Jason
**Subject:** N258

Glen,

I need your document & labor for last Saturday's activity for Enhanced Alarming, directed from AC Mosher.

Thanks,

R. Dan Sasaki
Project Manager
dan.sasaki@sbt.siemens.com
**‾IEMENS Building Technologies, Inc.**

# SIEMENS

Project Memo NASA N258

**Date** *February 22, 2000*

**To:** *Dan Sasaki*

**From:** *Glen Leggoe*

**Cc:**

**Subject:** *Insight PC Component Defect*

***REMARKS:*** ☐ *Urgent* ☒ *For your information* ☐ *Reply ASAP* ☒ *Please Forward*

Attached is our Enhanced Alarm Setup Verification form, completed as a record for the setup as of February 22, 2000. Please note that four items (one message and four alarm levels) are recorded as incorrect and require correction in the Point database:

- FICWP1CD has incorrect message assignment for "Day Mode", -29 from setpoint. Message should be changed to #4.
- FICH3OT has incorrect alarm offset for "Night Mode". Should be –23, actual entry is +23.
- FICW3OT and FICW4OT has incorrect alarm offset for "Day Mode". Should be –20, actual is –12.

Alarm values noted on the attached record might be reviewed for suitability and functionality. Properly functioning motors have been observed to exceed 100% rated motor FLA.

Enhanced alarm setup might be considered for additional points, including secondary loop temperatures and any that might be generating nuisance alarms.

.SA N-258

Process Chilled Water System



# Enhanced Alarm Setup Verification

OBJECTIVE: This procedure verifies that the enhanced alarm setups within the approved ranges.

METHOD: For each listed Point Name, observe the system value for each category. The approved values are recorded in the table below. Verify that current values match approved values. Compare observed values to expected values listed. If approved values match observed values, enter "Yes" under "Acceptance Criteria Met". If values do not match, enter "No" under "Acceptance Criteria Met" and record any comments as appropriate.

| Point Name | Mode Point | Setpoint (Night) | Alarm High Offset (Night) | Alarm Low Offset (Night) | Mode Delay Mins | Level Delay Secs | Diff'l | Default Dest 1 | Msg | Extra Dest | Priority | Acceptance Criteria Met (Yes or No) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FICHP1CD | FICHP1S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICHP2CD | FICHP2S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICHP3CD | FICHP3S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICHP4CD | FICHP4S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICHP5CD | FICHP5S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICHP6CD | FICHP6S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICHP7CD | FICHP7S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICHP8CD | FICHP8S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICHP9CD | FICHP9S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICHP10CD | FICHP10S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICHP11CD | FICHP11S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICT1CD | FICT1S | 50 (0) | +65 (5) | -29 (-1) | 3 | 120 | 0 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICT2CD | FICT2S | 50 (0) | +65 (5) | -29 (-1) | 3 | 120 | 0 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICT3CD | FICT3S | 50 (0) | +65 (5) | -29 (-1) | 3 | 120 | 0 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICT4CD | FICT4S | 50 (0) | +65 (5) | -29 (-1) | 3 | 120 | 0 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICWP1CD | FICWP1S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | (1) 3-4-1-2 | <undef> | 3 | No |
| FICWP2CD | FICWP2S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICWP3CD | FICWP3S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICWP4CD | FICWP4S | 50 (0) | +51 (5) | -29 (-1) | 2 | 30 | 0 | 1 | 3-4-1-2 | <undef> | 3 | Yes |
| FICH1CD | FICH1EN | 50 (0) | +49 (5) | -29 (-1) | 4 | 30 | 0 | 1 | 7-8-5-6 | <undef> | 2 (3) | Yes |
| FICH2CD | FICH2EN | 50 (0) | +49 (5) | -29 (-1) | 4 | 30 | 0 | 1 | 7-8-5-6 | <undef> | 2 (3) | Yes |
| FICH3CD | FICH3EN | 50 (0) | +49 (5) | -29 (-1) | 4 | 30 | 0 | 1 | 7-8-5-6 | <undef> | 2 (3) | Yes |

Comments: (1) Message assignment for "ON PUMP", "AMPS LOW" is incorrect. GL

| Performed by: [signature] | Date: 22-Feb-2000 | Reviewed by: | Date: |
|---|---|---|---|

.3A N-258

Process Chilled Water System

PAGE 2 OF 2

# Enhanced Alarm Setup Verification

OBJECTIVE: This procedure verifies that the enhanced alarm setups within the approved ranges.

METHOD: For each listed Point Name, observe the system value for each category. The approved values are recorded in the table below. Verify that current values match approved values. Compare observed values to expected values listed. If approved values match observed values, enter "Yes" under "Acceptance Criteria Met". If values do not match, enter "No" under "Acceptance Criteria Met" and record any comments as appropriate.

| Point Name | Mode Point | Setpoint (Night) | Alarm High Offset (Night) | Alarm Low Offset (Night) | Mode Delay Mins | Level Delay Secs | Diff'l | Default Dest 1 | Msg | Extra Dest | Priority | Acceptance Criteria Met (Yes or No) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FICH4CD | FICH4EN | 50 (0) | +49 (5) | -29 (-1) | 4 | 30 | 0 | 1 | 7-8-5-6 | <undef> | 2 (3) | Yes |
| FICH1OT | FICH1EN | 41.5 (70) | +1 (30) | -1 (-23) | 4 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICH2OT | FICH2EN | 41.5 (70) | +1 (30) | -1 (-23) | 4 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICH3OT | FICH3EN | 41.5 (70) | +1 (30) | ① -1 (-23) | 4 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | No |
| FICH4OT | FICH4EN | 41.5 (70) | +1 (30) | -1 (-23) | 4 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICH1IT | FICH1EN | 48 (70) | +2 (30) | -3 (-23) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICH2IT | FICH2EN | 48 (70) | +2 (30) | -3 (-23) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICH3IT | FICH3EN | 48 (70) | +2 (30) | -3 (-23) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICH4IT | FICH4EN | 48 (70) | +2 (30) | -3 (-23) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICW1OT | FICH1EN | 87 (80) | +8 (20) | -20 (-33) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICW2OT | FICH2EN | 87 (80) | +8 (20) | -20 (-33) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICW3OT | FICH3EN | 87 (80) | +8 (20) | ② -20 (-33) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | No |
| FICW4OT | FICH4EN | 87 (80) | +8 (20) | ② -20 (-33) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | No |
| FICW1IT | FICH1EN | 75 (80) | +5 (20) | -10 (-33) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICW2IT | FICH2EN | 75 (80) | +5 (20) | -10 (-33) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICW3IT | FICH3EN | 75 (80) | +5 (20) | -10 (-33) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICW4IT | FICH4EN | 75 (80) | +5 (20) | -10 (-33) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FICWST | FIALARM | 67 (67) | +100 (5) | -100 (-5) | 8 | 15 | 1 | 1 | 11-12-9-10 | <undef> | 3 | Yes |
| FIEF101C | FIEF101S | 5 (5) | 5 (-3) | -4 (-15) | 2 | 0 | 0 | 1 | 0 | <undef> | 3 | Yes |
| FIEF101C | FIEF101S | 5 (5) | 5 (-3) | -4 (-15) | 2 | 30 | 0 | 1 | 0 | <undef> | 3 | Yes |

Comments: ① Alarm level for "OFF CHILLER", "BARREL TEMP IS LOW", SHOULD BE (-23), ACTUAL IS (+23). [initials]

② Alarm level for "ON CHILLER", "BARREL TEMP IS LOW", SHOULD BE (-20), ACTUAL IS (-12). [initials]

Performed by: [signature] Date: 22-Feb-2004 Reviewed by: Date:

| Panel System Name: | NODE 50 | |
| --- | --- | --- |
| Message: | 1 | Enabled |
| OFF PUMP : AMPS ABOVE OFF ALARM HIGH LEVEL | | |
| Message: | 2 | Enabled |
| OFF PUMP : AMPS BELOW OFF ALARM LOW LEVEL | | |
| Message: | 3 | Enabled |
| ON PUMP : AMPS ABOVE ON ALARM HIGH LEVEL<br>PUMP PROGRAMMED FOR FAILURE SHUTDOWN | | |
| Message: | 4 | Enabled |
| ON PUMP : AMPS BELOW ON ALARM LOW LEVEL<br>PUMP PROGRAMMED FOR FAILURE SHUTDOWN | | |
| Message: | 5 | Enabled |
| OFF CHILLER : AMPS ABOVE OFF ALARM HIGH LEVEL | | |
| Message: | 6 | Enabled |
| OFF CHILLER : AMPS BELOW OFF ALARM LOW LEVEL | | |
| Message: | 7 | Enabled |
| ON CHILLER : AMPS ABOVE ON ALARM HIGH LEVEL<br>CHILLER PROGRAMMED FOR FAILURE SHUTDOWN | | |
| Message: | 8 | Enabled |
| ON CHILLER : AMPS BELOW ON ALARM LOW LEVEL<br>CHILLER PROGRAMMED FOR FAILURE SHUTDOWN | | |
| Message: | 9 | Enabled |
| OFF TOWER FAN : AMPS ABOVE OFF ALARM HIGH LEVEL | | |
| Message: | 10 | Enabled |
| OFF TOWER FAN : AMPS BELOW OFF ALARM LOW LEVEL | | |
| Message: | 11 | Enabled |
| ON TOWER FAN : AMPS ABOVE ON ALARM HIGH LEVEL<br>TOWER CELL PROGRAMMED FOR FAILURE SHUTDOWN | | |

| | | |
|---|---|---|
| Message: | 12 | Enabled |
| ON TOWER FAN : AMPS BELOW ON ALARM LOW LEVEL<br>TOWER CELL PROGRAMMED FOR FAILURE SHUTDOWN | | |
| ****************************************************************************** | | |
| Panel System Name: | NODE 51 | |
| Message: | 5 | Enabled |
| OFF CHILLER : AMPS ABOVE OFF ALARM HIGH LEVEL | | |
| Message: | 6 | Enabled |
| OFF CHILLER : AMPS BELOW OFF ALARM LOW LEVEL | | |
| Message: | 7 | Enabled |
| ON CHILLER : AMPS ABOVE ON ALARM HIGH LEVEL<br>CHILLER PROGRAMMED FOR FAILURE SHUTDOWN | | |
| Message: | 8 | Enabled |
| ON CHILLER : AMPS BELOW ON ALARM LOW LEVEL<br>CHILLER PROGRAMMED FOR FAILURE SHUTDOWN | | |
| Message: | 9 | Enabled |
| OFF CHILLER : BARREL TEMPERATURE IS HIGH | | |
| Message: | 10 | Enabled |
| OFF CHILLER : BARREL TEMPERATURE IS LOW | | |
| Message: | 11 | Enabled |
| ON CHILLER : BARREL TEMPERATURE IS HIGH | | |
| Message: | 12 | Enabled |
| ON CHILLER : BARREL TEMPERATURE IS LOW | | |

P.01

TRANSACTION REPORT

MAY-18-2000 THU 04:28 PM

| DATE | START | RECEIVER | TX TIME | PAGES | TYPE | NOTE | M# | DP |
|---|---|---|---|---|---|---|---|---|
| MAY-18 | 04:25 PM | 19163510950 | 2'29" | 9 | SEND | OK | 320 | |

TOTAL : 2M 29S PAGES: 9

**SIEMENS** **Landis Division**

Fax #23

| | | | |
|---|---|---|---|
| To: | John Hartmann | From: | R. Dan Sasaki |
| | Interstate Construction | Phone: | (510) 783-6000 x221 |
| Fax: | (916) 351-0950 | Fax: | (510) 293-2100 |
| Phone: | (916) 351-0622 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| Date: | May 18, 2000 | Pages to Follow: | 8 |

Cc: AC Mosher, Vivienne Gallo – NASA (650) 604-4984
Garry Graham, Wes Miess, Jason Daters – Siemens
Job File #620-PE-9677

Message: NASA N258, Process Cooling System

John,

Per your Email request of 5/16/00, attach are documents for PC #16 "Enhanced Alarming" per directive from AC Mosher of NASA to Glen Leggoe of Siemens.

Proposed Change PC #16 for the amount of $4,776.00

Please contact me if you have any comments or concerns.

Regards,

R. Dan Sasaki
Project Manager

P.01

TRANSACTION REPORT

MAY-18-2000 THU 03:59 PM

BROADCAST

| DATE | START | RECEIVER | TX TIME | PAGES | TYPE | NOTE | M# | DP |
|---|---|---|---|---|---|---|---|---|
| MAY-18 | 03:59 PM | 19163510950 | 1'05" | 0 | SEND | COM.E-7 | (05) 310 | |
| | 03:54 PM | 16506044984 | 2'34" | 9 | SEND | OK | 310 | |

TOTAL : 3M 39S PAGES: 9

**SIEMENS**

**Landis Division**

Fax #23

| | | | |
|---|---|---|---|
| To: | John Hartmann<br>Interstate Construction | From: | R. Dan Sasaki |
| | | Phone: | (510) 783-6000 x221 |
| Fax: | (916) 351-0950 | Fax: | (510) 293-21[illegible] |
| Phone: | (916) 351-0622 | E-Mail: | Dan.sasaki@[illegible].siemens.com |
| Date: | May 18, 2000 | Pages to Follow: | 8 |

Cc: AC Mosher, Vivienne Gallo – NASA (650) 604-4984
Garry Graham, Wes Miess, Jason Daters – Siemens
Job File #620-PE-9677

Message: NASA N258, Process Cooling System

John,

Per your Email request of 5/16/00, attach are documents for PC #16 "Enhanced Alarming" per directive from AC Mosher of NASA to Glen Leggoe of Siemens.

Proposed Change PC #16 for the amount of $4,776.00

Please contact me if you have any comments or concerns.

Regards,

R. Dan Sasaki
Project Manager

**SIEMENS** **Landis Division**

Fax #24

| | | | |
|---|---|---|---|
| To: | John Hartmann | From: | R. Dan Sasaki |
| | Interstate Construction | Phone: | (510) 783-6000 x221 |
| Fax: | (916) 351-0950 | Fax: | (510) 293-2100 |
| Phone: | (916) 351-0622 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| Date: | May 25, 2000 | Pages to Follow: | 1 |

Cc: AC Mosher, Vivienne Gallo – NASA (650) 604-4984
Garry Graham, Wes Miess, Glen Leggoe, Jason Daters – Siemens
Job File #620-PE-9677

Message: NASA N258, Process Cooling System

John,

Information per your fax request of May 23rd, with CC fax to AC Mosher and NASA. Attach is document for PC #16 "Enhanced Alarming" per directive from AC Mosher of NASA to Glen Leggoe of Siemens.

4 hours on February 21, 2000 and 4 hours on February 29, 2000 for Glen Leggoe not signed by AC Mosher, since labor was performed at our office in Hayward.

Please contact me if you have any comments or concerns.

Regards,

R. Dan Sasaki
Project Manager

**Siemens Building Technologies, Inc.**

Landis Division
2525 Barrington Court
Hayward, CA 94545

Tel: (510) 783-6000
Fax: (510) 293-2100

# SIEMENS

Project Memo NASA N258

**Date** *February 19, 2000*

**To:** *Dan Sasaki*

**From:** *Glen Leggoe*

**Cc:** *Eric Mino*
*Jason Perry*

**Subject:** *Enhanced Alarm Configuration*

***REMARKS:*** ☐ *Urgent* ☒ *Authorization to Proceed* ☐ *Reply ASAP* ☐ *Please Comment*

19 February, 2000, 14:00 Hours.

A.C. Mosher has authorized Siemens to implement "Enhanced Alarms", based on our recommendation and on observation of field conditions, for a large number of alarmable points. He understands that considerable time has already been expended to prepare our recommendation, and that additional labor will be involved in implementing a solution that is not in specific compliance with the contract documents.

I will continue preparing point definitions for as many points as possible prior to the end of tomorrow's shutdown period (15:00 Hours). We will implement (and document) the changes during the shutdown period to prevent unintended system response which could result from changes with the plant and program being on-line.

Affected Contract documents include:
FMCS Instruments Points List (Sheets 1 – 4) with specified alarm values
Sequence of Operations (Sheets 1 – 9), specifying response to values of current.

NASA has requested documentation all personnel and time devoted to this effort, with regular verification by the NASA Construction Manager:

| | Siemens Name | Date | Hours | Task(s) | NASA Verification |
|---|---|---|---|---|---|
| 1. | Glen Leggoe | 19-Feb-00 | 14:00 – 18:00 | Design & Documentation | |
| 2. | Glen Leggoe | 19-Feb-00 | 19:00 – 24:00 | Design & Documentation | |
| 3. | Glen Leggoe | 20-Feb-00 | 03:00 – 12:00 | Implementation | |
| 4. | Glen Leggoe | 21-Feb-00 | 08:00 – 12:00 | Documentation | [illegible] |
| 5. | Glen Leggoe | 29-Feb-00 | 13:00 – 17:00 | Documentation | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |

P.01

TRANSACTION REPORT

MAY-25-2000 THU 01:53 PM

BROADCAST

| DATE | START | RECEIVER | TX TIME | PAGES | TYPE | NOTE | M# | DP |
|---|---|---|---|---|---|---|---|---|
| MAY-25 | 01:51 PM | 19163510950 | 42" | 2 | SEND | OK | 636 | |
| | 01:52 PM | 16506044984 | 43" | 2 | SEND | OK | 636 | |

TOTAL : 1M 25S PAGES: 4

**SIEMENS**

**Landis Division**

Fax #24

| | | | |
|---|---|---|---|
| To: | John Hartmann<br>Interstate Construction | From: | R. Dan Sasaki |
| Fax: | (916) 351-0950 | Phone: | (510) 783-6000 x221 |
| Phone: | (916) 351-0622 | Fax: | (510) 293-2100 |
| Date: | May 25, 2000 | E-Mail: | Dan.sasaki@sbt.siemens.com |
| | | Pages to Follow: | 1 |

Cc: AC Mosher, Vivienne Gallo – NASA (650) 604-4984
Garry Graham, Wes Miess, Glen Leggoe, Jason Daters – Siemens
Job File #620-PE-9677

Message: NASA N258, Process Cooling System

John,

Information per your fax request of May 23rd, with CC fax to AC Mosher and NASA. Attach is document for PC #16 "Enhanced Alarming" per directive from AC Mosher of NASA to Glen Leggoe of Siemens.

4 hours on February 21, 2000 and 4 hours on February 29, 2000 for Glen Leggoe not signed by AC Mosher, since labor was performed at our office in Hayward.

Please contact me if you have any comments or concerns.

Regards,

**Sasaki Dan**

**From:** John Hartmann [jhartmann@interstatecon.com]
**Sent:** Tuesday, May 23, 2000 10:25 AM
**To:** Dan Sasaki (E-mail)
Gary Graham (E-mail); A. C. Mosher (E-mail); Wesley Miess (E-mail)
**Subject:** NAS2-99039

Reason: PC #16

Dan,

AC called and was looking for the signed time cards. Please fax this information over to AC ASAP. CC all information to me.

Thanks,

John Hartmann
Interstate Construction, Inc.

National Aeronautics and
Space Administration

**Ames Research Center**
Moffett Field, California 94035-1000

RECEIVED
OCT 1 1 2000
Interstate Construction, Inc.

Reply to Attn of: JAZ: 213-13

October 3, 2000

Interstate Construction, Inc.
ATTN: Mr. John Hartmann
3909 Security Park Drive
Rancho Cordova, CA 95742

Subject: Contract NAS2-99039, Process Cooling System, Building N258, NASA-Ames Research Center, Moffett Field, California

Ref:
- (a) Siemens Claim #1, Phase "D" Delays dtd June 22, 2000
- (b) Siemens Claim #2, 24 Hour Watch dtd June 26, 2000
- (c) Siemens Claim #3, Solution to NASA BLN Cabling Problem & Modify PPCL to Enhance COV's dtd June 26, 2000
- (d) Siemens Claim #4, Network Card Configuration and Delays dtd June 26, 2000
- (e) Siemens Claim #5, 15 Hour Chiller Shutdown dtd June 26, 2000
- (f) Siemens Claim for NASA N258 PC #16 – Siemens E-Mail dtd June 14, 2000

In response to your request for the Government's decision regarding the claims submitted by Siemens, a thorough technical evaluation has been performed. The following determinations are in response to the six Siemens claims listed above.

1. Overhead and Profit.

It appears that Siemens Building Technology (Siemens) is double billing for overhead and profit as these charges appear to be included in their labor rates and are again listed as separate cost line items.

2. Siemens Claims #1, #2, #3, and #5.

Siemens contends in the above four claims that Interstate Construction and NASA were solely responsible for its incurring additional project costs. However, as the following evaluation will point out, it was Siemens' inability to conduct a thorough site condition survey, produce software and hardware to properly control other system components, and adequately test its software and hardware prior to system startup that caused them to incur the expenses that are being claimed.

On several occasions during the course off the contract, Interstate Construction and NASA Project Management became frustrated with Siemens' cavalier management style and their apparent lack of concern to meet critical contract milestones. To your credit, the Government recognized that Interstate was able to complete its construction milestone work on schedule, while minimizing the NAS Facility unscheduled downtime due to Siemens'

inability to provide a "Fully Automatic" chiller plant control system in accordance with the contract schedule.

(a) Siemens Claim #1, Phase "D" Delays - $9,989.76.

Contract Specification Section 01110, Paragraph 1.4 required the contractor to complete Work Phase "C" by 11:59 p.m. Sunday, January 30, 2000 and proceed with "Work Phase 'E'". At about 4:45 a.m. Monday morning, the Project Manager, Bill Eismann received a call from the NASA COTR, A.C. Mosher stating that the new chiller plant was operating but was unable to cool the NAS Facility because of a lack of chilled water flow throughout the building. At about 6:30 a.m. Monday morning, Bill found that one of the main chilled water valves located near the mechanical room ceiling was still in the closed position. After opening the valve, the contractor noticed an old abandoned shutoff tag on the valve that obviously wasn't placed on the valve by anyone affiliated with the project. Furthermore, since the tag wasn't noticed until after Bill found the closed valve, it couldn't be the reason for the valve being left in the closed position at the start of "Work Phase "D"" testing.

What is troubling about the valve being closed is that Siemens test personnel were unaware that the chiller plant was not supplying water to the building, which was an essential requirement to perform the specified chiller load control tests. All the chiller load control system testing that Siemens performed over the weekend prior to system startup was invalid, and Siemens' failing to recognize its error was one of the main contributing factors for the 34 hour system startup delay.

Siemens' decision to perform the specified control system field tests during the "Work Phase 'D'" weekend system shutdown did not allow them enough time for testing, troubleshooting, and repairing software coding and hardware configuration problems. NASA's design contractor, Carl Evans who was monitoring the weekend testing stated that Siemens personnel were so intent on trying to complete the required tests in the limited time available, that they totally ignored the reasons why the chillers and pumps did not operate properly. Carl agreed that if Siemens had started testing the critical pump and cooling tower fan controls several days before the "Work Phase 'D'" weekend shutdown, there would have been ample time to test and troubleshoot the chiller controls during the scheduled weekend system test. At the very least, by focusing their weekend testing on the chiller controls, Siemens and Interstate would have had ample time to evaluate, troubleshoot, find and open the closed chilled water valve that was responsible for the erroneous chiller control system test results.

All of the problems stated in Siemens' Claim #1 would not have occurred had Siemens' management started testing the control system before the "Work Phase 'D'" weekend shutdown as Interstate and NASA had recommended to Siemens on several occasions.

As a direct result of Siemens' marginal control system testing, the NAS Facility was not operational until late Tuesday morning, February 1, 2000, two calendar days after the required contract startup time of 11:59 p.m. Sunday, January 30, 2000.

The amount of liquidated damages for this two day delay provided for by Specification Section 01110, Paragraph 1.4 is $10,000.00.

(b) Siemens Claim #2, 24 Hour Watch - $74,632.80.

The contractor was unable to return the chiller plant system to "fully automatic" operation by the specified 11:59 p.m. Sunday, January 30, 2000 conclusion of "Work Phase 'C'" as specified in Contract Specification Section 01110, Paragraph 1.4. In fact, the chiller plant would not operate reliably even in the "manual" mode until late Tuesday morning, February 1, 2000. Bill spent just about every minute during this 34 hour period with the Siemens personnel as they worked around the clock to analyze why the system pumps would not operate reliably, and the chillers would not stay on line even though chilled water flow throughout the building was reestablished. Siemens personnel made numerous trial and error software coding changes including the correction of an erroneously located critical "goto" programming statement, in an effort to speed up the date update rate over the essential GE variable frequency drive (VFD) controller network.

Bill stated that he is not skilled in software development, so he asked Ken Goodman, a former Siemens programmer who ran the software bench test if he had any ideas as to why Siemens software coding required such extensive changing after having successfully completed the software bench test. (Ken is now employed at Ames with the Johnson Controls HVAC Control Group and has been involved with supporting Siemens with this project on a daily basis). Ken informed Bill that although the bench testing was successfully completed, the problems that Siemens was having controlling the other network devices suggested that these aspects of the software code were not finalized or tested satisfactorily prior to system startup. Ken also stated that he believed that Siemens Management suspected before the control system was installed in the NAS Facility that its equipment layout could have problems meeting the update rates required by the other system pump and cooling tower fan networks it was controlling.

Ken's assessments turned out to be valid. During the Tuesday, February 15, 2000 meeting, Siemens informed NASA that it was not possible for its current control panel layout to properly control the other system networks and proposed to make the necessary changes during the previously scheduled Saturday and Sunday, February 19 and 20, 2000 system shutdown. NASA agreed, and after the system was returned to operation on Sunday, February 20, 2000 it performed as specified in the "fully automatic" mode as required by Specification Section 01110, Paragraph 1.4.

The NAS Facility is a critical NASA computational resource of which the contract specified had to be operational by 11:59 p.m. Sunday, January 30, 2000. Siemens' control system was unable to operate the chiller plant reliably even in the "manual" mode until late Tuesday morning, February 1, 2000. It wasn't until Siemens completed reconfiguring its control panels during the Saturday and Sunday, February 19 and 20, 2000 system shutdown, nineteen calendar days after the scheduled completion of "Work Phase 'C'" that the control system operated reliably in the required "fully automatic" mode.

Keeping the NAS Facility operational was significantly more important to NASA than assessing the contractor $5,000.00 for each calendar day that it took to correct the software and hardware problems, and place the chiller plant in "fully automatic" operation. It is still unclear why Siemens Management resisted NASA's request to provide a round-the-clock control system attendant during the seventeen calendar day period when the control system would only operate reliably in the manual mode. This alternative would have been less costly to Siemens than being assessed liquidated damages.

The amount of liquidated damages specified by Specification Section 01110, Paragraph 1.4 for the Wednesday, February 2 through Friday, February 18, 2000 seventeen calendar day period would have been $85,000.00.

(c) Siemens Claim #3, Solution to NASA BLN Cabling Problem & Modify PPCL to Enhance COV's - $39,744.00.

During the development of the contract construction documents NASA anticipated that unless the contractor's software and hardware was thoroughly tested prior to final installation, it would very unlikely function properly when the new chiller plant was first started. So, NASA included provisions in Specification Section 01750 to require the contractor to "perform a complete and comprehensive software bench test which verifies that the software execut4s in accordance with the System Sequence of Operation and the Specification System Test Procedure Sections". The inability of Siemens software and hardware to properly control the GE VFD controller network during the chiller plant startup proves conclusively that both their bench and in-house test plans were incapable of validating its control system software and hardware designs. Had Siemens developed a comprehensive testing plan, it would have, at the beginning, identified the lack of robustness of its control system design to interface at the required update rate required by the GE VFD controller network. Siemens alone, is responsible for allowing these software and hardware errors to continue to migrate to a point in the project schedule where it was necessary for them to provide additional round-the-clock support to keep the NAS Facility in operation while Siemens corrected its control system design problems.

For many years Siemens (formerly Landis & Staefa) has been the sole source provider of all Facility Management Control System (FMCS) equipment at Ames. In addition to furnishing their proprietary control system hardware, Ames also awarded Siemens numerous contracts over the years to install the hardware and provide the software programs for these new and replacement systems. Installation of these systems required Siemens personnel to have access to all of Ames FMCS system drawings, including the network drawings for the NAS Facility. Siemens assertion in its Claim #3, that it was necessary to reconfigure the FMCS trunk wiring when its control system failed to function after installation, indicates that it failed to do the essential up-front site survey work that was required by the contract documents.

Operation of the NAS Facility Cray computer was interrupted on three separate occasions as a direct result of Siemens' failure to thoroughly test the control system software during the bench and in-house testing, and its lack of due diligence during its site survey work. All the control system software and hardware configuration changes that Siemens eventually made to make the control system operate would have been included in its original control system design, if the up-front work had been done correctly at the onset of the project.

Because Siemens had to redo many aspects of the control system design after the specified 11:59 p.m. Sunday, January 30, 2000 startup, the operation of the Cray computer was interrupted by control system failure on Monday, January 31, 2000, Tuesday, February 1, 2000 and Thursday, February 3, 2000. The amount of liquidated damages for the three Cray computer interruptions provided for in Specification Section 02055, Paragraph 3.2 is $15,000.00.

3. The project also incurred considerable unexpected costs to retain Johnson Control personnel support to provide assistance to Siemens. During the twenty-one day period between Monday, January 31, 2000 and Sunday, February 20, 2000, Johnson Control personnel were frequently called upon to provide support to the Contractor to keep the chiller plant in operation. This support would not have been necessary if the control system operated properly in the "fully automatic" mode at the conclusion of "Work Phase 'C'". Johnson Controls Support costs - $20,000.00.

4. Siemens Claims #4 - $9,467.80 and PC #16 - $4,588.32.

NASA does not dispute these claims. The COTR, A.C. Mosher is in agreement that some elements of the work listed in these claims will be addressed as PC's to the subject contract.

If you wish to discuss this letter, please contact me by telephone at (650) 604-5808 and I will assist you in any way that I can.

Vivienne D. Gallo
Contracting Officer

Copy to:
A.C. Mosher
File
R/F

Glenn P. Zwang, State Bar No. 112295
BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation
900 Front Street, Suite 300
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

UNITED STATES, for the use of SIEMENS BUILDING TECHNOLOGIES, INC., a Delaware corporation, and SIEMENS BUILDING TECHNOLOGIES, INC., a Delaware corporation

ORIGINAL FILED

FEB 19 2002

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| UNITED STATES, for the use of SIEMENS BUILDING TECHNOLOGIES, INC., a Delaware corporation, and SIEMENS BUILDING TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTERSTATE CONSTRUCTION, INC., a California corporation; and AMERICAN CASUALTY COMPANY OF READING, a Pennsylvania corporation,<br><br>Defendants. | No. C-00 21249 RMW<br><br>**AMENDED JUDGMENT** |

The Court hereby amends its judgment dated January 15, 2002 in favor of Siemens Building Technologies, Inc. ("Siemens"), and against defendants Interstate Construction Company, Inc. ("Interstate") and American Casualty Company of Reading Pennsylvania ("American"), to read in its entirety as follows:

1. Siemens shall recover from Interstate and American, jointly and severally, judgment in the amount of $168,744.50, consisting of damages in the principal amount

of $141,961.24, pre-judgment interest from May 23, 2000 to January 15, 2002 of $21,352.94, and costs in the amount of $5,430.22.

2. Siemens shall recover from Interstate and American, jointly and severally, post-judgment interest of 10% per annum from January 16, 2002 until the judgment is paid.

3. Siemens covenants not to execute on its judgment so long as it receives from Interstate or American, on time and in full, the following payments: (1) $50,000 to be received on or before February 8, 2002; (2) $59,372.25 to be received by Siemens on or before March 8, 2002; and (3) $59,372.25 to be received by Siemens on or before April 8, 2002. Upon receipt of all such payments on time and in full as described above, the judgment shall be deemed satisfied. Should Interstate fail to make any payment on time and in full as described above, then Siemens' covenant not to execute shall become null and void, and Siemens may commence execution immediately, without further notice or court order, on the remaining balance and post-judgment interest. In such case, all payments received shall first be credited to post-judgment interest, and then to principal.

Dated: 2/15, 2002

Ronald M. Whyte

UNITED STATES DISTRICT JUDGE

APPROVED AS TO FORM:

LAW OFFICES OF ROBERT E. THURBON

Robert E. Thurbon
Attorneys for Defendants
Interstate Construction, Inc. and
American Casualty Company of
Reading Pennsylvania

Glenn P. Zwang, State Bar No. 112295
BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation
900 Front Street, Suite 300
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

ORIGINAL FILED APR 29 '02

UNITED STATES, for the use of SIEMENS BUILDING TECHNOLOGIES, INC., a Delaware corporation, and SIEMENS BUILDING TECHNOLOGIES, INC., a Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| UNITED STATES, for the use of SIEMENS BUILDING TECHNOLOGIES, INC., a Delaware corporation, and SIEMENS BUILDING TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INTERSTATE CONSTRUCTION, INC., a California corporation; and AMERICAN CASUALTY COMPANY OF READING, a Pennsylvania corporation,<br><br>Defendants. | No. C-00 21249 RMW<br><br>**ACKNOWLEDGMENT OF SATISFACTION OF JUDGMENT (FULL)** |

Full satisfaction of the Amended Judgment by Interstate Construction, Inc., a California corporation and American Casualty Company of Reading, a Pennsylvania corporation is acknowledged. The Amended Judgment was entered on February 19, 2002. Plaintiff has not had an abstract of judgment recorded with any county or with the office of the Secretary of State.

**Notice to Judgment Debtor:** This full satisfaction of judgment will have to be recorded in each county shown above, if any, to release the judgment lien. and will have to be filed in the office of the Secretary of State to terminate any judgment lien on personal property.

Dated: April 22, 2002

BARTKO, ZANKEL, TARRANT & MILLER

Glenn P. Zwang
Attorneys for Plaintiff
Siemens Building Technologies, Inc.,
a Delaware corporation

**PROOF OF SERVICE BY MAIL**

I, Paul H. Brown, the undersigned, hereby certify and declare:

1. I am over the age of 18 years and am not a party to the within cause.

2. I am employed in the office of a member of the bar of this Court, at whose direction this service was made.

3. My business address is 900 Front Street, Suite 300, San Francisco, California 94111.

4. I am familiar with my employer's mail collection and processing practices; know that said mail is collected and deposited with the United States Postal Service on the same day it is deposited in the interoffice mail; and know that postage thereon is fully prepaid.

5. Following said practice, on April 23, 2002, I served a true copy of the attached document titled exactly ***Acknowledgment of Satisfaction of Judgment (Full)*** by placing the same in an addressed, sealed envelope and depositing it in the regularly maintained interoffice mail addressed to the following:

Robert E. Thurbon, Esq.
Law Offices of Robert E. Thurbon
3400 Bradshaw Road, Suite "B"
Sacramento, CA 95827

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on April 23, 2002 at San Francisco, California.

Paul H. Brown
Paul H. Brown

# .HURBON & McHANEY, _.'
## Attorneys

Robert E. Thurbon
Jacqueline S. McHaney
Erin E. Mackey

E-Mail
LawOfcsRET@aol.com

PLEASE RESPOND TO:
3400 Bradshaw Road, Suite B
Sacramento, CA 95827

Sacramento Office:
3400 Bradshaw Road, Suite B
Sacramento, CA 95827
Tele: (916) 361-6892
Fax: (916) 361-6861
Ventura Office:
1445 Donlon Street, Suite 6
Ventura, CA 93003-5639
Tele: (805) 639-3031
Fax: (805) 639-3033

March 19, 2002

Ms. Vivienne Gallo, Contracting Officer
National Aeronautics and Space Administration
Ames Research Center
Moffett Field, California 94035-1000

Re: Process Cooling System, Building N258
Contract # NAS2-99039
Request for Contracting Officer's Decision

Dear Ms. Gallo:

As you are aware, Interstate Construction, Inc. has been involved in litigation with Siemens Building Technologies, Inc. involving the above-referenced contract in which Siemens was a subcontractor.

On or about March 20, 1999 Interstate Construction, Inc., on behalf of Siemens Building Technologies, Inc., submitted a claim to NASA in the amount of $167,646.00 for extra work and delay damages suffered by Siemens in their performance of the above-referenced project. Their claim was rejected by you and Siemens subsequently brought an action in federal court against Interstate and its surety under the Miller Act.

Judgment was recently entered against Interstate by the United States District Court for the Northern District of California in the amount of $168.744.50. The judgment consisted of both delay and extra work damages claimed by Siemens for work they performed on the project. The jury found that NASA was the cause of the extra work damages in the amount of $119,487.84 and NASA and Interstate were jointly at fault for the delay damages in the amount of $9,989.76. The amount of the total judgment included prejudgment interest and statutory costs.

Based on the fact that NASA was the project owner and Interstate was the prime contractor, Interstate is hereby submitting this request for contracting officer's decision for indemnification by NASA on the extra work and delay damages that Interstate is required to pay to Siemens under the

above-referenced contract plus costs and attorneys fees incurred by Interstate in defending the action in the amount of $56,000.00. If it is NASA's intent to reject this claim, please inform us immediately so that we may bring the appropriate action in the Court of Federal Claims.

Enclosed please find copies of the claim submitted to NASA on behalf of Siemens, the final judgment entered in the federal court action, a copy of the jury verdict and special interrogatories and a declaration setting forth the costs and attorneys fees incurred by Interstate in defending this action. a conformed copy of the jury verdict and special interrogatories will be forwarded to you upon receipt from the Court.

I certify that this claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Sincerely,

Erin E. Mackey

ERIN E. MACKEY

National Aeronautics and
Space Administration

**Ames Research Center**
Moffett Field, California 94035-1000

Reply to Attn of: JFF: 19-12 -- FAXED -- January 14, 2003

Interstate Construction, Inc.
ATTN: Mr. John Hartmann
3909 Security Park Drive
Rancho Cordova, CA 95742

Subject: Contract NAS2-99039, Process Cooling System, Building N258, NASA-Ames Research Center, Moffett Field, California; Contracting Officer's Final Decision

Ref: (a) Interstate Claim for extra work and delay damages dated March 19, 2002
(b) Interstate Claim for attorney fees dated March 19, 2002

Encl: (1) NASA Ames letter dated October 3, 2000

This is the final decision of the Contracting Officer pursuant to the Disputes Clause. This decision is in response to your claim for additional costs incurred under the subject contract regarding the Miller Act lawsuit brought against you by your subcontractor and associated legal fees and costs.

BACKGROUND

The contract (Base Bid) was awarded to Interstate Construction, Incorporated, (Interstate) 3909 Security Park Drive, Rancho Cordova, CA 95742 on February 8, 1999 in the amount of $2,085,189.00.

The contract requirements are as follows:

Base Bid – The project entitled "Process Cooling System, N258" consists of the replacement of four centrifugal chillers and modifications of the chilled water system to provide primary and secondary loop pumping systems in the main computer facility at NASA-Ames Research Center, Moffett Field, California. Demolition work includes the removal of four 700 ton chillers, chilled water piping, electrical motors and starters, control system components and wiring. New work for the automated chiller plant includes the installation of four new 450 ton R-134a centrifugal chillers, primary and secondary loop chilled water piping, new pump and cooling tower fan motors with variable frequency drives, pipe insulation, refrigerant leak detection and exhaust systems, Facility Management Control System (FMCS) hardware and software,

electrical services, and system balancing and testing. Ancillary work includes the rental, installation, piping and wiring of three 160 ton and three 240 ton temporary outdoor air cooled chillers to provide the facility with chilled water during the actual time and that the mechanical room equipment is shutdown for construction. Phased construction and construction activities around operating equipment is required and the contract includes critical construction scheduling milestones to minimize impacting facility operations during construction.

RESPONSE TO CLAIMS

In response to Reference (a), your claim for indemnification for losses due to a jury verdict in a Miller Act lawsuit brought against Interstate by your subcontractor, Siemens Building Technology (Siemens) [words deleted] is hereby denied for the following reasons:

1. Neither the Changes Clause, nor any other provision in the subject contract between NASA and Interstate, provides for Interstate's indemnification from the Government for the contractor's losses to a subcontractor resulting from litigation in which NASA was not a party.

2. The Government's contract with Interstate is a fixed price construction contract. Therefore, under the contract provisions, Interstate is only entitled to an Equitable Adjustment for performing new work, outside the scope of the contract, pursuant to the Changes Clause.

In response to Reference (b), your claim for incurred attorney's fees and costs is hereby denied for the following reasons:

1. Neither the Changes Clause, nor any other provision in the subject contract between NASA and Interstate, provides for Interstate's reimbursement for legal fees and costs incurred in defending yourself against Siemens' Miller Act lawsuit.

2. The Government's contract with Interstate is a fixed price construction contract, not a cost reimbursement contract.

Even though you did not specifically raise the issues in your March 19, 2002 claim letters, it may be that the intent of your claims is that they are essentially a "pass-through" of the claims brought about by Siemens' [word deleted] against Interstate. Even if this is your intent, these claims are denied for the reasons specified in Enclosure (1).

This is the final decision of the Contracting Officer. You may appeal this decision to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208. The Board's operating procedures appear in Part 48, Code of Federal Regulations, Chapter 2, Appendix A. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by

number. With regard to appeals to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Vivienne D. Gallo
Contracting Officer

Copy to:
A.C. Mosher
A. Barna
File
R/F

# THURBON & McHANEY, L. P.
## Attorneys at Law

Robert E. Thurbon
Jacqueline S. McHaney
Erin E. Mackey
Joel Van Parys

E-Mail
tmclp@sbcglobal.net

PLEASE RESPOND TO:
2356 Gold Meadow Way, Suite 160
Gold River, CA 95670

Sacramento Office:
2356 Gold Meadow Way, Suite 160
Gold River, CA 95670
Tel: (916) 636-1840
Fax: (916) 638-7530
Ventura Office:
1445 Donlon Street, Suite 6
Ventura, CA 93003-5639
Tel: (805) 639-3031
Fax: (805) 639-3033

March 24, 2004

Ms. Vivienne Gallo, Contracting Officer
National Aeronautics and Space Administration
Ames Research Center
Moffett Field, California 94035-1000

Re: Process Cooling System, Building N258
Contract # NAS2-99039
Request for Contracting Officer's Decision

Dear Ms. Gallo:

As you are aware, on approximately February 8, 1999 Interstate Construction, Inc. and NASA entered into contract number NAS2-99039 (VDG) under which Interstate was to perform a work of improvement identified as Process Cooling System, Building N258 at NASA-Ames Research Center, Moffett Field, California.

On approximately March 12, 1999 Interstate entered into a subcontract agreement with Siemens Building Technologies, Inc. under which Siemens agreed to furnish all labor, supervision, materials, tools, equipment and supplies necessary to perform and to perform all work set forth in section 2 of the prime contract for the construction of Process Cooling System, Building N258 between Interstate and NASA. The contract between Interstate and Siemens was for the amount of $351,725.00. Change Order Number One was issued on the contract, pursuant to which Siemens was to perform additional work control testing for the amount of $11,340.00.

Throughout the course of the Project, Siemens was required by NASA to perform extra work that was not in the course and scope of their subcontract work and incurred costs for performing such, and suffered delay damages based upon actions taken by NASA. As a result of the extra work performed by Siemens and the delay damages incurred by Siemens during the performance of the contract Siemens sought recovery from Interstate for the extra work and delay damages. On or about

March 20, 2000 Interstate Construction, Inc. on behalf of Siemens Building Technologies, Inc., submitted an informal claim to NASA for extra work and delay damages suffered by Siemens in their performance of the above-referenced project. Their claim was rejected by NASA and Siemens subsequently brought an action in federal court against Interstate and its surety under the Miller Act. Judgment was entered against Interstate by the United States District Court for the Northern District of California in the amount of $168,744.50. The judgment consisted of both delay and extra work damages claimed by Siemens for work they performed on the project. The jury found that NASA was the cause of the extra work damages in the amount of $119,487.84 and NASA and Interstate were jointly at fault for the delay damages in the amount of $9,989.76. The amount of the total judgment included prejudgment interest and statutory costs. Interstate paid the Judgment in full.

Pursuant to the Changes Clause of the Contract, if any change "causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer shall make an equitable adjustment and modify the contract in writing." Therefore, pursuant to the Changes Clause of the Contract and the pass-through doctrine of *Severin*, Interstate hereby requests a contracting officer's decision on the claims by Siemens for an equitable adjustment to the contract for extra work and delay damages for which Interstate has been liable. The specifics of the claims are set out as follows:

**Claim No. 1 – Phase "D" Delays**

In the amount of $9,989.76. Siemens was notified that on Saturday, January 29, 2000 at 8:00 a.m. the piping work would be complete and the new system would go online with the new software. On January 29, 2000 Siemens was present to implement and to exercise equipment. Interstate completed their portion of the work on January 29, 2000 at 6:30 a.m. and notified Siemens personnel to proceed with initial startup of systems. From January 29, 2000 until February 1, 2000 at 11:40 a.m. Siemens was unable to fully test the approved validated chiller software program due to mechanical deficiencies and secondary chilled water loop flow problems. Some of the deficiencies encountered by Siemens were as follows: (1) Siemens was unable to run Chillers, pumps and cooling tower fans in automatic mode because software sequences would turn the chiller off due to no heat load within the building. (2) On Sunday January 30, 2000 at 8:00 p.m. pneumatic mixing valve #MOV401 was identified nonfunctional due to excessive condensation within the pilot positioner, which had to be replaced by others. (3) On Sunday January 30, 2000 at 11:00 p.m. it was determined through field investigations that there was no water flow at the secondary high temp loop due to the NASA lock-out service tag on an unidentified two-way valve, which was opened by NASA personnel on Monday January 31, 2000 at around 8:00 a.m. (4) On Monday January 31, 2000 at 3:00 a.m., JCI temporarily installed two hose bibs to secondary high temp loop to facilitate some water flow. On Tuesday February 1, 2000 at 11:30 a.m. the system was checked out and the indications were that the system was operational. At that time Cray computer personnel initiated startup procedures. Siemens chiller sequence was back to normal automatic operations and at 11:40 a.m. the Cray computer personnel confirmed that their system was up and running. The delay damages were calculated as follows: (1) 16 regular hours and three time-and-a-half overtime hours

for the project engineer; (2) 16 regular hours and three time-and-a-half overtime hours for the DQMS engineer; (3) six regular hours for the senior system engineer; (4) six regular hours for the system specialist; (5) eight regular hours for one service specialist; (6) four regular hours for one service specialist; (7) four regular hours and six time-and-a-half overtime hours for one system specialist; (8) eight regular hours for a support engineer for a total of 68 regular hours at $96.00/hour and 12 time-and-a-half overtime hours at $144.00/hour for a total of $8,256.00 plus a 10% overhead at $825.60 at a 10% profit at $908.16 for a total sum of $9,989.76.

**Claim No. 2 – 24 hour watch**

In the amount of $74,632.80. On February 3, 2000 Bill Eismann of NASA sent an email to A.C. Mosher of NASA and forwarded to others on the Project including Interstate and Siemens, concerning around the clock attendants on the Project. The email, in part, stated that Mr. Eismann spoke with Glenn Leggoe of Siemens and that Mr. Eismann was assured that Siemens would continue to provide around the clock supervision of the control system until the problem was identified and corrected. Mr. Eismann stated that Mr. Leggoe proposed to develop a manual mode operating sequence that the Siemens operator could implement in case the system failed while in automatic control mode. On February 7, 2000 Mr. Leggoe responded to Mr. Eismann's February 3, 2000 seeking clarification. On February 11, 2000 Interstate Construction received a letter from Ms. Vivienne Gallo regarding the continued provision by Siemens of round-the-clock monitoring of the system. The letter stated, "I believe that the control system still requires the attendance of a round-the-clock Siemens Technician to monitor the chiller plant and to recover from software related system failures...I strongly suggest that the work schedule remain unchanged until such time as the control system reliability can be satisfactorily demonstrated." It was also requested that Siemens and Interstate attend a meeting on February 25, 2000 with NASA. Investigations by Siemens determined that failures starting at 7:32 a.m. on February 3, 2000 were due to excessive network communication traffic on the existing NASA site trunk configuration. On February 15, 2000 Interstate and Siemens met with NASA to discuss issues that had arisen in the course of the Project. During the meeting Siemens was directed by NASA to continue the round-the-clock attendant. A 15-hour shutdown of the system was scheduled to begin on February 21, 2000 at 00:01. Siemens was to document the sequence of events before and during the shutdown as well as perform other additional work. During the meeting, Siemens informed NASA that it had identified two operational issues. The first issue was that program control of the chiller plant had been negatively impacted by trunk communication issues on the BLN which connects nodes added as part of the Project and the existing trunk #03 on the site. The second issue was that the database integrity was compromised by network configuration changes by an unknown resource, made immediately prior to the February 3, 2000 7:32 a.m. chiller shutdown with resulting continuing unstable program operation. At the February 15, 2000 meeting, Siemens presented solutions to the problems it had identified. Siemens suggested changing the controller configuration to minimize dependency on network communication for control functions and relocating the chiller control program ("N258 Chillers") and the VFD valve calculation program ("Modbus Conversions") to the Open Processor with Modbus Master Gateway, addressed as Node 50. Siemens also suggested relocating the majority of the proofs program ("N258 Misc proofs") to the Modbus gateway and changing the virtual or unbundled points as required for

the VFDs. Siemens suggested relocating portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51 and change virtual or unbundled points as required for the Chillers. Siemens also suggested verifying the database for the project and implementing a "reformat" or cold-start and download of Nodes 50 and 51 to eliminate all database corruption and changing the BLN trunk wiring to eliminate "T-Taps", implementing true "daisy-chain" wiring. And finally, Siemens suggested changing the Workstation configuration for the two PCs, reconfiguring the current Node 97 to be a server on the BLN, reconfiguring the current Node 99 to be a client communicating with Server node 97, and no longer residing on the BLN. NASA agreed with Siemens' proposed solutions and instructed Interstate and Siemens to proceed with implementation. Siemens continued the round-the-clock watch until February 23, 2000 when it was released from the watch by NASA. The charges incurred by Siemens for the round-the-clock watch are as follows: (1) 112 regular hours, 27 time-and-a-half overtime hours and 12.5 double time overtime hours for System Specialist Dan Walden; (2) 112 regular hours and 36 time-and-a-half overtime hours for System Specialist Brian Bullock; (3) 64 regular hours, 18 time-and-a-half overtime hours and 21 double time overtime hours for Senior System Engineer Tim Jozsa; (4) 32 regular hours and 11 time-and-a-half overtime hours for System Specialist Jeff Sim; (5) 9 time-and-a-half overtime hours and 16 double time hours for Engineering Specialist Jason Murray; (6) 8 time-and-a-half overtime hours and 12 double time overtime hours for Service Specialist Nathan Santora; (7) 8 time-and-a-half overtime hours for System Specialist Larry Daley; (8) 16 time-and-a-half overtime hours for System Specialist Phil Carswell. There was a total of 320 regular hours at $96/hour for a total amount of $30,720.00; 133 time-and-a-half overtime hours at $144/hour for a total amount of $19,152.00 and 61.5 double time overtime hours at $192/hour for a total amount of $11,808 as well as a 10% overhead in the amount of $6,168 and a 10% profit of $6,684.80 for a final amount of $74,632.80.

**<u>Claim No. 3 – Solution to NASA BLN Cabling Problem and Modify PPCL to Enhance COV's</u>**

In the amount of $39,744.00. NASA requested that Siemens and Interstate provide a written, detailed description of all N258 chiller plant system failures since the start of Work Phase E (00:00 Monday, January 31, 2000) and list all identified and suspected causes for the failure and the corrective action(s) taken to fix the problem. As discussed above, Siemens presented a proposed solution to NASA at the February 15, 2000 meeting which NASA accepted and directed Interstate and Siemens to begin implementing the proposed solution. On February 18, 2000 Interstate/Siemens implemented the proposed solution as follows: (1) Changed the controller configuration to minimize dependency on network communication for control functions. Relocated the chiller control program ("N258 Chillers") and the VFD value calculation program ("Modbus Conversions") to the Open processor with Modbus Master Gateway, addressed as Node 50. Relocated the majority of the proofs program ("N258 Misc. proofs") to the Modbus gateway. Changed virtual or unbundled points as required for the VFDs. Relocated portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51. Changed virtual or unbundled points as required for the Chillers. (2) Verified the database for the project and implemented a cold-start and download of Nodes 50 and 51 to eliminate all database corruption. (3) Changed the Workstation configuration

for the two PCs. Reconfigured the Node 90 to be a server on the BLN and reconfigured the Node 99 location to be a client communicating with Server Node 98 and no longer residing on the BLN. (4) Modified the applicable Volume #2 Field Test documents for verifying points and automatic system operations. Implementing the proposed solution resulting in the following costs: (1) 56 regular hours, 4 time-and-a-half overtime hours and 20 double time overtime hours for Project Engineer Vinh Lam; (2) 92 regular hours, 23 time-and-a-half overtime hours and 36 double time hours for DQMS Engineer Glen Leggoe; (3) 28 regular hours for Senior Software Engineer Brian Esser; (4) 32 regular hours and 2 time-and-a-half overtime hours for Senior System Engineer Tim Jozsa; (5) 10 regular hours for Engineering Specialist Jason Murray; (6) 16 time-and-a-half overtime hours for System Specialist Phil Carswell for a total of 218 regular hours at $92/hour for an amount of $20,928; a total of 56 time-and-a-half overtime hours at $144/hour for an amount of $8,065; a total of 56 double time overtime hours at $192/hour; 10% overhead for an amount of $3,974.40 and 10% profit for an amount of $4,371.84 for a final amount of $39,744.00.

**Claim No. 4 – Network Card Configuration and Delays**

For the amount of $9,467.80. In the process of implementing the proposed solution as discussed above, Siemens encountered an unexpected delay tying to load the newly purchased NT Server software onto the NASA supplied computer as a result of a defective network card in the NASA supplied computer. In order to get the related systems back online the network card from the NASA supplied computer at 258 room 227 was removed and installed into the NASA supplied computer that is temporarily located in the chiller room. The defective network card resulted in training delay for device location and system operations and extended overtime labor in getting the system back to semi-automatic mode. The component failure and time lost resulted in an inability to configure and startup the client computer and complete its configuration on the MLN to the server. This delay resulted in the following costs: (1) 8 time-and-a-half overtime hours for Project Engineer Vinh Lam; (2) 8 time-and-a-half overtime hours for DQMS Engineer Glen Leggoe; (3) 8 time-and-a-half overtime hours for System Specialist Brian Bullock; (4) 8 time-and-a-half overtime hours for Senior System Engineer Tim Jozsa; (5) 7 regular hours for Engineer Specialist Jason Perry; (6) 14 regular hours and 3 time-and-a-half overtime hours for Engineer Specialist Eric Mino for a total of 21 regular hours at $96/hour for an amount of $2,016; 35 time-and-a-half overtime hours at $144/hour for an amount of $5,040; overhead of 10% for an amount of $705.60; profit of 10% for an amount of $776.16 as well as $930.04 of material costs for a total of $9,467.80. NASA did not dispute this claim in the October 3, 2000 letter, however, NASA never paid Interstate/Siemens on the claim.

**Claim No. 5 – 15-hour Chiller Shutdown**

For an amount of $5,111.04. On February 21, 2000 at 00:01 there was a scheduled 15-hour shutdown of the system during which Siemens personnel was required to be present which resulted in the following costs: (1) 11 double time overtime hours for Project Engineer Vinh Lam; (2) 11 double time overtime hours for Senior System Engineer Tim Jozsa for a total of 22 double time overtime hours at $192/hour for a total amount of $4,224 and a 10% overhead in the amount of

$422.40 and a 10% profit of $464.64 for a final amount of $5,111.04.

**PC No. 16 – Enhanced Alarming**

For an amount of $4,588.32. Siemens implemented Enhanced Alarms based on NASA's recommendations and on observations of field conditions, for a large number of alarmable points. This resulted in 8 regular hours at $96/hour, 9 time-and-a-half overtime hours at $144.00/hour and 9 double time overtime hours at $192/hour plus 10% overhead of $379.20 and 10% profit of $417.12 for a total of $4,588.32. NASA did not dispute this claim in the October 3, 2000 letter, however, NASA never paid Interstate/Siemens on the claim.

On October 3, 2000 NASA rejected claim numbers 1, 2, 3 and 5. Based upon NASA's rejection of the claims and NASA's failure to make an equitable adjustment or issue change orders for any of the claims discussed above, Siemens filed an action in Federal District Court against Interstate and its bonding company under the Miller Act. Siemens obtained a judgment in Federal District Court against Interstate and Interstate paid the judgment. Interstate is now requesting a contracting officer's decision on the claims stated above as pass through claims for which Interstate was liable.

Sincerely,

ERIN E. MACKEY

I certify that this claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

ROBERT RIEDEL, President
INTERSTATE CONSTRUCTION, INC.

# THURBON & McHANEY, L. P.
## Attorneys at Law

Robert E. Thurbon
Jacqueline S. McHaney
Erin E. Mackey
Joel M. Van Parys

**E-Mail**
tmclp@sbcglobal.net

**PLEASE RESPOND TO:**
2356 Gold Meadow Way, Suite 160
Gold River, CA 95670

**Sacramento Office:**
2356 Gold Meadow Way, Suite 160
Gold River, CA 95670
Tel: (916) 636-1840
Fax: (916) 638-7530
**Ventura Office:**
1445 Donlon Street, Suite 6
Ventura, CA 93003-5639
Tel: (805) 639-3031
Fax: (805) 639-3033

June 11, 2004

Ms. Vivienne Gallo, Contracting Officer
National Aeronautics and Space Administration
Ames Research Center
Moffett Field, California 94035-1000

Re: Process Cooling System, Building N258
Contract # NAS2-99039
Amended Request for Contracting Officer's Decision

Dear Ms. Gallo:

As you are aware, on approximately February 8, 1999 Interstate Construction, Inc. and NASA entered into contract number NAS2-99039 (VDG) under which Interstate was to perform a work of improvement identified as Process Cooling System, Building N258 at NASA-Ames Research Center, Moffett Field, California.

On approximately March 12, 1999 Interstate entered into a subcontract agreement with Siemens Building Technologies, Inc. under which Siemens agreed to furnish all labor, supervision, materials, tools, equipment and supplies necessary to perform and to perform all work set forth in section 2 of the prime contract for the construction of Process Cooling System, Building N258 between Interstate and NASA. The contract between Interstate and Siemens was for the amount of $351,725.00. Change Order Number One was issued on the contract, pursuant to which Siemens was to perform additional work control testing for the amount of $11,340.00.

Throughout the course of the Project, Siemens was required by NASA to perform extra work that was not in the course and scope of their subcontract work and incurred costs for performing such, and suffered delay damages based upon actions taken by NASA. As a result of the extra work performed by Siemens and the delay damages incurred by Siemens during the performance of the contract Siemens sought recovery from Interstate for the extra work and delay damages. On or about

March 20, 2000 Interstate Construction, Inc. on behalf of Siemens Building Technologies, Inc., submitted an informal claim to NASA for extra work and delay damages suffered by Siemens in their performance of the above-referenced project. Their claim was rejected by NASA and Siemens subsequently brought an action in federal court against Interstate and its surety under the Miller Act. Judgment was entered against Interstate by the United States District Court for the Northern District of California in the amount of $168,744.50. The judgment consisted of both delay and extra work damages claimed by Siemens for work they performed on the project. The jury found that NASA was the cause of the extra work damages in the amount of $119,487.84 and NASA and Interstate were jointly at fault for the delay damages in the amount of $9,989.76. The amount of the total judgment included prejudgment interest and statutory costs. Interstate paid the Judgment in full.

Pursuant to the Changes Clause of the Contract, if any change "causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer shall make an equitable adjustment and modify the contract in writing." Therefore, pursuant to the Changes Clause of the Contract and the pass-through doctrine of *Severin*, Interstate hereby requests a contracting officer's decision on the claims by Siemens for an equitable adjustment to the contract for extra work and delay damages for which Interstate has been liable. The specifics of the claims are set out as follows:

**Claim No. 1 – Phase "D" Delays**

In the amount of $9,989.76. Siemens was notified that on Saturday, January 29, 2000 at 8:00 a.m. the piping work would be complete and the new system would go online with the new software. On January 29, 2000 Siemens was present to implement and to exercise equipment. Interstate completed their portion of the work on January 29, 2000 at 6:30 a.m. and notified Siemens personnel to proceed with initial startup of systems. From January 29, 2000 until February 1, 2000 at 11:40 a.m. Siemens was unable to fully test the approved validated chiller software program due to mechanical deficiencies and secondary chilled water loop flow problems. Some of the deficiencies encountered by Siemens were as follows: (1) Siemens was unable to run Chillers, pumps and cooling tower fans in automatic mode because software sequences would turn the chiller off due to no heat load within the building. (2) On Sunday January 30, 2000 at 8:00 p.m. pneumatic mixing valve #MOV401 was identified nonfunctional due to excessive condensation within the pilot positioner, which had to be replaced by others. (3) On Sunday January 30, 2000 at 11:00 p.m. it was determined through field investigations that there was no water flow at the secondary high temp loop due to the NASA lock-out service tag on an unidentified two-way valve, which was opened by NASA personnel on Monday January 31, 2000 at around 8:00 a.m. (4) On Monday January 31, 2000 at 3:00 a.m., JCI temporarily installed two hose bibs to secondary high temp loop to facilitate some water flow. On Tuesday February 1, 2000 at 11:30 a.m. the system was checked out and the indications were that the system was operational. At that time Cray computer personnel initiated startup procedures. Siemens chiller sequence was back to normal automatic operations and at 11:40 a.m. the Cray computer personnel confirmed that their system was up and running. The delay damages were calculated as follows: (1) 16 regular hours and three time-and-a-half overtime hours

for the project engineer; (2) 16 regular hours and three time-and-a-half overtime hours for the DQMS engineer; (3) six regular hours for the senior system engineer; (4) six regular hours for the system specialist; (5) eight regular hours for one service specialist; (6) four regular hours for one service specialist; (7) four regular hours and six time-and-a-half overtime hours for one system specialist; (8) eight regular hours for a support engineer for a total of 68 regular hours at $96.00/hour and 12 time-and-a-half overtime hours at $144.00/hour for a total of $8,256.00 plus a 10% overhead at $825.60 at a 10% profit at $908.16 for a total sum of $9,989.76.

**Claim No. 2 – 24 hour watch**

In the amount of $74,632.80. On February 3, 2000 Bill Eismann of NASA sent an email to A.C. Mosher of NASA and forwarded to others on the Project including Interstate and Siemens, concerning around the clock attendants on the Project. The email, in part, stated that Mr. Eismann spoke with Glenn Leggoe of Siemens and that Mr. Eismann was assured that Siemens would continue to provide around the clock supervision of the control system until the problem was identified and corrected. Mr. Eismann stated that Mr. Leggoe proposed to develop a manual mode operating sequence that the Siemens operator could implement in case the system failed while in automatic control mode. On February 7, 2000 Mr. Leggoe responded to Mr. Eismann's February 3, 2000 seeking clarification. On February 11, 2000 Interstate Construction received a letter from Ms. Vivienne Gallo regarding the continued provision by Siemens of round-the-clock monitoring of the system. The letter stated, "I believe that the control system still requires the attendance of a round-the-clock Siemens Technician to monitor the chiller plant and to recover from software related system failures...I strongly suggest that the work schedule remain unchanged until such time as the control system reliability can be satisfactorily demonstrated." It was also requested that Siemens and Interstate attend a meeting on February 25, 2000 with NASA. Investigations by Siemens determined that failures starting at 7:32 a.m. on February 3, 2000 were due to excessive network communication traffic on the existing NASA site trunk configuration. On February 15, 2000 Interstate and Siemens met with NASA to discuss issues that had arisen in the course of the Project. During the meeting Siemens was directed by NASA to continue the round-the-clock attendant. A 15-hour shutdown of the system was scheduled to begin on February 21, 2000 at 00:01. Siemens was to document the sequence of events before and during the shutdown as well as perform other additional work. During the meeting, Siemens informed NASA that it had identified two operational issues. The first issue was that program control of the chiller plant had been negatively impacted by trunk communication issues on the BLN which connects nodes added as part of the Project and the existing trunk #03 on the site. The second issue was that the database integrity was compromised by network configuration changes by an unknown resource, made immediately prior to the February 3, 2000 7:32 a.m. chiller shutdown with resulting continuing unstable program operation. At the February 15, 2000 meeting, Siemens presented solutions to the problems it had identified. Siemens suggested changing the controller configuration to minimize dependency on network communication for control functions and relocating the chiller control program ("N258 Chillers") and the VFD valve calculation program ("Modbus Conversions") to the Open Processor with Modbus Master Gateway, addressed as Node 50. Siemens also suggested relocating the majority of the proofs program ("N258 Misc proofs") to the Modbus gateway and changing the virtual or unbundled points as required for

the VFDs. Siemens suggested relocating portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51 and change virtual or unbundled points as required for the Chillers. Siemens also suggested verifying the database for the project and implementing a "reformat" or cold-start and download of Nodes 50 and 51 to eliminate all database corruption and changing the BLN trunk wiring to eliminate "T-Taps", implementing true "daisy-chain" wiring. And finally, Siemens suggested changing the Workstation configuration for the two PCs, reconfiguring the current Node 97 to be a server on the BLN, reconfiguring the current Node 99 to be a client communicating with Server node 97, and no longer residing on the BLN. NASA agreed with Siemens' proposed solutions and instructed Interstate and Siemens to proceed with implementation. Siemens continued the round-the-clock watch until February 23, 2000 when it was released from the watch by NASA. The charges incurred by Siemens for the round-the-clock watch are as follows: (1) 112 regular hours, 27 time-and-a-half overtime hours and 12.5 double time overtime hours for System Specialist Dan Walden; (2) 112 regular hours and 36 time-and-a-half overtime hours for System Specialist Brian Bullock; (3) 64 regular hours, 18 time-and-a-half overtime hours and 21 double time overtime hours for Senior System Engineer Tim Jozsa; (4) 32 regular hours and 11 time-and-a-half overtime hours for System Specialist Jeff Sim; (5) 9 time-and-a-half overtime hours and 16 double time hours for Engineering Specialist Jason Murray; (6) 8 time-and-a-half overtime hours and 12 double time overtime hours for Service Specialist Nathan Santora; (7) 8 time-and-a-half overtime hours for System Specialist Larry Daley; (8) 16 time-and-a-half overtime hours for System Specialist Phil Carswell. There was a total of 320 regular hours at \$96/hour for a total amount of \$30,720.00; 133 time-and-a-half overtime hours at \$144/hour for a total amount of \$19,152.00 and 61.5 double time overtime hours at \$192/hour for a total amount of \$11,808 as well as a 10% overhead in the amount of \$6,168 and a 10% profit of \$6,684.80 for a final amount of \$74,632.80.

**Claim No. 3 – Solution to NASA BLN Cabling Problem and Modify PPCL to Enhance COV's**

In the amount of \$39,744.00. NASA requested that Siemens and Interstate provide a written, detailed description of all N258 chiller plant system failures since the start of Work Phase E (00:00 Monday, January 31, 2000) and list all identified and suspected causes for the failure and the corrective action(s) taken to fix the problem. As discussed above, Siemens presented a proposed solution to NASA at the February 15, 2000 meeting which NASA accepted and directed Interstate and Siemens to begin implementing the proposed solution. On February 18, 2000 Interstate/Siemens implemented the proposed solution as follows: (1) Changed the controller configuration to minimize dependency on network communication for control functions. Relocated the chiller control program ("N258 Chillers") and the VFD value calculation program ("Modbus Conversions") to the Open processor with Modbus Master Gateway, addressed as Node 50. Relocated the majority of the proofs program ("N258 Misc. proofs") to the Modbus gateway. Changed virtual or unbundled points as required for the VFDs. Relocated portions of the proofs program as needed to the Open Processor with Carrier Gateway, addressed as Node 51. Changed virtual or unbundled points as required for the Chillers. (2) Verified the database for the project and implemented a cold-start and download of Nodes 50 and 51 to eliminate all database corruption. (3) Changed the Workstation configuration

for the two PCs. Reconfigured the Node 90 to be a server on the BLN and reconfigured the Node 99 location to be a client communicating with Server Node 98 and no longer residing on the BLN. (4) Modified the applicable Volume #2 Field Test documents for verifying points and automatic system operations. Implementing the proposed solution resulting in the following costs: (1) 56 regular hours, 4 time-and-a-half overtime hours and 20 double time overtime hours for Project Engineer Vinh Lam; (2) 92 regular hours, 23 time-and-a-half overtime hours and 36 double time hours for DQMS Engineer Glen Leggoe; (3) 28 regular hours for Senior Software Engineer Brian Esser; (4) 32 regular hours and 2 time-and-a-half overtime hours for Senior System Engineer Tim Jozsa; (5) 10 regular hours for Engineering Specialist Jason Murray; (6) 16 time-and-a-half overtime hours for System Specialist Phil Carswell for a total of 218 regular hours at $92/hour for an amount of $20,928; a total of 56 time-and-a-half overtime hours at $144/hour for an amount of $8,065; a total of 56 double time overtime hours at $192/hour; 10% overhead for an amount of $3,974.40 and 10% profit for an amount of $4,371.84 for a final amount of $39,744.00.

**Claim No. 4 – Network Card Configuration and Delays**

For the amount of $9,467.80. In the process of implementing the proposed solution as discussed above, Siemens encountered an unexpected delay tying to load the newly purchased NT Server software onto the NASA supplied computer as a result of a defective network card in the NASA supplied computer. In order to get the related systems back online the network card from the NASA supplied computer at 258 room 227 was removed and installed into the NASA supplied computer that is temporarily located in the chiller room. The defective network card resulted in training delay for device location and system operations and extended overtime labor in getting the system back to semi-automatic mode. The component failure and time lost resulted in an inability to configure and startup the client computer and complete its configuration on the MLN to the server. This delay resulted in the following costs: (1) 8 time-and-a-half overtime hours for Project Engineer Vinh Lam; (2) 8 time-and-a-half overtime hours for DQMS Engineer Glen Leggoe; (3) 8 time-and-a-half overtime hours for System Specialist Brian Bullock; (4) 8 time-and-a-half overtime hours for Senior System Engineer Tim Jozsa; (5) 7 regular hours for Engineer Specialist Jason Perry; (6) 14 regular hours and 3 time-and-a-half overtime hours for Engineer Specialist Eric Mino for a total of 21 regular hours at $96/hour for an amount of $2,016; 35 time-and-a-half overtime hours at $144/hour for an amount of $5,040; overhead of 10% for an amount of $705.60; profit of 10% for an amount of $776.16 as well as $930.04 of material costs for a total of $9,467.80. NASA did not dispute this claim in the October 3, 2000 letter, however, NASA never paid Interstate/Siemens on the claim.

**Claim No. 5 – 15-hour Chiller Shutdown**

For an amount of $5,111.04. On February 21, 2000 at 00:01 there was a scheduled 15-hour shutdown of the system during which Siemens personnel was required to be present which resulted in the following costs: (1) 11 double time overtime hours for Project Engineer Vinh Lam; (2) 11 double time overtime hours for Senior System Engineer Tim Jozsa for a total of 22 double time overtime hours at $192/hour for a total amount of $4,224 and a 10% overhead in the amount of

$422.40 and a 10% profit of $464.64 for a final amount of $5,111.04.

**PC No. 16 – Enhanced Alarming**

For an amount of $4,588.32. Siemens implemented Enhanced Alarms based on NASA's recommendations and on observations of field conditions, for a large number of alarmable points. This resulted in 8 regular hours at $96/hour, 9 time-and-a-half overtime hours at $144.00/hour and 9 double time overtime hours at $192/hour plus 10% overhead of $379.20 and 10% profit of $417.12 for a total of $4,588.32. NASA did not dispute this claim in the October 3, 2000 letter, however, NASA never paid Interstate/Siemens on the claim.

On October 3, 2000 NASA rejected claim numbers 1, 2, 3 and 5. Based upon NASA's rejection of the claims and NASA's failure to make an equitable adjustment or issue change orders for any of the claims discussed above, Siemens filed an action in Federal District Court against Interstate and its bonding company under the Miller Act. Siemens obtained a judgment in Federal District Court against Interstate and Interstate paid the judgment. Interstate is now requesting a contracting officer's decision on the claims stated above as pass through claims for which Interstate was liable.

**Attorneys Fees and Costs**

For an amount of $56,000.00. Interstate was forced to defend the Complaint brought in Federal District Court by Siemens on the above-referenced claims and change order. Judgment was entered against Interstate Construction in that matter in favor of Siemens. Interstate incurred $53,000.00 in attorneys fees and $3,000.00 in costs defending the action in Federal District Court.

Sincerely,

Erin Mackey

ERIN E. MACKEY

I certify that this claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Erin Mackey

ERIN E. MACKEY
Attorney for INTERSTATE CONSTRUCTION

RECEIVED

JUL 1 9 2004

THURBON & McHANEY, LLP

National Aeronautics and
Space Administration

**Ames Research Center**
Moffett Field, CA 94035-1000

Reply to Attn of: DL: 202A-4

July 14, 2004

Erin E. Mackey
Thurbon & McHaney, L.P.
2356 Gold Meadow Way
Suite 160
Gold River, California 95670

Re: Claim of Interstate Construction, Inc.
NASA contract NAS2-99039

Dear Ms. Mackey:

On May 12, 2004 I received a telephone call from you inquiring about the status of the request of Interstate Construction, Inc. (Interstate) for a Contracting Officer's Final Decision regarding its claims on the subject contract. You stated that your office mailed the request to the Contracting Officer, Vivienne Gallo on March 24, 2004. Upon checking with Ms. Gallo, she informed me that she never received your March 24, 2004 letter. I informed you of that fact and the following day, May 13, 2004, you mailed a copy of the March 24, 2004 letter to both Ms. Gallo and me.

Interstate's request for a Final Decision contained six claims and was certified by Robert Riedel, President of Interstate. After reviewing the March 24 letter, the Contracting Officer informed me that two of the claims (Claim #4 and PC #16) were paid to Interstate via bilateral contract modifications in 2000. I informed you of these prior payments by telephone on May 26, 2004.

On June 11, 2004, you sent another letter to Ms. Gallo. This letter was designated, "Amended Request for Contracting Officer's Decision". It contained the same six claims as the March 24 letter and did not drop the two claims that had previously been paid by

NASA. Additionally, the June 11 letter added a seventh claim for Attorneys fees and costs. This Amended Request contained a certification signed by you as Attorney for Interstate Construction.

I am formally informing you and your client, Interstate, that NASA paid Interstate's Claim # 4 (as PC-17) in the amount of $9,560.00 on October 27, 2000 in bilateral contract Modification number 7. NASA paid Interstate's Claim PC-16 in the amount of $4,171.00 on June 27, 2000 in bilateral contract Modification number 6. A bilateral contract modification means that Interstate signed the modification, agreeing to the amount paid and releasing all future claims related to the items in the modification. Therefore, Interstate had actual notice that NASA paid these two claims in 2000.

Based upon the evidence of prior payment of these two claims, I strongly suggest that Interstate consider submitting a revised request for a Contracting Officer's Decision. If a revised request for a Contracting Officer's Decision is submitted to NASA, it must be properly certified in accordance with the Contract Disputes Act.

For future reference, to try to avoid mail delivery problems, all correspondence to Vivienne Gallo must include "Mail Stop 19-12" in her address.

Sincerely,

Alexander Barna

Alexander Barna
Associate Chief Counsel for Claims and Litigation
(650) 604-5074

cc: V. Gallo, Contracting Officer

# THURBON & McHANEY, L. P.
## Attorneys at Law

Robert E. Thurbon
Jacqueline S. McHaney
Erin E. Mackey
Joel M. Van Parys

**E-Mail**
tmclp@sbcglobal.net

**PLEASE RESPOND TO:**
2356 Gold Meadow Way, Suite 160
Gold River, CA 95670

**Sacramento Office:**
2356 Gold Meadow Way, Suite 160
Gold River, CA 95670
Tel: (916) 636-1840
Fax: (916) 638-7530
**Ventura Office:**
1445 Donlon Street, Suite 6
Ventura, CA 93003-5639
Tel: (805) 639-3031
Fax: (805) 639-3033

August 4, 2004

Mr. Alexander Barna
Associate Chief Counsel for Claims
and Litigation
National Aeronautics and Space Administration
Ames Research Center
DL: 202A-4
Moffett Field, CA 94035-1000

Re: Interstate Construction, Inc.
Request for Contracting Officer's Decision
Process Cooling System, Building N258
Contract # NAS2-99039

Dear Mr. Barna:

This letter is in response to your letter of July 14 2004 regarding the pending Amended Request for Contracting Officer's Decision.

As you are aware, Interstate previously filed a claim in the Court of Federal Claims regarding this matter. Subsequent to a conference with the Judge in the matter, the Second Amended Complaint filed in the matter was dismissed in order to allow Interstate to file another Request for Contracting Officer's Decision with NASA that more fully addressed the specific claims, rather than based upon the previous action in District Court between subcontractor Siemens and Interstate. The Judge strongly encouraged settlement of the matter as it was her opinion that this was not a matter that should be in the Courts. The Judge strenuously encouraged the Government to take a good and hard look at the actual merits of the claims prior to issuing its decision as she did not agree with the reasoning of the prior Contracting Officer's Decision as it did not address the merits of the claims. The Judge also ruled on the Government's Motion to Dismiss based on improper certification of the original Request for Contracting Officer's Decision that certification of the claim by Interstate's attorneys is proper certification. The Judge also made clear her frustration with the Government and their multiple Motions to Dismiss and expressed that if the matter came back to the Court and Interstate recovered anything, she would award attorneys fees to Interstate based on the Equal Access to Justice Act.

On March 24, 2004, in light of the conference with the Judge in the Court of Federal

Claims Action, a new Request for Contracting Officer's Decision was mailed to Vivienne Gallo. As you stated to me in your May 12, 2004 telephone call, that request was nowhere to be found. As stated in your letter, a copy was then mailed to both you and Ms. Gallo. As also stated in your letter, on June 11, 2004 an amended request was sent to Ms. Gallo including a claim for attorneys fees. Pursuant to the Contract Disputes Act, Ms. Gallo has 60 days to inform Interstate of her decision on the claims, or to inform Interstate of a reasonable time in which she will issue her decision.

Contrary to your request, Interstate will not file an additional Amended Request for Contracting Officer's Decision deleting the two referenced claims. If it is NASA's belief that Claim #4 and Claim PC-16 have been previously paid, the Contracting Officer may deny the claims and give reasons for the denial in the Contracting Officer's Decision. Otherwise, you may make a formal settlement offer that does not include those claims. You previously asked me what my client was willing to take. At this point, my client is seeking the full amount, however, we will be willing to consider any offer that you have. Your further suggestion that the claim be properly certified in accordance with the Contract Disputes Act is unfounded. As previously mentioned, the Judge in the matter previously filed ruled that certification by the attorney is proper. Therefore, Interstate will not submit a revised Request for Contracting Officer's Decision pursuant to your request, but will instead await a Contracting Officer's Decision in response to its June 11, 2004 Request, or a settlement offer from NASA. If a Decision is not received by the deadline imposed by the Contract Disputes Act or, in the alternative, if the parties have not engaged in serious settlement discussions, Interstate will re-file in the Court of Federal Claims.

Your anticipated cooperation in this matter is appreciated.

Sincerely,

ERIN E. MACKEY

National Aeronautics and
Space Administration

**Ames Research Center**
Moffett Field, California 94035-1000

Reply to Attn of: PFF: 213-13 --FAXED-- August 31, 2004

Thurbon & McHaney, Attorneys at Law
2356 Gold Meadow Way, Suite 160
Gold River, CA 95670

Subject: Contract NAS2-99039, Process Cooling System, Building N258, NASA-Ames Research Center, Moffett Field, California; Contracting Officer's Final Decision

Ref: (a) Letter from Thurbon & McHaney dated June 11, 2004

This is the final decision of the Contracting Officer pursuant to the Disputes Clause. This decision is in response to your claim for additional costs incurred under the subject contract.

BACKGROUND

The contract (Base Bid) was awarded to Interstate Construction, Incorporated, (Interstate) 3909 Security Park Drive, Rancho Cordova, CA 95742 on February 8, 1999 in the amount of $2,085,189.00.

The contract requirements are as follows:

Base Bid – The project entitled "Process Cooling System, N258" consists of the replacement of four centrifugal chillers and modifications of the chilled water system to provide primary and secondary loop pumping systems in the main computer facility at NASA-Ames Research Center, Moffett Field, California. Demolition work includes the removal of four 700-ton chillers, chilled water piping, electrical motors and starters, control system components and wiring. New work for the automated chiller plant includes the installation of four new 450 ton R-134a centrifugal chillers, primary and secondary loop chilled water piping, new pump and cooling tower fan motors with variable frequency drives, pipe insulation, refrigerant leak detection and exhaust systems, Facility Management Control System (FMCS) hardware and software, electrical services, and system balancing and testing. Ancillary work includes the rental, installation, piping and wiring of three 160 ton and three 240 ton temporary outdoor air cooled chillers to provide the facility with chilled water during the actual time and that the mechanical room equipment is shutdown for construction. Phased construction and construction activities around operating equipment is required and the contract includes critical construction scheduling milestones to minimize impacting facility operations during construction.

RESPONSE TO CLAIM

In response to Reference (a), the following response is provided:

1. Siemens Claims #1, #2, #3, and #5

Siemens contends in the above four claims that Interstate Construction and NASA were solely responsible for its incurring additional project costs. However, as the following evaluation will point out, it was Siemens' inability to conduct a thorough site condition survey, produce software and hardware to properly control other system components, and adequately test its software and hardware prior to system startup that caused them to incur the expenses that are being claimed.

On several occasions during the course of the contract, Interstate Construction and NASA Project Management became frustrated with Siemens' management style and apparent lack of concern to meet critical contract milestones. Delays and control system problems were caused by Siemens' inability to provide a "Fully Automatic" chiller plant control system in accordance with the contract schedule.

(a) Siemens Claim #1, Phase "D" Delays - $9,989.76

Contract Specification Section 01110, Paragraph 1.4 required the contractor to complete Work Phase "C" by 11:59 p.m. Sunday, January 30, 2000 and proceed with "Work Phase 'E'". At about 4:45 a.m. Monday morning, the Project Manager, Bill Eismann received a call from the NASA COTR, A.C. Mosher stating that the new chiller plant was operating but was unable to cool the NAS Facility because of a lack of chilled water flow throughout the building. At about 6:30 a.m. Monday morning, Bill found that one of the main chilled water valves located near the mechanical room ceiling was still in the closed position. After opening the valve, the contractor noticed an old abandoned shutoff tag on the valve that obviously wasn't placed on the valve by anyone affiliated with the project. Furthermore, since the tag wasn't noticed until after Bill found the closed valve, it couldn't be the reason for the valve being left in the closed position at the start of "Work Phase 'D'" testing.

The problem with the valve being closed is that Siemens test personnel were unaware that the chiller plant was not supplying water to the building, which was an essential requirement to perform the specified chiller load control tests. All the chiller load control system testing that Siemens performed over the weekend prior to system startup was invalid, and Siemens failing to recognize its error, was one of the main contributing factors for the 34 hour system startup delay.

Siemens' decision to perform the specified control system field tests during the "Work Phase 'D'" weekend system shutdown did not allow them enough time for testing, troubleshooting, and repairing software coding and hardware configuration problems. NASA's design contractor, Carl Evans who was monitoring the weekend testing stated that Siemens personnel were so intent on trying to complete the required tests in the limited time available, that they totally ignored the reasons why the chillers and pumps did not operate properly. Carl agreed that if Siemens had started testing the critical pump and cooling tower fan controls several days before the "Work Phase 'D'" weekend shutdown, there would have been ample time to test and troubleshoot the chiller controls during the scheduled weekend system test. At the very least, by focusing their weekend testing on the chiller controls, Siemens and Interstate would have had ample time to evaluate, troubleshoot, find and open the closed chilled water valve that was responsible for the erroneous chiller control system test results.

All of the problems stated in Siemens' Claim #1 would not have occurred had Siemens' management started testing the control system before the "Work Phase 'D'" weekend shutdown as NASA had recommended on several occasions.

As a direct result of Siemens' marginal control system testing, the NAS Facility was not operational until late Tuesday morning, February 1, 2000, two calendar days after the required contract startup time of 11:59 p.m. Sunday, January 30, 2000.

This claim is denied.

**The amount of liquidated damages for this two-day delay, in accordance with your Contract, Specification Section 01110, Paragraph 1.4, is $10,000.00.**

(b) Siemens Claim #2, 24 Hour Watch - $74,632.80

The contractor was unable to return the chiller plant system to "fully automatic" operation by the specified 11:59 p.m. Sunday, January 30, 2000 conclusion of "Work Phase 'C'" as specified in Contract Specification Section 01110, Paragraph 1.4. In fact, the chiller plant would not operate reliably even in the "manual" mode until late Tuesday morning, February 1, 2000. Bill spent just about every minute during this 34 hour period with the Siemens personnel as they worked around the clock to analyze why the system pumps would not operate reliably, and the chillers would not stay on line even though chilled water flow throughout the building was reestablished. Siemens personnel made numerous trial and error software coding changes including the correction of an erroneously located critical "goto" programming statement, in an effort to speed up the data update rate over the essential GE variable frequency drive (VFD) controller network.

Bill stated that he is not skilled in software development, so he asked Ken Goodman, a former Siemens programmer who ran the software bench test, if he had any ideas as to why Siemens software coding required such extensive changing after having successfully completed the software bench test. (Ken is now employed at Ames with the Johnson Controls HVAC Control Group and has been involved with supporting Siemens with this project on a daily basis). Ken informed Bill that although the bench testing was successfully completed, the problems that Siemens was having controlling the other network devices suggested that these aspects of the software code were not finalized or tested satisfactorily prior to system startup. Ken also stated that he believed that Siemens Management suspected before the control system was installed in the NAS Facility that its equipment layout could have problems meeting the update rates required by the other system pump and cooling tower fan networks it was controlling.

Ken's assessments turned out to be valid. During the Tuesday, February 15, 2000 meeting, Siemens informed NASA that it was not possible for its current control panel layout to properly control the other system networks and proposed to make the necessary changes during the previously scheduled Saturday and Sunday, February 19 and 20, 2000 system shutdown. NASA agreed, and after the system was returned to operation on Sunday, February 20, 2000 it performed as specified in the "fully automatic" mode as required by Specification Section 01110, Paragraph 1.4.

The NAS Facility is a critical NASA computational resource of which the contract specified had to be operational by 11:59 p.m. Sunday, January 30, 2000. Siemens' control system was unable to operate the chiller plant reliably even in the "manual" mode until late Tuesday morning, February 1, 2000. It wasn't until Siemens completed reconfiguring its control panels during the Saturday and Sunday, February 19 and 20, 2000 system

shutdown, nineteen calendar days after the scheduled completion of "Work Phase 'C'" that the control system operated reliably in the required "fully automatic" mode.

This claim is denied.

**The amount of liquidated damages for this seventeen-day delay (Wednesday, February 2 through Friday, February 18, 2000), in accordance with your Contract, Specification Section 01110, Paragraph 1.4, is $85,000.00.**

(c) Siemens Claim #3, Solution to NASA BLN Cabling Problem & Modify PPCL to Enhance COV's - $39,744.00, AND Siemens Claim #5, 15 Hour Chiller Shutdown - $5,111.04

During the development of the contract construction documents NASA anticipated that unless the contractor's software and hardware was thoroughly tested prior to final installation, it was unlikely that it would function properly when the new chiller plant was first started. So NASA included provisions in Specification Section 01750 to require the contractor to . . . "perform a complete and comprehensive software bench test which verifies that the software executes in accordance with the System Sequence of Operation and the Specification System Test Procedure Sections". . . The inability of Siemens' software and hardware to properly control the GE variable frequency drive (VFD) controller network during the chiller plant startup, proves conclusively that both their bench and in-house test plans were incapable of validating their control system software and hardware designs. Had Siemens developed a comprehensive testing plan, they would have early on identified the lack of robustness of their control system design to interface at the required update rate required by the GE VFD controller network. Siemens alone is responsible for allowing these software and hardware errors to continue to migrate to a point in the project schedule where it was necessary for them to provide additional round-the-clock support to keep the NAS facility in operation while they corrected their control system design problems.

For many years Siemens (formerly Landis & Staefa) has been the sole source provider of all Facility Management Control System (FMCS) equipment at Ames. In addition to furnishing their proprietary control system hardware, Ames also awarded Siemens numerous contracts over the years to install the hardware and provide the software programs for these new and replacement systems. Installation of these systems required Siemens personnel to have access to all of Ames FMCS system drawings, including the network drawings for the NAS Facility. Siemens assertion in their Claim #3, Attachment B, that it was necessary to reconfigure the FMCS trunk wiring after their control system failed to function after installation, indicates that they failed to do the essential up front site survey work which was required by the contract documents.

Operation of the NAS Facility Cray computer was interrupted on three separate occasions as a direct result of Siemens' failure to thoroughly test the control system software during the bench and in-house testing, and their lack of due diligence during their site survey work. All the control system software and hardware configuration changes that Siemens eventually made to enable the control system operate would have been included in their original control system design, if this up front work was done correctly at the onset of the project.

Because Siemens had to redo many aspects of the control system design after the specified 11:59 p.m. Sunday, January 30, 2000 startup, the operation of the Cray computer was interrupted by control system failure on Monday, January 31, 2000, Tuesday, February 1, 2000 and Thursday, February 3, 2000.

This claim is denied.

**The amount of liquidated damages for the three Cray computer interruptions in accordance with your Contract, Specification Section 02055, Par 3.2, is $15,000.00.**

2. Siemens Claims #4 AND PC #16

(a) Claim No. 4 – Network Card Configuration and Delays - $9,467.80

Your claim is in the amount of $9,467.80 and states, in part, that "NASA never paid Interstate/Siemens on this claim". Your assertion is not true. Your March 24, 2004 claim is certified by Robert Riedel, President of Interstate Construction, Inc., who said, "I certify that this claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable." After receiving your claim, NASA Ames Counsel, Mr. Alexander Barna, telephoned Interstate's Counsel, Ms. Erin E. Mackey on May 26, 2004 and informed her that NASA had paid this claim via bilateral contract modification in 2000.

Subsequent to this telephone call, on June 11, 2004, Interstate sent another letter to the Contracting Officer. This letter was designated, "Amended Request for Contracting Officer's Decision". It contained the same six claims as the March 24 letter and did not drop the two claims that had previously been paid by NASA. This Amended Request was certified by Ms. Mackey, who stated, "I certify that this claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable." Mr. Barna sent Ms. Mackey a letter dated July 14, 2004 in which NASA stated, once again, that NASA resolved Interstate's Claim # 4 (as PC-17) in the amount of $9,560.00 on October 27, 2000 by bilateral contract Modification # 7. Based upon the evidence of payment of PC-17, Mr. Barna strongly suggested that Interstate consider submitting a revised request for a Contracting Officer's Decision.

By letter dated August 4, 2004 Interstate adamantly refused to file an Amended Request for a Contracting Officer's Decision deleting Claim No. 4 for PC-17. Apparently, Interstate did not even make the effort to check its contract files to verify that PC-17 had been resolved on October 27, 2000 by bilateral contract Modification # 7.

Interstate had actual notice that PC-17 was resolved when Mr. Reidel, as Secretary/Treasurer for Interstate signed contract Modification #7 on October 25, 2000. Interstate was given further notice that the PC-17 claim was resolved by Mr. Barna's phone call to Ms. Mackey of May 26, 2004 and his letter to Ms. Mackey of July 14, 2004.

Interstate continues to make or present to the NASA Contracting Officer this certified Claim No. 4 (PC-17), despite Interstate knowing that such claim was resolved. Therefore, in accordance with the FAR, I do not have the authority to decide or resolve your Claim No. 4.

(b) PC No. 16 – Enhanced Alarming- $4,588.32

Your claim is in the amount of $4,588.32 and states, in part, that "NASA never paid Interstate/Siemens on this claim". Your assertion is not true. Your March 24, 2004 claim is certified by Robert Riedel, President of Interstate Construction, Inc., who said, "I certify that this claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable." After receiving your

claim, NASA Ames Counsel, Mr. Alexander Barna, telephoned Interstate's Counsel, Ms. Erin E. Mackey on May 26, 2004 and informed her that NASA had paid this claim via bilateral contract modification in 2000.

Subsequent to this telephone call, on June 11, 2004, Interstate sent another letter to the Contracting Officer. This letter was designated, "Amended Request for Contracting Officer's Decision". It contained the same six claims as the March 24 letter and did not drop the two claims that had previously been paid by NASA. This Amended Request was certified by Ms. Mackey, who stated, "I certify that this claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable." Mr. Barna sent Ms. Mackey a letter dated July 14, 2004 in which NASA stated, once again, that NASA resolved Interstate's PC-16 claims in the amount of $4,171.00 on June 27, 2000 in bilateral contract Modification # 6. Based upon the evidence of payment of PC-16, Mr. Barna strongly suggested that Interstate consider submitting a revised request for a Contracting Officer's Decision.

By letter dated August 4, 2004 Interstate adamantly refused to file an Amended Request for a Contracting Officer's Decision deleting the claim for PC-16. Apparently, Interstate did not even make the effort to check its contract files to verify that PC-16 had been resolved on June 27, 2000 by bilateral contract Modification # 6.

Interstate had actual notice that PC-16 was resolved when John Hartman, Interstate's Project Manager signed contract Modification #6 on June 19, 2000. Interstate was given further notice that the PC-16 claim was resolved by Mr. Barna's phone call to Ms. Mackey of May 26, 2004 and his letter to Ms. Mackey of July 14, 2004.

Interstate continues to make or present to the NASA Contracting Officer this certified claim (PC-16), despite Interstate knowing that such claim was resolved. Therefore, in accordance with the FAR, I do not have the authority to decide or resolve your claim for PC-16.

3. Your claim for incurred attorney's fees and costs is hereby denied for the following reasons:

(a) Neither the Changes Clause, nor any other provision in the subject contract between NASA and Interstate, provides for Interstate's reimbursement for legal fees and costs incurred in defending yourself against Siemens' Miller Act lawsuit.

(b) The Government's contract with Interstate is a fixed price construction contract, not a cost reimbursement contract.

4. Liquidated Damages

In accordance with the subject contract, the amount of Liquidated Damages to be assessed, as described in paragraphs 1(a), 1(b), and 1 (c), is $110,000.00.

5. This is the final decision of the Contracting Officer. You may appeal this decision to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208. The Board's operating procedures appear in Part 48, Code of Federal Regulations, Chapter 2, Appendix A. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Vivienne D. Gallo
Contracting Officer

Copy to:
Interstate Construction, Inc.
3909 Security Park Drive
Rancho Cordova, CA 95742

Blind copy to:
NASA-ARC Legal Office, A. Barna
File